1   LATHAM & WATKINS LLP
    Stephen P. Swinton (Bar No. 106398)
2   steve.swinton@lw.com
    Adam A. Welland (Bar No. 228680)
3   adam.welland@lw.com
    12636 High Bluff Drive, Suite 400
4   San Diego, California 92130-2071
    Telephone: (858) 523-5400
5   Facsimile: (858) 523-5450

6   Attorneys for Plaintiff,
    GEORGIA-PACIFIC CONSUMER PRODUCTS LP

7

8            IN THE UNITED STATES DISTRICT COURT

9           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10  GEORGIA-PACIFIC CONSUMER          )  Civil Action No. **07 CV 2391 BTM AJB**
    PRODUCTS LP, a Delaware limited   )
11  partnership,                      )  **MEMORANDUM OF POINTS AND**
                                      )  **AUTHORITIES IN SUPPORT OF**
12              Plaintiff,            )  **PLAINTIFF GEORGIA-PACIFIC**
                                      )  **CONSUMER PRODUCTS LP'S** *EX*
13          v.                        )  *PARTE* **APPLICATION FOR A**
                                      )  **TEMPORARY RESTRAINING ORDER**
14  LEE'S GENERAL TOYS, INC., a California )  **AND ORDER TO SHOW CAUSE RE:**
    corporation, JOHN LEE, an individual; and )  **PRELIMINARY INJUNCTION**
15  DOES 1-10,                        )
                                      )
16              Defendants.           )
                                      )  DATE:   TBD
17                                    )  TIME:   TBD
                                      )  CTRM:   TBD
18                                    )
                                      )
19                                    )
                                      )
20  _____)

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP   NSD\90798.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

FILED

2007 DEC 20   PM 12: 51

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND ...................................................................................................3

    A.    Georgia-Pacific's **ANGEL SOFT®** Federally Registered Trademarks ....................................................................................................3

    B.    Sales of Georgia-Pacific's **ANGEL SOFT®** Brand Bathroom Tissue ...............................................................................................................4

    C.    Georgia-Pacific's Extensive Advertisement and Promotion of the ANGEL SOFT® Product Line ..........................................................................5

    D.    Defendants' Sale and Distribution of Confusingly Similar "Angelite" Bathroom Tissue ...........................................................................6

III.  STANDARD FOR RELIEF ................................................................................8

IV.   ARGUMENT........................................................................................................9

    A.    Georgia-Pacific Is Likely to Succeed on the Merits of Its Trademark Infringement Claim .....................................................................9

        1.    Georgia-Pacific Owns the **ANGEL SOFT** Trademarks at Issue .............................................................................................................9

        2.    Defendants' Use of Confusingly Similar Marks Is Unauthorized ........................................................................................10

        3.    There Is a Likelihood of Confusion Between Georgia-Pacific's ANGEL SOFT® Bathroom Tissue and Defendants' "Angelite" Bathroom Tissue................................................10

            a.    The Strength of Georgia-Pacific's **ANGEL SOFT** Trademarks ...............................................................................11

            b.    Proximity or Relatedness of the Goods .......................................12

            c.    Similarity of the **ANGEL SOFT** Trademarks and the "Angelite" Marks and Images ..................................................12

            d.    Actual Confusion....................................................................13

            e.    Marketplace Factors .............................................................14

            f.    The Types of Goods and Purchaser Care ......................................14

            g.    Defendants' Intent In Choosing the Marks and Images for the "Angelite" Bathroom Tissue ................................15

            h.    Likelihood of Expansion of Products ..........................................15

LATHAM&WATKINS™    NSD\90798.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

i

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

B.    Georgia-Pacific Also Is Likely to Prevail Upon Its Other Claims ........................16

     1.    Georgia-Pacific Is Likely to Prevail in Its Trade Dress Claim .................................................................................................................16

     2.    Georgia-Pacific Is Likely to Prevail in Its False Designation of Origin Claim ....................................................................................17

     3.    Georgia-Pacific Is Likely to Prevail in Its Unfair Competition Claim .................................................................................18

C.    Georgia-Pacific Has Established Irreparable Injury as a Result of Defendants' Conduct .........................................................................................18

D.    The Balance of Hardships Favors Granting Preliminary Injunctive Relief ...................................................................................................................19

E.    Preliminary Injunctive Relief Would Serve the Public Interest ............................20

V.    CONCLUSION ......................................................................................................21

LATHAM&WATKINS^LLP NSD\90798.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

ii

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*AMF, Inc. v. Sleekcraft Boats,*
  599 F.2d 341 (9th Cir. 1979) ............................................................................. 11, 12, 14, 15

*Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.,*
  944 F.2d 1446 (9th Cir. 1991) ...................................................................................... 18

*Allegheny Car Wash Corp. v. Amoco Oil Co.,*
  201 U.S.P.Q. 798 (W.D. Pa. 1977) ............................................................................... 17

*Beer Nuts v. Clover Club Foods Co.,*
  805 F.2d 920 (10th Cir. 1986) ..................................................................................... 14

*Big Country Foods, Inc. v. Bd. of Educ.,*
  868 F.2d 1085 (9th Cir. 1989) ........................................................................................ 8

*Brookfield Commc'n, Inc. v. W. Coast Entertainment Co.,*
  174 F.3d 1036 (9th Cir. 1999) .................................................... 9, 10, 11, 12, 13, 14, 15

*CSC Brands LP v. Herdez Corp.,*
  191 F. Supp. 2d 1145 (E.D. Cal. 2001) ........................................................................... 9

*Century 21 Real Estate Corp. v. Sandlin,*
  846 F.2d 1175 (9th Cir. 1988) ..................................................................................... 18

*Clamp Mfg. Co. v. Enco Mfg. Co.,*
  870 F.2d 512 (9th Cir. 1989) ....................................................................................... 17

*Cleary v. News Corp.,*
  30 F.3d 1255 (9th Cir. 1994) ....................................................................................... 18

*Clicks Billiards, Inc. v. Sixshooters, Inc.,*
  251 F.3d 1252 (9th Cir. 2001) ..................................................................................... 16

*Duncan McIntosh Co. v. Newport Dunes Marina LLC,*
  324 F. Supp. 2d 1078 (C.D. Cal. 2004) ........................................................................... 9

*E & J Gallo Winery v. Gallo Cattle Co.,*
  967 F.2d 1280 (9th Cir. 1992) ................................................................................. 13, 14

*Edward J. Sweeney & Sons, Inc. v. Texaco Inc.,*
  637 F.2d 105 (3d Cir. 1989) ........................................................................................ 17

*Electropix v. Liberty Livewire Corp.,*
  178 F. Supp. 2d 1125 (C.D. Cal. 2001) ........................................................................... 9

*Glow Indus. v. Lopez,*
  273 F. Supp. 2d 1095 (C.D. Cal. 2003) ......................................................................... 11

LATHAM&WATKINS LLP    NSD\90798.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

iii

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

*GoTo.com, Inc. v. Walt Disney Co.,*
    202 F.3d 1199 (9th Cir. 2000) ................................................................. 8, 9, 11, 18, 19

*Granny Goose Foods, Inc. v. B'hood of Teamsters,*
    415 U.S. 423 (1974) ...................................................................................... 8

*Honor Plastic Indus. Co. LTD v. Lollicup USA, Inc.,*
    466 F. Supp. 2d 1217 (E.D. Cal. 2006) ....................................................... 9

