LATHAM & WATKINS LLP
Stephen P. Swinton (Bar No. 106398)
steve.swinton@lw.com
Adam A. Welland (Bar No. 228680)
adam.welland@lw.com
12636 High Bluff Drive, Suite 400
San Diego, California  92130-2071
Telephone:  (858) 523-5400
Facsimile:  (858) 523-5450

Attorneys for Plaintiff,
GEORGIA-PACIFIC CONSUMER PRODUCTS LP

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, a Delaware limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>LEE'S GENERAL TOYS, INC., a California corporation, JOHN LEE, an individual; and DOES 1-100,<br><br>Defendants. | Civil Action No.  07-CV-2391 JAH (POR)<br><br>**MOTION FOR LEAVE TO FILE A REPLY TO DEFENDANTS' DECLARATION OF RONALD MARTINETTI IN OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Date:      January 14, 2008<br>Time:      2:30 p.m.<br>Judge:    Hon. John A. Houston |

Plaintiff Georgia-Pacific Consumer Products LP ("Georgia-Pacific") hereby moves the Court for leave to file a Reply to Defendants' Declaration of Ronald Martinetti in Opposition to Motion for Temporary Restraining Order ("Opposition").

The arguments contained in Defendants' Opposition are without merit and irrelevant, and also mischaracterize Georgia Pacific's motion.  Further, based upon information recently obtained concerning Defendants, Georgia-Pacific has newly-acquired, relevant evidence that casts significant doubt on Defendants' arguments and alleged good faith.  Accordingly, Georgia-Pacific respectfully requests that the Court permit it to file the attached brief Reply to address these issues

1    A copy of Georgia-Pacific's Reply to Defendants' Declaration of Ronald Martinetti in

2   Opposition to Motion for Temporary Restraining Order is attached hereto as Exhibit A; and a

3   copy of the Declaration of Joseph Miller in support of Georgia-Pacific's Reply is attached hereto

4   as Exhibit B.

5

6   Dated: January 11, 2008                    LATHAM & WATKINS LLP

7

8                                              By:    /s/ Stephen P. Swinton
                                                    Stephen P. Swinton
9                                                   Attorneys for Plaintiff
                                                    Georgia-Pacific Consumer Products LP
10                                                  E-mail: steve.swinton@lw.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

1  LATHAM & WATKINS LLP
   Stephen P. Swinton (Bar No. 106398)
2  steve.swinton@lw.com
   Adam A. Welland (Bar No. 228680)
3  adam.welland@lw.com
   12636 High Bluff Drive, Suite 400
4  San Diego, California  92130-2071
   Telephone:  (858) 523-5400
5  Facsimile:  (858) 523-5450

6  Attorneys for Plaintiff,
   GEORGIA-PACIFIC CONSUMER PRODUCTS LP

7

8               IN THE UNITED STATES DISTRICT COURT

9            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11 GEORGIA-PACIFIC CONSUMER          )   Civil Action No.  07-CV-2391 JAH (POR)
   PRODUCTS LP, a Delaware limited   )
12 partnership,                      )   **REPLY TO DEFENDANTS'**
                                     )   **DECLARATION OF RONALD**
13              Plaintiff,           )   **MARTINETTI IN OPPOSITION TO**
                                     )   **MOTION FOR TEMPORARY**
14         v.                        )   **RESTRAINING ORDER**
                                     )
15 LEE'S GENERAL TOYS, INC., a California )
   corporation, JOHN LEE, an individual; and )   Date:      January 14, 2008
16 DOES 1-100,                       )   Time:      2:30 p.m.
                                     )   Judge:     Hon. John A. Houston
17              Defendants.          )
                                     )
18                                   )
                                     )
19 _____ )

20 **I.    INTRODUCTION**

21         Plaintiff Georgia-Pacific Consumer Products LP ("Georgia-Pacific") respectfully submits

22 this response to Defendants' Declaration of R. Martinetti in Opposition to Motion for Temporary

23 Restraining Order ("Opposition"). The Opposition is both untimely[1] and replete with irrelevant

24 and unmeritorious arguments.  Georgia-Pacific presents these additional arguments to rebut the

25 deficiencies and inaccuracies in Defendants' Opposition.

26

27 _____

28 [1]  According to the Court's Order dated December 20, 2007, Defendants' Opposition was due on
       January 7, 2008.  Plaintiff therefore objects to the Opposition as untimely and believes it
       should be rejected on this ground alone.