*Kwik-Site Corp. v. Clear View Mfg. Co.,*
    758 F.2d 167 (6th Cir. 1985) ..................................................................... 17

*Levi Strauss & Co. v. Bluebell, Inc.,*
    778 F.2d 1352-54 (9th Cir. 1985) .............................................................. 17

*Lindy Pen Co v. Bic Pen Corp.,*
    796 F.2d 254 (9th Cir. 1986) ..................................................................... 12

*Litton Sys. Inc. v. Whirlpool Corp.,*
    728 F.2d 1423 (Fed. Cir. 1985) ................................................................. 17

*Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.,*
    887 F. Supp. 1320 (N.D. Cal. 1995) ........................................................... 8

*Lois Sportswear U.S.A., Inc. v. Levi Strauss Co.,*
    799 F.2d 867 (2d Cir. 1986) ..................................................................... 13

*Los Angeles Unified Sch. Dist. v. U.S. Dist. Court,*
    650 F.2d 1004 (9th Cir. 1981) ..................................................................... 8

*Meta-Film Assoc., Inc. v. MCA, Inc.,*
    586 F. Supp. 1346 (C.D. Cal. 1984) ......................................................... 18

*Metro. Publishing, Ltd. v. San Jose Mercury News,*
    987 F.2d 637 (9th Cir. 1993) ............................................................... 18, 19

*Nat'l Center for Immigrants Rights, Inc. v. INS,*
    743 F.2d 1365 (9th Cir. 1984) ..................................................................... 8

*New West Corp. v. NYM Co.,*
    595 F.2d 1194 (9th Cir. 1979) ................................................................... 18

*Nutri/System, Inc. v. Con-Stan Indus., Inc.,*
    809 F.2d 601 (9th Cir. 1987) ..................................................................... 11

*Ocean Garden, Inc. v. Marktrade Co.,*
    953 F.2d 500 (9th Cir. 1991) ..................................................................... 11

*Pac. Telesis v. Int'l Telesis Comm'cns,*
    994 F.2d 1364 (9th Cir. 1993) ................................................................... 15

*Pacific Law Center v. Saadat-Nejad,*
    2007 WL 2005257 (S.D. Cal. Apr. 27, 2007) ............................................. 9

LATHAM&WATKINS ᴸᴸᴾ
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

NSD\90798.1

iv

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

*Phillip Morris USA Inc. v. Shalabi,*
   352 F. Supp. 2d 1067 (C.D. Cal. 2004) ................................................................. 20

*Qualitex Co. v. Jacobsen Prods. Co.,*
   13 F.3d 1287 (9th Cir. 1994) ...................................................................... 17, 18

*Qualitex Co. v. Jacobsen Prods. Co.,*
   514 U.S. 159 (1995) ................................................................................ 16

*Rent-A-Center, Inc. v. Canyon Television & Appliance,*
   944 F.2d 597 (9th Cir. 1991) ......................................................................... 19

*Sharper Image Corp. v. Target Corp.,*
   425 F. Supp. 2d 1056 (N.D. Cal. 2006) ................................................................ 17

*Southwest Voter Registration Educ. Project v. Shelley,*
   344 F.3d 914 (9th Cir. 2003) ........................................................................... 8

*Sports Form, Inc. v. United Press Int'l, Inc.,*
   686 F.2d 750 (9th Cir. 1982) ........................................................................... 9

*Sun Microsystems, Inc. v. Microsoft Corp.,*
   188 F.3d 1115 (9th Cir. 1999) .......................................................................... 8

*Thelen Oil Co., Inc. v. Fina Oil & Chem. Co.,*
   962 F.2d 821 (8th Cir. 1992) .......................................................................... 17

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
   505 U.S. 763 (1992) ................................................................................. 17

*Woodrow F. Morgan, Inc. v. United States,*
   670 F. Supp. 289 (E.D. Cal. 1987) ..................................................................... 8

**FEDERAL STATUTES**

15 U.S.C. § 1065 ..................................................................................... 4

15 U.S.C. § 1114(1) .................................................................................. 9

15 U.S.C. § 1125(a) ................................................................................. 17

**STATE STATUTES**

Cal. Bus. & Prof. Code § 14281 ....................................................................... 6

Cal. Bus. & Prof. Code § 14282 ....................................................................... 6

Cal. Bus. & Prof. Code § 17200 ...................................................................... 18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

NSD\90798.1

v

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

## I.    INTRODUCTION

Plaintiff Georgia-Pacific Consumer Products LP ("Georgia-Pacific") is a world leader in the manufacturing and marketing of tissue products, among a variety of other products.  Among these products are **ANGEL SOFT®** and **ANGEL SOFT PS®** brands of bathroom tissue.  Through Georgia-Pacific's substantial advertising and quality control programs, consumers have come to associate the **ANGEL SOFT®** and **ANGEL SOFT PS®** brands of bathroom tissue with Georgia-Pacific and its corresponding reputation for quality products.  As a result of Georgia-Pacific's significant investment of time, money and effort, the **ANGEL SOFT®** and **ANGEL SOFT PS®** brands have enjoyed enormous success.  Total retail sales of **ANGEL SOFT®** and **ANGEL SOFT PS®** products exceed many hundreds of millions of dollars.

As part of its effort to protect these successful brands, Georgia-Pacific and its predecessors in interest applied for and obtained several federally registered trademarks containing the words "Angel Soft."  Georgia-Pacific has used the **ANGEL SOFT®** name and its related trademarks to identify its bathroom tissue products since 1944.  Through continuous use and notoriety, some of these trademarks have become both famous and incontestable.  Equally important, the **ANGEL SOFT®** and **ANGEL SOFT PS®** trademarks have become extraordinarily valuable as identifiers of Georgia-Pacific and its bathroom tissue products.

Georgia-Pacific recently became aware that Defendants Lee's General Toys and John Lee (collectively "Defendants") are distributing, marketing, and selling a variety of "Angelite" bathroom tissue products in retail and wholesale locations in Southern California, including within the County of San Diego, under the name "Angel Lite" or Angelite" (hereinafter "Angelite").

Defendants' inferior-quality "Angelite" products bear marks and images that are confusingly similar to the **ANGEL SOFT®** and **ANGEL SOFT PS®** trademarks.  Defendants' use of the word "Angel" or "Angelite" in their product labeling is inherently misleading and suggests an affiliation with Georgia-Pacific's superior, and well-known **ANGEL SOFT®** bathroom tissue products.  Indeed, Defendants' selection of the word "Angel" or "Angelite"—an arbitrary mark which has nothing whatsoever to do with bathroom tissue products—reveals

LATHAM&WATKINS™  NSD\90798.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY
1
MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1    Defendants' intention to capitalize upon Georgia-Pacific's goodwill.  Furthermore, the striking

2    similarities in packaging appearance between Defendants' "Angelite" products and Georgia-

3    Pacific's **ANGEL SOFT®** products renders consumer confusion between the two product lines

4    inevitable.  In particular, Defendants' "Angelite" product label employs lettering that is virtually

5    identical in appearance to the lettering used on **ANGEL SOFT®** packaging.