LATHAM&WATKINS LLP    NSD\91508.2
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

1    **II.    ARGUMENT**

2        A.    **Defendants' "Angelite" Logo Is Confusingly Similar To Plaintiff's ANGEL**
             **SOFT Trademarks**

3

4            Defendants' Opposition fails to adequately distinguish "Angelite" from the

5    **ANGEL SOFT** Trademarks (as defined in Memorandum of Points and Authorities in Support of

6    Plaintiff Georgia-Pacific Consumer Products LP's *Ex Parte* Application for a TRO and Order to

7    Show Cause Re: Preliminary Injunction ("Memo") at 4). Defendants point to alleged differences

8    that are of no consequence. For instance, Defendants' emphasis on the word "soft" in the

9    **ANGEL SOFT** Trademarks is misplaced. It is well established that "a trademark infringer need

10   not expropriate the entire mark of another to be guilty of an enjoinable offense if the imitation is

11   of the most salient feature of the mark in question." *Carter-Wallace, Inc. v. Procter & Gamble*

12   *Co.*, 434 F.2d 794, 801 (9th Cir. 1970); *see also LoneStar Steakhouse & Saloon, Inc. v. Alpha of*

13   *Virginia, Inc.*, 43 F.3d 922 (7th Cir. 1995) (explaining that "greater weight [is] given to the

14   dominant or salient portions of the marks"). This is the exact situation in the instant case, in

15   which Defendants have copied the "Angel" portion, the most salient portion, of Georgia-

16   Pacific's trademarks.

17           The Federal Circuit employed the same reasoning in *Century 21 Real Estate Corp. v.*

18   *Century Life of America*, 970 F.2d 874 (Fed. Cir. 1992). The Federal Circuit found the "Central"

19   portion of the marks at issue to be the dominant feature, and held that "upon encountering each

20   mark, consumers must first notice this identical lead word." *Id.* at 876. The Court went on to

21   hold that the marks were confusingly similar. The same conclusion should be reached here.

22   Consumers will first notice the identical lead word "Angel," the most dominant portion of the

23   mark, and will confuse "Angelite" for Georgia-Pacific's product. It is exactly this type of

24   confusion from which Georgia-Pacific must protect itself, and why its request for a preliminary

25   injunction should be granted.

26           Defendants' other attempts to distinguish are similarly without merit, and also ignore the

27   salient portion of the marks. The color of Defendants' packaging has no bearing in this case.

28   Opp. at ¶ 3. The **ANGEL SOFT** Trademarks are not limited to any specific color scheme.

1    Further, the size of the logo is also wholly irrelevant. *Id*. The **ANGEL SOFT** Trademarks are

2    not limited to any specific size. Additionally, while Defendants allude to alleged differences in

3    typeface, *id.*, only one of the **ANGEL SOFT** Trademarks claims a stylized typeface, none of the

4    others are so limited. *See* Memo at 4.

5        Defendants, in fact, appear to be incorrectly comparing the "Angelite" logo to a picture in

6    Plaintiff's Memo of a logo on actual **ANGEL SOFT®** bathroom tissue. The correct comparison

7    is to the asserted **ANGEL SOFT** Trademarks, not a single instance in which one such trademark

8    is used on a commercial product. This deficiency is likely because when the correct comparison

9    is made, it is apparent that "Angelite" is confusingly similar to the **ANGEL SOFT** Trademarks.

10   **B.    Confusion In The Marketplace Will Irreparably Harm Georgia-Pacific**

11       The inevitable confusion amongst consumers will damage Georgia-Pacific's

12   reputation and diminish the goodwill associated with its products. First, the quality of the

13   "Angelite" bathroom tissue is dramatically inferior to the **ANGEL SOFT®** brand bath tissue.

14   Georgia-Pacific conducted various quality control tests on the "Angelite" product and packaging

15   – the same routine tests that Georgia-Pacific conducts on its own bathroom tissue. *See*

16   Declaration of Joseph H. Miller ("Miller Decl."), ¶¶ 2 - 3. Specifically, key features indicative

17   of quality – brightness and dirt count – were evaluated for the "Angelite 525" bathroom tissue

18   and compared to Georgia-Pacific's **ANGEL SOFT®** 469 count bath tissue quality standards. *Id*.

19   These tests revealed vast differences in quality.

20       Both the brightness and dirt count (the amount of dirt specks) characteristics of a bath

21   tissue product are significant to consumers because the product is used for personal hygiene. *Id*.

22   at ¶¶ 5, 7. Thus, dullness or discoloration are understood to indicate an unsanitary and poor

23   quality product, as would the presence of dirt specks. Georgia-Pacific expends great efforts and

24   resources to ensure that its products do not convey such an image to consumers. The "Angelite"

25   product, however, does not possess the same high quality standards. Its brightness rating was

26   only 75%, which is considerably lower than that of the **ANGEL SOFT®** product. *Id*. at ¶ 6.

27   Further, the amount of dirt in the "Angelite 525" bath tissue was several times greater with some

28   dirt even visible to the naked eye. *Id*. at ¶¶ 7 - 8. Thus, consumers who purchase "Angelite"

1    expecting it to be **ANGEL SOFT®** will be disappointed, and will associate an inferior quality

2    with Georgia-Pacific's bath tissue products.    This can greatly damage the reputation and

3    goodwill that Georgia-Pacific has amassed over the years.