6        A side-by-side comparison of the infringing "Angelite" product and Georgia-Pacific's

7    **ANGEL SOFT PS®** bathroom tissue, which illustrates these similarities in product labeling and

8    packaging design, is shown below:

  

17       The remarkable similarities of Defendants' "Angelite" bathroom tissue labeling and

18    packaging to Georgia-Pacific's **ANGEL SOFT®** branded products will certainly confuse

19    consumers.  This confusion of Georgia-Pacific's **ANGEL SOFT®** and **ANGEL SOFT PS®**

20    bathroom tissue customers and the diversion of Georgia-Pacific's sales to the "Angelite" product

21    undoubtedly will disappoint customers and irreparably harm Georgia-Pacific and its reputation

22    for quality bathroom tissue products.  Accordingly, Georgia-Pacific brings this application for a

23    temporary restraining order to avoid the inevitable irreparable harm that Defendants'

24    importation, distribution, marketing, and sales of their "Angelite" bathroom tissue will bring to

25    Georgia-Pacific's reputation and goodwill.

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

NSD\90798.1

2

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

II.    **BACKGROUND**

A.    **Georgia-Pacific's ANGEL SOFT® Federally Registered Trademarks**

Through its predecessors in interest, Georgia-Pacific first developed and began using the **ANGEL SOFT®** brand in 1944 in connection with its bathroom tissue products.  Declaration of Andrew Towle ("Towle Decl.") ¶ 3.  Georgia-Pacific and its predecessors in interest have used the **ANGEL SOFT®** mark as such continuously since that time.  *Id.* ¶ 4.  The picture shown in below depicts the current product configuration and packaging of a typical **ANGEL SOFT®** retail product:



In 2003, Georgia-Pacific also developed and began using the **ANGEL SOFT PS®** brand for bathroom tissue that it distributes through commercial channels.  *Id.* ¶ 5.  The picture shown below depicts the current product configuration and packaging of a typical **ANGEL SOFT PS®** commercial product:



Georgia-Pacific and its predecessors in interest have applied for and obtained several federally registered trademarks that protect both its **ANGEL SOFT®** and **ANGEL SOFT PS®** brands of bathroom tissue.  *Id.* ¶ 7.  These trademarks include Registration Numbers 781,414; 1,172,215; 2,512,417; 2,546,897; 2,841,759; 2,912,982; 2,972,819; and 2,989,711.  *Id.*; Exs. 3-10.  For purposes of this Application, and for the sake of brevity and efficiency, Georgia-Pacific alleges violations only of Registration Numbers 781,414; 1,172,215; 2,512,417; and 2,912,982

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

NSD\90798.1

3

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1  (collectively referred to herein as the "**ANGEL SOFT** Trademarks"), which are described

2  below:

| Reg. No. | Mark | Filing Date | Registration Date | Date of First Use |
|----------|------|-------------|-------------------|-------------------|
| 781,414 | ANGEL SOFT | 08/07/1962 | 12/08/1964 | 00/00/1944 |
| 1,172,215 | ANGEL SOFT | 08/13/1979 | 10/06/1981 | 00/00/1944 |
| 2,512,417 | Angel Soft | 11/21/2000 | 11/27/2001 | 05/01/2000 |
| 2,912,982 | ANGEL SOFT PS | 08/26/2003 | 12/21/2004 | 01/31/2003 |

*Id.* ¶ 7; Exs. 3-5.  In accordance with 15 U.S.C. § 1065, based upon widespread and continuous

use, Registration Numbers 781,414 and 1,172,215 have achieved incontestable status.

  **B. Sales of Georgia-Pacific's ANGEL SOFT® Brand Bathroom Tissue**

   Georgia-Pacific sells bathroom tissue under the **ANGEL SOFT** Trademarks in both the

retail and commercial channels throughout the United States, including Southern California and

the County of San Diego, as well as in Canada and Mexico.  *Id.* ¶ 9, 11.  **ANGEL SOFT®**

bathroom tissue is sold through the retail channel in large retail chain stores such as Wal*Mart,

Target, Winn Dixie, and Walgreen's as well as in tens of thousands of independent retail stores

located across the country.  *Id.* ¶ 11.  Georgia-Pacific sells its **ANGEL SOFT PS®** bathroom

tissue in the commercial channel to distributors such as US Foodservice, SYSCO, Xpedx, and

Lagasse Sweet, which then distribute **ANGEL SOFT PS®** to well-known commercial end users

such as Hampton Inn, Sheraton Hotels, The Walt Disney Company, Hyatt Hotels and Little

Caesar Enterprises, Inc.  *Id.*

   The products sold under the **ANGEL SOFT** Trademarks must meet Georgia-Pacific's

rigorous standards of quality.  *Id.* ¶ 19.  As a result, Georgia-Pacific endures significant expense

to ensure that its products sold under the **ANGEL SOFT** Trademarks adhere to high quality

standards.  Some examples of the quality control efforts in place by Georgia-Pacific include, but

are not limited to:  measuring and controlling the quality of the base sheet of the bathroom tissue

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

NSD\90798.1

4

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1    during production; measuring and recording the finished bathroom tissue rolls at least once per

2    day per manufacturing line; conducting periodic workmanship audits of the bathroom tissue

3    itself as well as the packaging, box and pallet; and conducting softness panels to judge sensory

4    softness. *Id.*

5         Due in part to the distinctive and widely recognized **ANGEL SOFT** Trademarks and

6    trade dress and these products' superior quality, Georgia-Pacific's **ANGEL SOFT®** and

7    **ANGEL SOFT PS®** brands of bathroom tissue have been extremely successful. Since the

8    brand's launch in 1944, Georgia-Pacific has sold several hundred million wrappers of **ANGEL**

9    **SOFT®** branded bathroom tissue bearing the Georgia-Pacific trade dress, generating many

10   hundreds of millions of dollars in retail sales. *Id.* ¶¶ 9, 10. By way of example, from 2004

11   through 2006 alone, U.S. sales of bathroom tissue sold under the **ANGEL SOFT** Trademarks

12   totaled over $2 billion. *Id.* Moreover, according to AC Nielsen market share data for the year

13   ending September 08, 2007, the **ANGEL SOFT®** brand of bathroom tissue ranked second in

14   total dollar sales. *Id.* ¶ 18. Georgia-Pacific's sales of **ANGEL SOFT®** and **ANGEL SOFT**

15   **PS®** brands of bathroom tissue have resulted in widespread customer recognition of the Georgia-

16   Pacific trade dress as an identifier of Georgia-Pacific and its high-quality products. *Id.* ¶ 18.

17        C.    **Georgia-Pacific's Extensive Advertisement and Promotion of the ANGEL**
               **SOFT® Product Line**
18

19        Georgia-Pacific has invested heavily in advertising and promoting its **ANGEL SOFT®**

20   brand and products for more than six decades. *Id.* ¶ 12. In the U.S. in 2006 alone, Georgia-

21   Pacific spent over $22 million to advertise and promote bathroom tissue sold under the **ANGEL**

22   **SOFT** Trademarks. *Id.* Georgia-Pacific's advertisements and promotions for its **ANGEL**

23   **SOFT®** toilet paper prominently feature the Georgia-Pacific **ANGEL SOFT®** trade dress,

24   either through a photograph of the **ANGEL SOFT®** wrapper, or by featuring its color scheme of

25   bold turquoise and peach, with its distinctive trademarked "Angel Soft" script printed in white

26   text surrounded by turquoise and outlined in peach. *See id.* ¶ 17.

27        Georgia-Pacific has widely advertised and promoted the **ANGEL SOFT®** brand in

28   variety of ways. In the U.S., this advertising has consisted of television commercials, print

1  publications, radio commercials, billboards, live promotions, sponsorship of large events, trade

2  shows, brochures, and internet promotions—just to name a few. *Id.* ¶ 13; Exs. 11-22. This

3  advertising and promotion has been continuous, and also has included numerous large-scale

4  campaigns that have stood out for consumers. Some examples include the "Angels in Action"

5  and "Bathroom Moments" campaigns, which received significant media attention and coverage.