4        This reputational harm is further enhanced by the fact that the "Angelite" packaging

5    contains unlawful levels of lead.  The Coalition of Northeastern Governors ("CONEG") has

6    developed model legislation to protect against dangerous levels of metals, such as lead, in

7    product packaging.  *Id.* at ¶ 9.  Nineteen states have adopted legislation based upon this model,

8    including California.  Under both CONEG and California legislation, product packaging cannot

9    contain more than 100 parts per million (ppm) of mercury, lead, cadmium, and hexavalent

10   chromium combined.  *Id.*  Testing of the "Angelite" product packaging revealed a lead content of

11   550 ppm.  *Id.* at ¶ 11.  Therefore, just the amount of lead alone far exceeds the specified limit.

12   Any association of such packaging with Georgia-Pacific would cause further irreparable harm to

13   its reputation and goodwill.

14   **III.    CONCLUSION**

15       For the foregoing reasons, Plaintiff respectfully requests that this Court preliminarily

16   enjoin Defendants from infringing the **ANGEL SOFT** Trademarks.

17

18   Dated:  January 11, 2008                    LATHAM & WATKINS LLP

19                                        By:    /s/ Stephen P. Swinton
                                               Stephen P. Swinton
20                                             Attorneys for Plaintiff
                                               Georgia-Pacific Consumer Products LP
21                                             E-mail: steve.swinton@lw.com

22        .

23

24

25

26

27

28

**EXHIBIT B**

1   LATHAM & WATKINS LLP
    Stephen P. Swinton (Bar No. 106398)
2   steve.swinton@lw.com
    Adam A. Welland (Bar No. 228680)
3   adam.welland@lw.com
    12636 High Bluff Drive, Suite 400
4   San Diego, California  92130-2071
    Telephone:  (858) 523-5400
5   Facsimile:  (858) 523-5450

6   Attorneys for Plaintiff,
    GEORGIA-PACIFIC CONSUMER PRODUCTS LP

7

8               IN THE UNITED STATES DISTRICT COURT

9            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11   GEORGIA-PACIFIC CONSUMER     )  Civil Action No. 07-CV-02391 JAH (POR)
    PRODUCTS LP, a Delaware limited   )
12   partnership,                    )  **DECLARATION OF JOSEPH H. MILLER**
                         )
13            Plaintiff,       )
                         )
14       v.                   )
                         )
15   LEE'S GENERAL TOYS, INC., a California )
    corporation, JOHN LEE, an individual; and )
16   DOES 1-100,                  )
                         )
17           Defendants.      )
                         )
18                          )
    _____)
19

20

21

22

23

24

25

26

27

28

1    I, Joseph H. Miller, hereby declare as follows:

2    1.    I am Vice President of Research & Technology for Georgia-Pacific Consumer

3    Products LP ("Georgia-Pacific").  I have personal knowledge of the matters set forth below and

4    could and would testify competently thereto if necessary.

5    2.    Our consumer products – including our bath tissue sold under our **ANGEL**

6    **SOFT®** brand - must meet our rigorous standards of quality.  As a result, we endure significant

7    expense to ensure that our products adhere to high quality standards. I supervise the Research &

8    Technology department for all of our consumer products, which is largely responsible for the

9    testing associated with maintaining our quality control standards.  Examples of some of our key

10   quality control efforts for bath tissue include measuring and controlling the appearance of the

11   product including the brightness and dirt count as well as periodic workmanship audits of both

12   the bath tissue and the packaging itself.

13   3.    Separately packaged rolls of bath tissue bearing the Angelite 525 logo - that I

14   understand to be at issue in this litigation - were received on January 3, 2008 at Georgia-Pacific's

15   Analytical Research Laboratory, 1915 Marathon Avenue, Neenah, Wisconsin 54957.  We

16   subjected the Angelite 525 bath tissue to several of the same, routine quality control tests that we

17   conduct on our own **ANGEL SOFT®** bath tissue.  This testing was conducted under my

18   direction and supervision on January 4, 2008.

19   **TESTING OF BATH TISSUE**

20   4.    To facilitate our analysis, we removed the packaging and extracted samples of

21   both brands of bath tissue using heptane and deionized water in accordance with a modified FDA

22   extraction method.

23   **A.    Brightness**

24   5.    The samples were tested to determine the MacBeth 3100 Brightness percentage.

25   This is a significant factor affecting quality because it is indicative of the whiteness of the

26   product, which is important to consumers because bath tissue is used in personal hygiene.  This

27   was accomplished by conducting testing in our laboratory.  Because there is no industry standard

28   test to determine brightness, we used our internal testing methodology, which involves

1   illuminating the sample with a visible light source and measuring the reflectance off the sample.

2       6.      The Angelite 525 bath tissue had a brightness level of 75%. This is significant

3   because it demonstrates that the Angelite 525 brand of bath tissue is substantially lower in

4   brightness as compared to our **ANGEL SOFT®** brand of bath tissue. Accordingly, consumers

5   may perceive the Angelite 525 bath tissue as unsanitary.