6  *Id.* ¶ 15. Notably, Georgia-Pacific also directs a substantial portion of its advertising for the

7  **ANGEL SOFT** Trademarks toward the Spanish-speaking market. Since 2005, Georgia-Pacific

8  has paid for numerous targeted television and radio advertisements in this market. *Id.* ¶ 14.

9       Georgia-Pacific has promoted its **ANGEL SOFT®** brands in a variety of other ways as

10  well, including via the internet. In 2003, Georgia-Pacific created a website

11  (www.angelsoft.com) specifically to promote its **ANGEL SOFT** Trademarks and products. *Id.*

12  ¶ 16; Exs. 22-25. This website currently receives an average of 4,145 visitors per month. *Id.*

13  Georgia-Pacific also distributes point of sale materials that promote the **ANGEL SOFT**

14  Trademarks and products. *Id.* ¶ 17; Exs. 26 & 27.

15       Through over sixty years of advertising and promotion of the **ANGEL SOFT®** brand,

16  and by virtue of millions of dollars in marketing and advertising expenditures, the **ANGEL**

17  **SOFT®** brand has become well-known among consumers. The **ANGEL SOFT** Trademarks,

18  which serve to identify the **ANGEL SOFT®** brand, thus are extremely valuable to Georgia-

19  Pacific.

20  **D.    Defendants' Sale and Distribution of Confusingly Similar "Angelite"**
         **Bathroom Tissue**

21

22       Georgia-Pacific recently became aware that Defendants Lee's General Toys, a privately-

23  owned California corporation, with a principal place of business at 3389 East 50th Street,

24  Vernon, California 90058, and Mr. John Lee, the registered owner of Lee's General Toys, are

25  importing, marketing, and distributing a variety of bathroom tissue products under the name

26  "Angelite," including "Angelite 500," "Angelite 525," and "Angelite 1500." Declaration of

27

28

LATHAM&WATKINS™
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

NSD\90798.1

6

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1  Darwin Wisdom ("Wisdom Decl.") ¶ 3.[1]  Georgia-Pacific's investigation has confirmed that

2  Lee's General Toys operates a warehouse facility through which these "Angelite" products are

3  distributed.  *Id.* ¶ 4; Exs. 2-7.  "Angelite" bathroom tissue products are imported by Defendant

4  Lee, on behalf of Lee's General Toys, directly from China.  *Id.* ¶ 5.

5       Samples of "Angelite" bathroom tissue products have been purchased from retail stores

6  in the San Diego area.  Pissot Decl. ¶ 2.  As shown by the photographs below, the "Angelite"

7  products for sale in the San Diego area bear marks and images that are confusingly similar to the

8  **ANGEL SOFT** Trademarks:

9

10

11   

12

13

14

15

16       Defendants' bathroom tissue wrappers all display the name "Angelite" printed in text that

17  is strikingly similar to that employed by Georgia-Pacific on its **ANGEL SOFT®** bathroom

18  tissue product packaging.  Each variety of "Angelite" bathroom tissue is sold in a wrapper

19  having a pink background, with a white oval in the foreground containing the stylized text

20  "Angelite" printed in a font nearly identical to the unique font found on the wrapper of the

21  corresponding **ANGEL SOFT®** bathroom tissue packaging associated with Georgia-Pacific's

22  **ANGEL SOFT** Trademarks.  Given these substantial similarities in product labeling and

23  package design, there can be no doubt of Defendants' intent to confuse consumers and trade off

24  Georgia-Pacific's extensive goodwill in its **ANGEL SOFT** Trademarks and trade dress.

25  _____

26  [1]    Lee's General Toys also is the owner of a California trademark registration for the mark
   "Angel Lite 500" in a stylized design.  Wisdom Decl. ¶ 3; Ex. 1.  This registration was

27  improperly granted, as Georgia-Pacific has used in commerce and obtained federally registered
   trademarks that are strikingly similar and well-known prior to the purported use and registration

28  of Lee's General Toys' "Angelite" mark for the same type of goods.  *See* Cal. Bus. & Prof. Code
   §§ 14281 & 14282.

LATHAM&WATKINS<sup>LLP</sup>  NSD\90798.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY
7
MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1  **III.    STANDARD FOR RELIEF**

2        A temporary restraining order is a form of preliminary injunctive relief issued to preserve

3  the status quo and prevent irreparable harm until a full hearing can be held.  *Granny Goose*

4  *Foods, Inc. v. B'hood of Teamsters*, 415 U.S. 423, 439 (1974).  The same standards apply to the

5  issuance of a temporary restraining order as apply to the issuance of a preliminary injunction.

6  *See Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D.

7  Cal. 1995); *Woodrow F. Morgan, Inc. v. United States*, 670 F. Supp. 289, 290 (E.D. Cal. 1987).

8  If anything, the standards for issuance of a TRO are less rigid than those for issuance of a

9  preliminary injunction.  *Los Angeles Unified Sch. Dist. v. U.S. Dist. Court*, 650 F.2d 1004, 1008

10  (9th Cir. 1981) (Ferguson, J., dissenting).

11        Courts in the Ninth Circuit are guided by the following standards for the issuance of

12  preliminary injunctive relief:

13        To obtain a preliminary injunction, the moving party must show either
      (1) a combination of probable success on the merits and the possibility of
14        irreparable injury, or (2) that serious questions are raised and the balance
      of hardships tips sharply in its favor.  These formulations are not different
15        tests but represent two points on a sliding scale in which the degree of
      irreparable harm increases as the probability of success on the merits
16        decreases.

17  *Big Country Foods, Inc. v. Board of Educ.*, 868 F.2d 1085, 1088 (9th Cir. 1989) (internal

18  citations omitted); *see also GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204-05 (9th Cir.

19  2000) (same); *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999)

20  (same).  Thus, even if the court is uncertain of the moving party's likelihood of success on the

21  merits, a TRO still may issue if the moving party convinces the court that the balance of

22  hardships tips in its favor.  *See Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d

23  914, 917 (9th Cir. 2003); *see also Nat'l Center for Immigrants Rights, Inc. v. INS*, 743 F.2d

24  1365, 1369 (9th Cir. 1984) ("The greater the relative hardship to the moving party, the less

25  probability of success on the merits must be shown.").

26        Where a plaintiff demonstrates a likelihood of success on the merits of a trademark

27  infringement claim, irreparable harm is presumed.  *GoTo.com*, 202 F.3d at 1205 n.4.  "This

28  presumption effectively conflates the dual inquiries of this prong into the single question of

1  whether the plaintiff has shown a likelihood of success on the merits." *Id.*; *see also Duncan*

2  *McIntosh Co., Inc. v. Newport Dunes Marina LLC*, 324 F. Supp. 2d 1078, 1082-83 (C.D. Cal.

3  2004). Thus, a temporary restraining order should issue if the plaintiff can show "a fair chance

4  of success on the merits or questions . . . serious enough to require litigation." *Sports Form, Inc.*

5  *v. United Press Intl, Inc.*, 686 F.2d 750, 753 (9th Cir. 1982).[2] As detailed below, the standard for

6  preliminary injunctive relief is met under the facts of this case.