6   B.      <u>**Dirt Count**</u>

7       7.      The samples were also tested to determine the dirt count. This is a significant

8   factor affecting quality because consumers may perceive specks found in bath tissue as foreign

9   matter or contamination. Because bath tissue is used in personal hygiene, consumers may

10  consider bath tissue with specks as unsanitary. Similar to the brightness test, there is no standard

11  industry test methodology to evaluate the dirt count, so we used our internal testing protocol in

12  which we examine the sheet with reflected light and count as foreign matter any material that is

13  greater than 0.02mm in area.

14      8.      The Angelite 525 bath tissue had a dirt count of 297. These results are significant

15  because they show the Angelite 525 brand of bath tissue to be several times higher in dirt count

16  as compared to **ANGEL SOFT®** brand of bath tissue. In fact, the specks of dirt actually are

17  visible on the Angelite 525 bath tissue. As with brightness, consumers may perceive the

18  Angelite 525 bath tissue, which has visible dirt specks negatively or to be unsanitary.

19

20                          <u>**TESTING OF PACKAGING**</u>

21      9.      I understand that the Coalition of Northeastern Governors ("CONEG") has

22  developed model legislation to protect against dangerous levels of metals, such as lead, in

23  product packaging. Nineteen states have legislation that is based on this model legislation,

24  including California. *See* Cal. Health & Safety §§ 25214.11 – 25214.20 (2004), copy attached

25  hereto as Exhibit 1. Under the CONEG model legislation, and in California, product packaging

26  should not contain more than 100 parts per million ("ppm") of mercury, lead, cadmium, and

27  hexavalent chromium combined.

28      10.     To test the packaging for the presence of such metals, such as lead, printed areas

1   of the poly wrap samples were ashed in replicate, which means we burned the packaging and

2   analysed the remaining ashes.  One ash sample from each poly wrap was heat digested – or

3   combined - with nitric acid and analyzed for metals by using an instrument called Inductively

4   Coupled Plasma spectroscopy

5         11.    Our analysis revealed a lead content in the Angelite 525 packaging of 550 ppm.

6   Therefore, just lead alone in the tested packaging far exceeds the legal limit for such metals.

7

8        I declare under penalty of perjury under the laws of the United States that the foregoing is

9   true and correct and that this declaration was executed by me on this 10th day of January 2008.

10

11                                  Joseph H. Miller

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

CALIFORNIA CODES
HEALTH AND **SAFETY CODE**
SECTION **25214.11**-25214.21


**25214.11.**    (a) The Legislature finds and declares all of the
following:
     (1) The management of solid waste can pose a wide range of hazards
to public health and **safety** and to the environment.
     (2) Packaging comprises a significant percentage of the overall
solid waste stream.
     (3) The presence of heavy metals in packaging is a part of the
total concern regarding the disposal of hazardous constituents in the
solid waste stream, in light of the presence of heavy metals in
emissions or ash when packaging is incinerated, or in leachate when
packaging is disposed of in a solid waste landfill.
     (4) Lead, mercury, cadmium, and hexavalent chromium, on the basis
of available scientific and medical evidence, are of particular
concern.
     (5) It is desirable, as a first step in reducing the toxicity of
packaging waste, and reducing the hazardous materials that may be
disposed of in solid waste landfills, to eliminate the addition of
these heavy metals to packaging.
     (6) The intent of this article is to achieve this reduction in
toxicity without impeding or discouraging the expanded use of
recycled materials in the production of packaging and its components.

     (b) This article shall be known, and may be cited, as the "Toxics
in Packaging Prevention Act."


**25214.**12.    For purposes of this article, the following terms have
the following meanings:
     (a) "ASTM" means the American Society for Testing and Materials.
     (b) "Distribution" means the practice of taking title to a package
or a packaging component for promotional purposes or resale.  A
person involved solely in delivering a package or a packaging
component on behalf of a third party is not engaging in distribution.

     (c) (1) "Intentional introduction" means the act of deliberately
utilizing a regulated metal in the formation of a package or
packaging component where its continued presence is desired in the
final package or packaging component to provide a specific
characteristic, appearance, or quality.
     (2) "Intentional introduction" does not include either of the
following:
     (A) The use of a regulated metal as a processing agent or
intermediate to impart certain chemical or physical changes during
manufacturing, where the incidental retention of a residue of that
metal in the final package or packaging component is not desired or
deliberate, if the final package or packaging component is in
compliance with subdivision (c) of Section **25214**.13.
     (B) The use of recycled materials as feedstock for the manufacture
of new packaging materials, where some portion of the recycled
materials may contain amounts of a regulated metal, if the new
package or packaging component is in compliance with subdivision (c)
of Section **25214**.13.

(d) "Incidental presence" means the presence of a regulated metal as an unintended or undesired ingredient of a package or packaging component.

(e) "Manufacturer" means any person, firm, association, partnership, or corporation producing a package or packaging component.

(f) "Manufacturing" means the physical or chemical modification of a material to produce packaging or a packaging component.

(g) "Package" means any container, produced either domestically or in a foreign country, providing a means of marketing, protecting, or handling a product, including a unity package, an intermediate package or a shipping container, as defined in the ASTM specification D996. "Package" also includes unsealed receptacles, including carrying cases, crates, cups, pails, rigid foil and other trays, wrappers and wrapping films, bags, and tubs.