7  **IV.    ARGUMENT**

8      **A.    Georgia-Pacific Is Likely to Succeed on the Merits of Its Trademark**
         **Infringement Claim[3]**
9

10      To prove its claim of trademark infringement under Section 32 of the Lanham Act, 11

11  U.S.C. § 1114,[4] Georgia-Pacific must establish that (1) it owns the trademarks at issue; (2) the

12  defendant has used in commerce, without authorization, a copy, reproduction, counterfeit or

13  colorable imitation of the mark in connection with the sale, distribution, or advertising of goods

14  and services; and (3) the defendant's use of the mark is likely to cause confusion or to cause

15  mistake or to deceive. *E.g.*, *Brookfield Commc'n, Inc. v. W. Coast Entm't Co.*, 174 F.3d 1036,

16  1060 (9th Cir. 1999). As detailed below, Georgia-Pacific can establish each of these elements

17  and therefore is likely to succeed on the merits of its trademark infringement claim.

18      **1.    Georgia-Pacific Owns the ANGEL SOFT Trademarks at Issue**

19      First, Georgia-Pacific owns each of the **ANGEL SOFT** Trademarks infringed by the

20  "Angelite" products. Georgia-Pacific and its predecessors in interest have applied for and

21  ─────────────────────

22  [2]    Courts in this judicial district and elsewhere have not hesitated to grant preliminary relief
    to prevent the infringement of valuable trademark rights. *See, e.g., Pacific Law Center v.*

23  *Saadat-Nejad*, 2007 WL 2005257 (S.D. Cal. Apr. 27, 2007) (unpublished preliminary injunction
    order); *Honor Plastic Indus. Co. LTD. v. Lollicup USA, Inc.*, 466 F. Supp. 2d 1217 (E.D. Cal.

24  2006); *CSC Brands LP v. Herdez Corp.*, 191 F. Supp. 2d 1145 (E.D. Cal. 2001); *Electropix v.*
    *Liberty Livewire Corp.*, 178 F. Supp. 2d 1125 (C.D. Cal. 2001).

25  [3]    For reasons similar to those explained *infra*, Georgia-Pacific is likely to succeed on the
    merits of its claim for common law trademark infringement.

26  [4]    15 U.S.C. § 1114(1) imposes liability for trademark infringement upon "[a]ny person
    who shall, without the consent of the registrant (a) use in commerce any reproduction,

27  counterfeit copy, or colorable imitation of a registered mark in connection with the sale, offering
    for sale, distribution, or advertising of any good or services on or in connection with such use is

28  likely to cause confusion, or to cause mistake, or to deceive."

LATHAM&WATKINSᴸᴸᴾ   NSD\90798.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY                                    9

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1  obtained federal trademark registrations for several trademarks bearing the words "Angel Soft."

2  Towle Decl. ¶ 7.  These trademarks include Registration Numbers 781,414; 1,172,215;

3  2,512,417; 2,912,982; 2,972,819; and 2,989,711.  *Id.*; *see also supra* at 3.

4      Georgia-Pacific is the current owner of each **ANGEL SOFT** Trademark by virtue of a

5  valid assignment.  Specifically, Registration Number 781,414 was originally applied for by

6  Angel Soft Tissue Mills, Inc., which then assigned its rights to Hudson Pulp & Paper Corp.,

7  which then assigned its rights to Georgia-Pacific Corp., which then assigned its rights to

8  Georgia-Pacific Consumer Products LLC, which finally assigned its rights in 2006 to Georgia-

9  Pacific Consumer Products LP.  Towle Decl., Ex. 3.  Similarly, Registration Number 1,172,215

10  originally was  applied for and obtained by Hudson Pulp & Paper Corp., which assigned its

11  rights to Georgia-Pacific Corp., which then assigned its rights to Georgia-Pacific Consumer

12  Products LLC, which finally assigned its rights in 2006 to Georgia-Pacific Consumer Products

13  LP.  *Id.*, Ex. 4.  Finally, Registration Numbers 2,512,417; 2,912,982; and 2,989,711 originally

14  were applied for and obtained by Georgia-Pacific Corp., which then assigned its rights to

15  Georgia-Pacific Consumer Products LLC, which finally assigned its rights in 2006 to Georgia-

16  Pacific Consumer Products LP.  *Id.*, Exs. 5, 6, 8.

17      **2.     Defendants' Use of Confusingly Similar Marks Is Unauthorized**

18      Second, Defendants' distribution and/or sale of "Angelite" bathroom tissue products is an

19  unauthorized commercial use of Georgia-Pacific's registered **ANGEL SOFT** Trademarks.

20      **3.     There Is a Likelihood of Confusion Between Georgia-Pacific's**
       **ANGEL SOFT® Bathroom Tissue and Defendants' "Angelite"**
21      **Bathroom Tissue**

22      Finally, Defendants' use of substantially similar marks and images in connection with

23  their "Angelite" bathroom tissue products creates a strong likelihood of consumer confusion.

24      In evaluating whether a likelihood of confusion exists, courts within the Ninth Circuit

25  generally consider eight factors:  (1) the strength of the trade dress; (2) the proximity or

26  relatedness of the goods; (3) the similarity of the trade dresses; (4) evidence of actual confusion;

27  (5) the marketing channels used; (6) types of goods and the degree of care likely to be exercised

28  by the purchaser; (7) the defendant's intent in selecting the trade dress; and (8) the likelihood of

LATHAM&WATKINS<sup>LLP</sup>  NSD\90798.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY                                    10

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1  expansion of product lines. *GoTo.com*, 202 F.3d at 1205; *AMF, Inc. v. Sleekcraft Boats*, 599

2  F.2d 341, 348-49 (9th Cir. 1979) ("*Sleekcraft*").  "The court need not address all of the factors,

3  nor must the claimant establish that each weighs in [its] favor in order to establish a likelihood of

4  confusion." *Glow Indus. v. Lopez*, 273 F. Supp. 2d 1095, 1116-17 (C.D. Cal. 2003).  Rather,

5  "[s]ome factors are much more important than others, and the relative importance of each

6  individual factor will be case-specific.  Although some factors—such as the similarity of the

7  mark and whether the two companies are direct competitors—will always be important, it is

8  often possible to reach a conclusion with respect to likelihood of confusion after considering

9  only a subset of the factors." *Brookfield*, 174 F.3d at 1054.

10          Applying the "*Sleekcraft*" factors here shows that virtually all of the factors point to a

11  high likelihood of confusion between the Defendants' "Angelite" marks and images and

12  Georgia-Pacific's **ANGEL SOFT** Trademarks.

13                  a.      **The Strength of Georgia-Pacific's ANGEL SOFT Trademarks**

14          Strong marks generally are afforded greater protection than weak ones. *Ocean Garden,*

15  *Inc. v. Marktrade Co.*, 953 F.2d 500, 506 (9th Cir. 1991) ("[a] strong mark is inherently

16  distinctive" and "will be afforded the widest ambit of protection from infringing uses").  The

17  **ANGEL SOFT** Trademarks are inherently distinctive, and thus constitute strong trademarks.

18  On the spectrum of distinctiveness, the **ANGEL SOFT** Trademarks are arbitrary—not

19  descriptive or suggestive of the type of product—and arbitrary marks typically are strong marks.