(h) "Packaging component" means any individual assembled part of a package that is produced either domestically or in a foreign country, including, but not necessarily limited to, any interior or exterior blocking, bracing, cushioning, weatherproofing, exterior strapping, coatings, closures, inks, labels, dyes, pigments, adhesives, stabilizers, or any other additives. Tin-plated steel that meets the ASTM specification A623 shall be considered as a single package component. Electrogalvanized coated steel and hot dipped coated galvanized steel that meet the ASTM qualifications A591, A653, A879, and A924 shall be treated in the same manner as tin-plated steel.

(i) "Purchaser" means a person who purchases and takes title to a package or a packaging component, from a manufacturer or supplier, for the purpose of packaging a product manufactured, distributed, or sold by the purchaser.

(j) "Recycled material" means a material that has been separated from solid waste for the purpose of recycling the material as a secondary material feedstock. Recycled materials include paper, plastic, wood, glass, ceramics, metals, and other materials, except that recycled material does not include a regulated metal that has been separated from other materials into its elemental or other chemical state for recycling as a secondary material feedstock.

(k) "Regulated metal" means lead, mercury, cadmium, or hexavalent chromium.

(l) (1) "Supplier" means a person who does or is one or more of the following:

(A) Sells, offers for sale, or offers for promotional purposes, a package or packaging component that is used by any other person to package a product.

(B) Takes title to a package or a packaging component, produced either domestically or in a foreign country, that is purchased for resale or promotional purposes.

(C) Acts as an intermediary for the purchase of a package or packaging component for resale from a manufacturer located in another country to a purchaser located in this state, and who may receive a commission or a fee on that sale.

(D) Listed as the importer of record on a United States Customs Service form for an imported package or packaging component.

(2) "Supplier" does not include a person involved solely in delivering a package or packaging component on behalf of a third party.

(m) "Toxics in Packaging Clearinghouse" means the Toxics in Packaging Clearinghouse (TPCH) of the Council of State Governments.

25214.13.    (a) Except as provided in Section 25214.14, on and after January 1, 2006, a manufacturer or supplier may not offer for sale or for promotional purposes in this state a package or packaging component that includes a regulated metal, in the package itself, or in a packaging component, if the regulated metal has been intentionally introduced into the package or packaging component during manufacturing or distribution.

(b) Except as provided in Section 25214.14, on and after January 1, 2006, a person may not offer for sale or for promotional purposes in this state a product in a package that includes a regulated metal, in the package itself, or in a packaging component, if the regulated metal has been intentionally introduced into the package or packaging component during manufacturing or distribution.

(c) Except as provided in Section 25214.14, on and after January 1, 2006, the sum of the incidental total concentration levels of all regulated metals present in a single-component package or in an individual packaging component may not exceed 100 parts per million by weight.


25214.14.    A package or a packaging component is exempt from the requirements of Section 25214.13, and shall be deemed in compliance with this article, if the manufacturer or supplier complies with the applicable documentation requirements specified in Section 25214.15 and the package or packaging component meets any of the following conditions:

(a) The package or packaging component is marked with a **code** indicating a date of manufacture prior to January 1, 2006.

(b) A regulated metal has been added to the package or packaging component in the manufacturing, forming, printing, or distribution process, to comply with the health or **safety** requirements of a federal or state law.

(c) (1) The package or packaging component contains no intentionally introduced regulated metals, but exceeds the applicable maximum concentration level set forth in subdivision (c) of Section 25214.13 only because of the addition of a recycled material.

(2) This subdivision, and all exemptions provided pursuant to it, expire on January 1, 2010.

(d) (1) A regulated metal has been added to the package or packaging component in the manufacturing, forming, printing, or distribution process for a use for which there is no feasible alternative.

(2) For purposes of this subdivision, "a use for which there is no feasible alternative" means a use, other than for purposes of marketing, for which a regulated metal is essential to the protection, safe handling, or function, of the package's contents, and technical constraints preclude the substitution of other materials.

(e) (1) The package or packaging component is reused and contains no intentionally introduced regulated metals, but exceeds the applicable maximum concentration level set forth in subdivision (c) of Section 25214.13, and all of the following apply:

(A) The product being conveyed by the package, the package, or packaging component is otherwise regulated under a federal or state health or **safety** requirement.

(B) The transportation of the packaged product is regulated under federal or state transportation requirements.

(C) The disposal of the package is otherwise performed according

to the requirements of this chapter or Chapter 8 (commencing with Section 114960) of Part 9 of Division 104.

(2) This subdivision, and all exemptions provided pursuant to it, expire on January 1, 2010.

(f) (1) The package or packaging component has a controlled distribution and reuse and contains no intentionally introduced regulated metals, but exceeds the applicable maximum concentration level set forth in subdivision (c) of Section 25214.13.

(2) This subdivision, and all exemptions provided pursuant to it, expire on January 1, 2010.