20  *Brookfield*, 174 F.3d at 1058; *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 605 (9th

21  Cir. 1987).

22          At a minimum, the **ANGEL SOFT** Trademarks are suggestive. *Brookfield*, 174 F.3d at

23  1058, n. 19 ("A suggestive mark conveys an impression of a good but requires the exercise of

24  some imagination and perception to reach a conclusion as to the product's nature").  As the court

25  explained in *Brookfield*, "advertising expenditures can transform a suggestive mark into a strong

26  mark . . . where, for example, that mark has achieved actual marketplace recognition." *Id.* at

27  1058 (citing *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 743-44 (2d Cir. 1998)).  As

28  discussed above, Georgia-Pacific's **ANGEL SOFT** Trademarks have been in use since 1944.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

NSD\90798.1

11

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1  Consumers have associated these trademarks with Georgia-Pacific's bathroom tissue for over

2  sixty years. Millions of dollars spent on advertising and promotion of this brand has served to

3  solidify this correlation in the marketplace.

4       Whether the **ANGEL SOFT** Trademarks are classified as arbitrary or as suggestive

5  marks, the **ANGEL SOFT** Trademarks are strong marks entitled to a high degree of protection.

6  Thus, the first factor, the strength of the **ANGEL SOFT** Trademarks, strongly supports a finding

7  of a likelihood of confusion.

8                    **b.    Proximity or Relatedness of the Goods**

9       When goods are related, "the danger presented is that the public will mistakenly assume

10  there is an association between the producers of the related goods, though no such association

11  exists." *Sleekcraft*, 599 F.2d at 350. Here, putting issues of quality aside, Georgia-Pacific's

12  **ANGEL SOFT®** products and Defendants' virtually identical "Angelite" products

13  unquestionably are related in that both are bathroom tissue products. When virtually identical

14  marks are used in connection with related products, likelihood of confusion follows as a "matter

15  of course." *Brookfield*, 174 F.3d at 1056; *Lindy Pen Co v. Bic Pen Corp.*, 796 F.2d 254, 256-57

16  (9th Cir. 1986). Furthermore, these bathroom tissue products are sold in many of the same types

17  of stores, *see* Pissot Decl. ¶ 2, thereby increasing the likelihood that consumers will confuse the

18  infringing product for the genuine product. *Cf. Sleekcraft*, 599 F.2d at 350 (less similarity

19  between marks required when goods are sold to the same class of purchasers). Accordingly, the

20  second *Sleekcraft* factor, the proximity and relatedness of the goods, also supports the existence

21  of a likelihood of confusion.

22                    **c.    Similarity of the ANGEL SOFT Trademarks and the**
                         **"Angelite" Marks and Images**
23

24       The **ANGEL SOFT** Trademarks and the marks and images found on the "Angelite"

25  bathroom tissue products are strikingly similar. A side-by-side comparison of the two products

26  illustrated above, *supra* at 2, confirms the similarities, especially in light of the fact that

27  "Angelite" products may be found in the very types of retail stores where consumers would

28  expect to find **ANGEL SOFT®** products.

LATHAM&WATKINS LLP    NSD\90798.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY                    12

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1    While the "Angelite" products do not also copy the word "Soft," it is the use of the word

2  "Angel" in the product labeling that is sure to cause consumer confusion.  In fact, several of the

3  **ANGEL SOFT** Trademarks (specifically, Registration Numbers 781,414; 1,172,215; 2,512,417;

4  2,972,819) were issued only if the word "Soft" was disclaimed from protection.  Towle Decl.,

5  Exs. 3-5, 7.  It is thus the use of the word "Angel" that is so valuable in identifying Georgia-

6  Pacific's goods.

7    In addition, as shown in the photograph below, the "Angelite" product employs a font

8  that is remarkably like that protected by **ANGEL SOFT** Trademark Registration Number

9  2,512,417:

10

11                  

12

13

14

15    The overall striking similarity between the Georgia-Pacific' **ANGEL SOFT** Trademarks

16  and the marks and images used in conjunction with Defendants' "Angelite" product line

17  therefore strongly support a likelihood of confusion.  *See Lois Sportswear U.S.A., Inc. v. Levi*

18  *Strauss Co.*, 799 F.2d 867, 873 (2d Cir. 1986).

19                  **d.    Actual Confusion**

20    Georgia-Pacific has not yet developed substantial evidence of actual confusion.  Georgia-

21  Pacific expects to develop evidence of substantial confusion during the course of discovery and

22  further investigation in connection with this action.  Courts have consistently recognized that

23  evidence of actual confusion is often difficult to obtain, and thus undue weight should not be

24  accorded to this factor.  *Brookfield*, 174 F.3d 1050; *see also E & J Gallo Winery v. Gallo Cattle*

25  *Co.*, 967 F.2d 1280, 1292 (9th Cir. 1992) ("Evidence of actual confusion is relevant to the issue

26  of likelihood of confusion, but the absence of such evidence need not create an inference that

27  there is no likelihood of confusion.").

28

1

**e.    Marketplace Factors**

2    When, as here, convergent marketing channels are employed, the likelihood of confusion

3    is increased. *Sleekcraft*, 599 F.2d at 353.  Georgia-Pacific's **ANGEL SOFT®** and Defendants'

4    "Angèlite" bathroom tissue products are sold at many of the same types of retail establishments.

5    *Compare* Towle Decl. ¶ 11 *with* Pissot Decl. ¶ 3.  When sold in the same location, the products

6    would ordinarily be sold on the same shelf, where space is limited and packed tightly together.

7    *Id.*  Thus, Defendants' products will likely be sold in close proximity to Georgia-Pacific's

8    **ANGEL SOFT®** bathroom tissue in such locations.  This further increases the likelihood that

9    consumers will purchase one brand of bathroom tissue believing it to be the other.  Because the

10    two products will be sold through the same types of retail channels and next to or close to one

11    other on retail shelves, this factor also supports a finding of likely confusion.

12

**f.    The Types of Goods and Purchaser Care**

13    Likelihood of confusion is determined by reference to the hypothetical "reasonably

14    prudent consumer."  *Brookfield*, 174 F.3d at 1060.  Such a consumer is expected "to be more

15    discerning—and less easily confused—when purchasing expensive items."  *Id.*  By contrast,

16    purchasers of relatively inexpensive goods do not exercise a high level of purchasing care,

17    making confusion between such goods more likely.  *Id.*; *E. & J. Gallo Winery*, 967 F.2d at 1293;

18    *Beer Nuts v. Clover Club Foods Co.*, 805 F.2d 920, 928 (10th Cir. 1986).

19    Bathroom tissue products, such as Georgia-Pacific's **ANGEL SOFT®** bathroom tissue,

20    are relatively inexpensive products that often are purchased individually or in packages of four to

21    twenty-four rolls, and typically retailing at low prices.  Due to the similarity of Defendants'

22    products to **ANGEL SOFT®** bathroom tissue and given these products' relatively low prices,

23    purchasers are likely to pick one product from crowded store shelves with little thought.

24    Moreover, the sale of "Angelite" products in geographic areas with a high proportion of Spanish-

25    speaking customers enhances the degree to which these consumers are likely to be confused.

26    Indeed, these consumers may rely exclusively upon the distinctive **ANGEL SOFT** Trademark

27    and graphics to identify the bathroom tissue product they prefer.  The prevalence of Spanish-

28    speaking consumers further increases the likelihood that consumers will purchase the "Angelite"

LATHAM&WATKINS<sup>LLP</sup>  NSD\90798.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY                                    14

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1  bathroom tissue, mistakenly believing it to be **ANGEL SOFT®** or associated with Georgia-

2  Pacific. Accordingly, this factor also supports a finding of likely confusion.

3        g.    **Defendants' Intent In Choosing the Marks and Images for the**
           **"Angelite" Bathroom Tissue**

4

5        Defendants are keenly aware of the tremendous commercial success of Georgia-Pacific's

6  **ANGEL SOFT®** and **ANGEL SOFT PS®** bathroom tissue. Defendants intentionally adopted

7  marks and images for their product similar to Georgia-Pacific's in an effort to trade upon the

8  goodwill and success of the **ANGEL SOFT®** brand.