(g) (1) The packaging or packaging component is a glass or ceramic package or packaging component that has a vitrified label, and that, when tested in accordance with the Waste Extraction Test, described in Appendix II of Chapter 11 (commencing with Section 66261.1) of Division 4.5 of Title 22 of the California Code of Regulations does not exceed 1.0 ppm for cadmium, 5.0 ppm for hexavalent chromium, or 5.0 ppm for lead.  A glass or ceramic package or packaging component containing mercury is not exempted pursuant to this subdivision.

(2) This subdivision, and all exemptions provided pursuant to it, expire on January 1, 2010.


25214.15.  (a) A package or packaging component qualifies for an exemption pursuant to Section 25214.14 only if the manufacturer or supplier prepares, retains and biennially updates documentation containing all of the following information for that package or packaging component:

(1) A statement that the documentation applies to an exemption from the requirements of Section 25214.13.

(2) The name, position, and contact information for the person who is the manufacturer's or supplier's contact person on all matters concerning the exemption.

(3) An identification of the exemption and a reference to the applicable subdivision in Section 25214.14 setting forth the conditions for the exemption.

(4) A description of the type of package or packaging component to which the exemption applies.

(5) Identification of the type and concentration of the regulated metal or metals present in the package or packaging component, and a description of the testing methods used to determine the concentration.

(6) An explanation of the reason for the exemption.

(7) Supporting documentation that fully and clearly demonstrates that the package or packaging component is eligible for the exemption.

(8) The documentation listed in subdivisions (b), (c), (d), (e), (f), (g), or (h), whichever is applicable for the exemption.

(b) If an exemption is being claimed under subdivision (a) of Section 25214.14, the manufacturer or supplier shall prepare, retain, and biennially update documentation containing all of the following information for the package or packaging component to which the exemption applies:

(1) Date of manufacture.

(2) Estimated time needed to exhaust current inventory.

(3) Alternative package or packaging component that meets the requirements of Section 25214.13.

(c) If an exemption is being claimed under subdivision (b) of Section 25214.14, the manufacturer or supplier shall prepare, retain, and biennially update documentation that contains all of the

WAIS Document Retrieval

following information for each regulated metal intentionally
introduced in the package or packaging component to which the
exemption applies:

    (1) Identification of the specific federal or state law requiring
the addition of the regulated metal to the package or packaging
component.

    (2) Detailed information that fully and clearly demonstrates that
the addition of the regulated metal to the package or packaging
component is necessary to comply with the law identified pursuant to
paragraph (1).

    (3) A description of past, current, and planned future efforts to
seek or develop alternatives to eliminate the use of the regulated
metal in the package or packaging component.

    (4) A description of all alternative measures that have been
considered, and, for each alternative, an explanation as to why the
alternative is not satisfactory for purposes of achieving compliance
with the law identified pursuant to paragraph (1).

    (d) If an exemption is being claimed under subdivision (c) of
Section 25214.14, the manufacturer or supplier shall prepare, retain,
and biennially update documentation containing all of the following
information for the package or packaging component to which the
exemption applies:

    (1) The type and percentage of recycled material or materials
added to the package or packaging component.

    (2) The type and concentration of each regulated metal contained
in each recycled material added to the package or packaging
component.

    (3) Efforts to minimize or eliminate the regulated metals in the
package or packaging component.

    (4) A description of past, current, and planned future efforts to
seek or develop alternatives to minimize or eliminate the use of the
regulated metal in the package or packaging component.

    (e) If an exemption is being claimed under subdivision (d) of
Section 25214.14, the manufacturer or supplier shall prepare, retain,
and biennially update documentation containing all of the following
information for each regulated metal intentionally introduced into
the package or packaging component to which the exemption applies:

    (1) Detailed information and evidence that fully and clearly
demonstrates how the regulated metal contributes to, and is essential
to, the protection, safe handling, or functioning of the package's
contents.

    (2) A description of past, current, and planned future efforts to
seek or develop alternatives to minimize or eliminate the use of the
regulated metal in the package or packaging component.

    (3) A description of all alternative measures that have been
considered, and, for each alternative, an explanation as to the
technical constraints that preclude substitution of the alternative
for the use of the regulated metal.

    (4) Documentation that the regulated metal is not being used for
the purposes of marketing.

    (f) If an exemption is being claimed under subdivision (e) of
Section 25214.14, the manufacturer or supplier shall prepare, retain,
and biennially update documentation containing all of the following
information for the package or packaging component to which the
exemption applies:

    (1) The percentage of reused materials.

    (2) Identification of the federal or state health or **safety** law
regulating the product being conveyed by the package, the package, or
the packaging component.

    (3) Identification of the federal or state transportation law

regulating the transportation of the packaged product.

(4) Information demonstrating that the package is disposed of in accordance with the requirements of this chapter or Chapter 8 (commencing with Section 114960) of Part 9 of Division 104.

(5) A description of past, current, and planned future efforts to seek or develop alternatives to minimize or eliminate the use of the regulated metal in the package or packaging component.