9        Defendants' choice of a name virtually identical to **ANGEL SOFT®**, not to mention

10  Defendants' use of a font remarkably similar to that of Registration Number 2,512,417,

11  demonstrates Defendants' deliberate intent to trade off Georgia-Pacific's valuable goodwill in its

12  **ANGEL SOFT®** brand. It is highly unlikely that Defendants could unintentionally have chosen

13  such a strikingly similar name and design. This factor therefore also supports a finding of a

14  likelihood of confusion. *See Brookfield*, 174 F.3d at 1059 (noting that "if an infringer 'adopts his

15  designation with the intent of deriving benefit from the reputation of the trademark or trade

16  name, its intent may be sufficient to justify the inference that there are confusing similarities.'")

17  (quoting *Pac. Telesis v. Int'l Telesis Comm'cns*, 994 F.2d 1364, 1369 (9th Cir. 1993)).

18        h.    **Likelihood of Expansion of Products**

19        The final *Sleekcraft* factor is the likelihood that the parties will expand their product lines

20  into direct competition. *Sleekcraft*, 599 F.2d at 354. Here, that expansion already has occurred:

21  Georgia-Pacific and Defendants presently are selling confusingly-similar, directly-competing

22  bathroom tissue products. Accordingly, this factor also supports a finding of a likelihood of

23  confusion.

24        *              *              *

25        In sum, an analysis of each of the *Sleekcraft* factors supports a finding of likelihood of

26  confusion between Georgia-Pacific's **ANGEL SOFT** Trademarked products and Defendants'

27  competing "Angelite" products. Defendants adopted duplicate marks, applied them to identical

28  goods, and intended to trade of off Georgia-Pacific's goodwill among consumers of bathroom

LATHAM&WATKINS LLP    NSD\90798.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY                                    15

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1  tissue products.  Georgia-Pacific accordingly is likely to succeed on the merits of its Lanham Act

2  and common law trademark infringement claims.

3        **B.**    **Georgia-Pacific Also Is Likely to Prevail Upon Its Other Claims**

4        While Georgia-Pacific's high likelihood of success with regard to its trademark

5  infringement claims is alone adequate to support the entry of preliminary injunctive relief,

6  because Georgia-Pacific also is likely to prevail upon its other causes of action, additional

7  grounds for relief exist.

8        **1.**    **Georgia-Pacific Is Likely to Prevail in Its Trade Dress Claim**

9        Trade dress refers to "the total image, design, and appearance of a product and 'may

10  include features such as size, shape, color combinations, texture or graphics.'" *Clicks Billiards,*

11  *Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).  To sustain a claim for trade dress

12  infringement, Georgia-Pacific must show:  (1) that its **ANGEL SOFT®** trade dress is non-

13  functional; (2) that the **ANGEL SOFT®** trade dress serves a source-identifying role because it

14  has acquired a secondary meaning, i.e., that its trade dress is distinctive; and (3) that Defendants'

15  product creates a likelihood of consumer confusion. *Id.* at 1258.  Here, each of these criteria are

16  satisfied.

17        First, none of the elements of the **ANGEL SOFT®** trade dress—its name, graphics, color

18  scheme and overall packaging design—are functional. *See Qualitex Co. v. Jacobsen Prods. Co.*,

19  514 U.S. 159, 165 (1995) ( a product feature is functional only if it "is essential to the use or

20  purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of

21  the feature would put competitors at a significant, non-reputation related disadvantage").  Indeed,

22  the name "Angel Soft" and the overall visual impression of the combination and arrangement of

23  **ANGEL SOFT®** packaging, graphics, and other design elements is aesthetic, not functional.

24  There are a number of other names, graphics and package designs that Defendants could use to

25  promote their bathroom tissue without causing confusion with the **ANGEL SOFT®** trade dress.

26        Second, Georgia-Pacific's **ANGEL SOFT®** trade dress serves an identifying role

27  because of its inherent distinctiveness.  The **ANGEL SOFT®** trade dress includes its arbitrary

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

NSD\90798.1

16

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1 | name, graphics, and packaging design which intrinsically identify Georgia-Pacific as the source

2 | of the product. *See Two Pesos, Inc. v. Taco Cabana*, Inc., 505 U.S. 763, 769 (1992).[5]

3 |        Finally, the evidence of likelihood of confusion in this case is compelling, as discussed in

4 | detail above. Accordingly, Georgia-Pacific has demonstrated a strong likelihood of success with

5 | regard to its trade dress infringement claim.

6 |        **2.**     **Georgia-Pacific Is Likely to Prevail in Its False Designation of Origin**

7 |             **Claim**

8 |        Under federal law, a cause of action will lie for "any false designation of origin, false or

9 | misleading description of fact, or false or misleading representation of fact." Lanham Act

10 | § 43(a) (15 U.S.C. § 1125(a)). The passing off of a defendant's products as genuine products of

11 | another has long been recognized as false designation of origin under Sections 32(1) and 43(a) of

12 | the Lanham Act. *See, e.g., Thelen Oil Co., Inc. v. Fina Oil & Chem. Co.*, 962 F.2d 821, 822 (8th

13 | Cir. 1992); *Edward J. Sweeney & Sons, Inc. v. Texaco Inc.*, 637 F.2d 105, 123 (3d Cir. 1989);

14 | *Allegheny Car Wash Corp. v. Amoco Oil Co.*, 201 U.S.P.Q. 798, 800 (W.D. Pa. 1977).

15 |        To establish a violation of the Lanham Act's prohibition against false designation of

16 | origin, Georgia-Pacific must establish the same elements as are required to prove a trademark or

17 | trade dress infringement claim. *See, e.g., Kwik-Site Corp. v. Clear View Mfg. Co.*, 758 F.2d 167,

18 | 178 (6th Cir. 1985); *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444-45 (Fed. Cir.

19 | 1985). As the Ninth Circuit explained in *Qualitex Co. v. Jacobsen Products Co.*, the likelihood

---

21 | [5]    Alternatively, the **ANGEL SOFT®** trade dress has acquired secondary meaning—"the mental association by a substantial segment of consumers and potential consumers 'between the

22 | alleged mark and a single source of the product.'" *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1072-73 (N.D. Cal. 2006) (quoting *Levi Strauss & Co. v. Bluebell, Inc.*, 778 F.2d

23 | 1352-54 (9th Cir. 1985)). Extensive use and advertising with regard to a particular trade dress over a substantial period of time is enough to establish secondary meaning. *Clamp Mfg. Co. v.*

24 | *Enco Mfg. Co.*, 870 F.2d 512 (9th Cir. 1989).

25 |     As described at length above, Georgia-Pacific has been selling its **ANGEL SOFT®** bathroom tissue products with their inherently distinctive trade dress since 1944. *Supra* at 2-3.