(g) If an exemption is being claimed under subdivision (f) of Section 25214.14, the manufacturer or supplier shall prepare, retain, and biennially update documentation containing all of the following information for the package or packaging component to which the exemption applies:

(1) The percentage of reused materials.

(2) Information and evidence that demonstrates that the environmental benefit of the controlled distribution and reuse of the package or packaging component is significantly greater, as compared to the same package or packaging component manufactured in compliance with the applicable maximum concentration level set forth in subdivision (c) of Section 25214.13.

(3) A means of identifying, in a permanent and visible manner, any reusable package or packaging component containing a regulated metal for which the exemption is sought.

(4) A method of regulatory and financial accountability, so that a specified percentage of the reusable packages or packaging components that are manufactured and distributed to other persons are not discarded by those persons after use, but are returned to the manufacturer or identified designees.

(5) A system of inventory and record maintenance to account for reusable packages or packaging components placed in, and removed from, service.

(6) A means of transforming returned packages or packaging components that are no longer reusable into recycled materials for manufacturing, or a means of collecting and managing returned packages or packaging components as waste in accordance with applicable federal and state law.

(7) A description of past, current, and planned future efforts to seek or develop alternatives to minimize or eliminate the use of the regulated metal in the package or packaging component.

(h) If an exemption is being claimed under subdivision (g) of Section 25214.14, the manufacturer or supplier shall prepare, retain, and biennially update the following documentation for the package or packaging component to which the exemption applies:

(1) Applicable test data.

(2) A description of past, current, and planned future efforts to seek or develop alternatives to minimize or eliminate the use of the regulated metal in the package or packaging component.

(i) A manufacturer or supplier shall submit the documentation required pursuant to subdivisions (a) to (h), inclusive, to the department, as follows:

(1) Upon receipt of a written request from the department, the manufacturer or supplier shall, on or before 30 calendar days after the date of receipt, do one of the following:

(A) Submit the required documentation to the department.

(B) Submit a letter to the department indicating the date by which the documentation shall be submitted, which may be no more than 90 calendar days after the date of receipt of the department's request.

(2) If the department finds that the documentation supplied pursuant to paragraph (1) is incomplete or incorrect, the department shall notify the manufacturer or supplier that the documentation is

incomplete or incorrect, and the manufacturer or supplier shall
submit complete and correct documentation to the department within 60
calendar days after the date of receipt of the notification.
    (j) If a manufacturer or supplier fails to comply with subdivision
(i) by any of the specified dates in that subdivision, the
manufacturer or supplier shall, with respect to the package or
packaging component to which the documentation request applies,
comply with one of the following:
    (1) Immediately cease to offer the package or packaging component
for sale or for promotional purposes in this state.
    (2) Replace the package or packaging component with a package or
packaging component that conforms with the regulated metals
limitations specified in Section 25214.13, in accordance with a
schedule approved in writing by the department.
    (3) Submit complete and correct documentation for the package or
packaging component, in accordance with a schedule approved in
writing by the department.
    (k) A glass bottle package with paint or applied ceramic
decoration on the bottle does not qualify for an exemption pursuant
to Section 25214.14, if the paint or applied ceramic decoration
contains lead or lead compounds in excess of 0.06 percent by weight.


25214.16.  (a) On and after January 1, 2006, each manufacturer or
supplier shall furnish a certificate of compliance to the purchaser
of a package or packaging component, even when the purchaser is also
a supplier, stating that the package or packaging component is in
compliance with the requirements of this article. However, if,
pursuant to Section 25214.14, the package is exempt from the
requirements of Section 25214.13, the certificate of compliance shall
state the specific basis upon which the exemption is claimed. The
certificate of compliance shall be signed by an authorized official
of the manufacturer or supplier. A copy of the certificate of
compliance shall be kept on file by the manufacturer or supplier of
the package or packaging component.
    (b) A purchaser of a package or packaging component subject to
subdivision (a) shall retain the certificate of compliance for as
long as the package or packaging component is in use by the
purchaser.
    (c) The manufacturer or supplier shall furnish to the department a
copy of the certificate of compliance for each package or packaging
component for which an exemption is claimed under Section 25214.14 at
the time when a certificate of compliance for that package or
packaging component is first furnished to a purchaser. If no
exemption is claimed for a package or packaging component, the
manufacturer or supplier shall provide to the department upon request
a copy of the certificate of compliance for that package or
packaging component.
    (d) If a manufacturer or supplier of a package or packaging
component subject to subdivision (a) reformulates or creates a new
package or packaging component, the manufacturer or supplier shall
provide the purchaser, and, if the package or packaging component is
exempt, the department, with an amended or new certificate of
compliance for the reformulated or new package or packaging
component.


25214.17.  (a) Except as provided in subdivision (b), the
department, pursuant to the California Public Records Act (Chapter

3.5 (commencing with Section 6250) of Division 7 of Title 1 of the
Government **Code**), shall provide the public with access to all
information relating to a package or packaging component that has
been submitted to the department by a manufacturer or supplier of a
package or packaging component pursuant to this article.
    (b) (1) The department shall keep confidential any information
identified by the manufacturer or supplier, pursuant to paragraph
(2), as proprietary in nature, including trade secrets, as defined in
Section 25173.
    (2) A manufacturer or supplier providing information to the
department pursuant to this article shall, at the time of submission,
identify all information which the manufacturer or supplier believes
is proprietary in nature.  The department shall make available to
the public any information not identified by the manufacturer or
supplier as proprietary in nature.