26 | Additionally, Georgia-Pacific has spent tens of millions of dollars to advertise and to promote its **ANGEL SOFT®** and **ANGEL SOFT PS®** products. *Id.* As a result of these marketing efforts

27 | and the established **ANGEL SOFT®** brand, consumers associate the **ANGEL SOFT®** trade dress with Georgia-Pacific and its high-quality **ANGEL SOFT®** bathroom tissue products. *See*

28 | Towle Decl. ¶ 18. Collectively, these factors demonstrate that the **ANGEL SOFT®** trade dress has achieved secondary meaning in the marketplace.

LATHAM&WATKINS<sup>LLP</sup>  NSD\90798.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

17

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1    of confusion among consumers and the public is the central element of each of these claims:

2    "[T]he ultimate test [under the Lanham Act] is whether the public is likely to be deceived or

3    confused by the similarity of the marks.  Whether we call the violation infringement, unfair

4    competition or false designation of origin, the test is identical—is there a 'likelihood of

5    confusion?'"  13 F.3d 1287, 1303 (9th Cir. 1994) (quoting *New West Corp. v. NYM Co.*, 595

6    F.2d 1194, 1201 (9th Cir. 1979)).

7           Having established a high likelihood of confusion among consumers of bathroom tissue

8    products between the origins of "Angelite" products and Georgia-Pacific's **ANGEL SOFT®** and

9    **ANGEL SOFT PS®** brands of bathroom tissue, Georgia-Pacific also is likely to prevail upon its

10   false designation of origin claim.

11              **3.      Georgia-Pacific Is Likely to Prevail in Its Unfair Competition Claim**

12          State common law claims of unfair competition and actions brought pursuant to

13   California Business and Professions Code Section 17200 are "substantially congruent" to claims

14   made under the Lanham Act.  *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994);

15   *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446,

16   1457 (9th Cir. 1991); *see also Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th

17   Cir. 1988) (the "ultimate test" with respect to both a claim brought under the Lanham Act and

18   one brought pursuant to California Business and Professions Code § 17200 is "whether the

19   public is likely to be deceived or confused by the similarity of the marks"); *Meta-Film Assocs.,*

20   *Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1362 (C.D. Cal. 1984) (unfair misappropriation under the

21   Lanham Act parallel to wrongful unfair competition under § 17200).  Because these claims are

22   substantially congruent, Georgia-Pacific is likely to succeed with regard to its § 17200 claim of

23   unfair competition, just as it is likely to succeed with its trademark and trade dress infringement

24   claims, discussed above.

25      **C.     Georgia-Pacific Has Established Irreparable Injury as a Result of
                 Defendants' Conduct**

26

27          Because Georgia-Pacific has demonstrated a likelihood of confusion, irreparable injury is

28   presumed.  *GoTo.com*, 202 F.3d at 1205 n.4; *see also Metro Publishing, Ltd. v. San Jose*

1  *Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993) ("Once the plaintiff has demonstrated a

2  likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if

3  injunctive relief is not granted."). Furthermore, Defendants' infringement of the **ANGEL SOFT**

4  Trademarks creates more than just a presumption of irreparable harm to Georgia-Pacific.

5  Georgia-Pacific has spent decades and, in just the past year alone, over $22 million dollars

6  advertising and promoting the **ANGEL SOFT®** product line. Towle Decl. ¶ 12. As a result, the

7  **ANGEL SOFT** Trademarks have become extremely valuable assets to Georgia-Pacific as

8  identifiers of its goods and of the substantial goodwill Georgia-Pacific has earned over its years

9  in the market. *Id.* Consumers inadvertently purchasing the "Angelite" product thinking it was

10  **ANGEL SOFT®** bathroom tissue will be extremely disappointed by the inferior quality. Such a

11  misperception among consumers would irreparably tarnish and damage the substantial goodwill

12  that Georgia-Pacific has built in the **ANGEL SOFT®** product line. Preliminary injunctive relief

13  is therefore critical to preventing Defendants' trademark infringement from irreparably injuring

14  Georgia-Pacific. *See Rent-A-Center, Inc. v. Canyon Television & Appliance*, 944 F.2d 597, 603

15  (9th Cir. 1991).

16      **D.**    **The Balance of Hardships Favors Granting Preliminary Injunctive Relief**

17      Because Georgia-Pacific has established both a likelihood of success on the merits and

18  irreparable harm, the Court may grant preliminary injunctive relief on that basis alone.

19  *GoTo.com*, 202 F.3d at 1204-05. Nevertheless, consideration of the balance of the hardships also

20  weighs in favor of preliminary injunctive relief.

21      Georgia-Pacific has spent many years and millions of dollars developing and promoting

22  its **ANGEL SOFT®** and **ANGEL SOFT PS®** products, which are well-recognized and very

23  successful. Despite this success, as a result of Defendants' conduct, Georgia-Pacific stands to

24  lose much of the goodwill it has worked so hard to gain. Consumers who purchase "Angelite"

25  products thinking that they are Georgia-Pacific products inevitably will be disappointed and

26  consequently may never again hold Georgia-Pacific in the same regard.

27      Defendants, by contrast, have made no investment in the **ANGEL SOFT®** and **ANGEL**

28  **SOFT PS®** name, high-quality, or packaging design. Nothing prevents Defendants from

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

NSD\90798.1

19

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1   distributing, marketing, and selling bathroom tissue products under another name and with

2   another design.  Thus, if Defendants are prohibited from distributing and selling their infringing

3   products in packaging that is substantially similar to Georgia-Pacific's trademarks and trade

4   dress, Defendants will remain free to distribute, market, and sell their bathroom tissue products

5   under another name and with a different, unique design.

6        Preliminary injunctive relief will prevent Defendants only from continuing to mislead the

7   public by distributing and selling the misleading "Angelite" product.  This minimal "hardship" to

8   Defendants is far outweighed by the undisputed and continuing injury to Georgia-Pacific's

9   business reputation and goodwill.  Accordingly, the balance of hardships tips decidedly in favor

10  of the issuance of a temporary restraining order and preliminary injunction prohibiting the sale

11  and distribution of "Angelite" products.

12       **E.    Preliminary Injunctive Relief Would Serve the Public Interest**

13       Finally, preliminary injunctive relief in favor of Georgia-Pacific would serve the public

14  interest.  "It is well established that trademark law protects not only the private interests of the

15  trademark owner but also the public's interest in not being confused by the infringing

16  products. . . .  Thus, the purchasing public is an unnamed party in every action for trademark

17  infringement."  *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1075 (C.D. Cal.

18  2004).  Here, the grant of preliminary injunctive relief is necessary to protect consumers from the

19  harm that would arise from confusion between Georgia-Pacific's **ANGEL SOFT®** bathroom

20  tissue and Defendants' inferior "Angelite" product. Accordingly, this factor also supports the

21  grant of preliminary injunctive relief.

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

NSD\90798.1

20

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION

1

## V.    CONCLUSION

2    For the foregoing reasons, Georgia-Pacific respectfully requests that the Court grant a

3    temporary restraining order and a preliminary injunction enjoining Defendants from promoting

4    and marketing their "Angelite" bathroom tissue products.

5    Dated:  December 20, 2007                    Respectfully submitted,

6                                                LATHAM & WATKINS LLP

7
                                        By: _____
8                                           Stephen P. Swinton
                                            Attorneys for Plaintiff
9                                           Georgia-Pacific Consumer Products LP
                                            E-mail: steve.swinton@lw.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY    NSD\90798.1

21

MEMORANDUM OF PS & AS ISO PLAINTIFF'S
*EX PARTE* APPLICATION FOR A TRO AND
OSC RE PRELIMINARY INJUNCTION