**25214**.18.  If the department determines that other substances
contained in packaging should be added as regulated metals to the
list set forth in subdivision (k) of Section **25214**.12 in order to
further reduce the toxicity of packaging waste, the department may
submit recommendations to the Governor and the Legislature for
additions to the list, along with a description of the nature of the
substitutes used in lieu of the recommended additions to the list.


**25214**.19.  This article does not do the following:
    (a) Affect a duty or other requirement imposed under federal or
state law.
    (b) Alter or diminish a legal obligation otherwise required in
common law or by statute or regulation.
    (c) Create or enlarge a defense in an action to enforce a legal
obligation otherwise required in common law or by statute or
regulation.


**25214**.20.  (a) The provisions of this article are severable, and if
a court holds that a phrase, clause, sentence, or provision of this
article is invalid, or that its applicability to a person or
circumstance is invalid, the remainder of the article and its
applicability to other persons and circumstances may not be affected.

    (b) The provisions of this article shall be liberally construed to
give effect to the purposes of this article.


**25214**.21.  The department may enforce the requirements of this
article pursuant to its authority to enforce this chapter under all
applicable provisions of law.

1

**PROOF OF SERVICE**

2   I am employed in the County of San Diego, State of California. I am over the age of 18 years and

3 not a party to this action. My business address is Latham & Watkins LLP, 12636 High Bluff Drive,

4 Suite 400, San Diego, CA 92130.

5   On **January 11, 2008**, I served the following document described as:

6  **1.**  **MOTION FOR LEAVE TO FILE A REPLY TO DEFENDANTS'**
      **DECLARATION OF RONALD MARTINETTI IN OPPOSITION**

7      **TO MOTION FOR TEMPORARY RESTRAINING ORDER;**

8

9  **2.**  **[PROPOSED] ORDER GRANTING MOTION FOR LEAVE TO**
      **FILE A REPLY TO DEFENDANTS' DECLARATION OF R.**
      **MARTINETTI IN OPPOSITION TO MOTION FOR TEMPORARY**

10      **RESTRAINING ORDER**

11 by serving a true copy of the above-described document in the following manner:

12             **BY FACSIMILE**

13   I am familiar with the office practice of Latham & Watkins LLP for collecting, processing, and

14 transmitting facsimiles. Under that practice, when a facsimile is deposited with the Latham & Watkins

15 LLP personnel responsible for facsimiles, such facsimile is transmitted that same day in the ordinary

16 course of business. I deposited the above-described document for facsimile transmission in accordance

17 with the office practice of Latham & Watkins LLP for collecting and processing facsimiles. The

18 facsimile of the above-described document was transmitted to the following parties from San Diego,

19 California on January 11, 2008:

20  Ronald Martinetti, Esq.
   Kazanjian & Martinetti

21  520 East Wilson Avenue
   Glendale, CA 91206

22  Tel: 818-241-1011
   Fax: 818-241-2193

23

24   The facsimile number of the sending machine is 858-523-5450. Said transmission was complete

25 and without error. All parties on whom this facsimile transmission has been served have agreed in

26 writing to such form of service pursuant to agreement.

27

28

LATHAM&WATKINS NSD\91676.1                   Civil Action No. 07-CV-2391 JAH (POR)
ATTORNEYS AT LAW
SAN DIEGO               1

1    **BY OVERNIGHT MAIL DELIVERY (SATURDAY DELIVERY)**

2        I am familiar with the office practice of Latham & Watkins LLP for collecting and processing

3    documents for overnight mail delivery by Federal Express.  Under that practice, documents are deposited

4    with the Latham & Watkins LLP personnel responsible for depositing documents in a facility regularly

5    maintained for receipt of overnight mail by Federal Express; such documents are delivered for overnight

6    mail delivery by Federal Express on that same day in the ordinary course of business, with delivery fees

7    thereon fully prepaid and/or provided for.  I deposited in Latham & Watkins LLP' interoffice mail a

8    sealed envelope or package containing the above-described document and addressed as set forth below in

9    accordance with the office practice of Latham & Watkins LLP for collecting and processing documents

10   for Federal Express:

11       Ronald Martinetti, Esq.
    Kazanjian & Martinetti
12       520 East Wilson Avenue
    Glendale, CA 91206
13       Tel:  818-241-1011
    Fax: 818-241-2193
14

15       I declare that I am employed in the office of a member of the Bar of, or permitted to practice

16   before, this Court at whose direction the service was made and declare under penalty of perjury under the

17   laws of the State of California that the foregoing is true and correct.

18       Executed on **January 11, 2008**, at San Diego, California.

19

20                       Alison L. Montera

21

22

23

24

25

26

27

28