1  LATHAM & WATKINS LLP
   Stephen P. Swinton (Bar No. 106398)
2  steve.swinton@lw.com
   Adam A. Welland (Bar No. 228680)
3  adam.welland@lw.com
   12636 High Bluff Drive, Suite 400
4  San Diego, California 92130-2071
   Telephone: (858) 523-5400
5  Facsimile: (858) 523-5450

6  Attorneys for Plaintiff,
   GEORGIA-PACIFIC CONSUMER PRODUCTS LP
7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  GEORGIA-PACIFIC CONSUMER          )   CIVIL ACTION NO. 07-CV-02391 JAH POR
    PRODUCTS LP, a Delaware limited   )
12  partnership,                      )
                                      )
13              Plaintiff,            )   **PLAINTIFF GEORGIA-PACIFIC'S *EX***
                                      )   ***PARTE* APPLICATION FOR EXPEDITED**
14        v.                          )   **DISCOVERY**
                                      )
15  LEE'S GENERAL TOYS, INC., a California )
    corporation, JOHN LEE, an individual; and )
16  DOES 1-100,                       )
                                      )
17              Defendants.           )
                                      )
18                                    )
                                      )
19  _____)

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Plaintiff Georgia-Pacific Consumer Products LP ("Georgia-Pacific") seeks limited expedited discovery so that it can halt and prevent—once and for all—the unauthorized sale of bathroom tissue products bearing marks that are confusingly similar to Georgia-Pacific's **ANGEL SOFT®** trademarks by Defendants John Lee and Lee's General Toys ("Defendants"). Georgia-Pacific recently became aware that Defendants were importing, marketing, and distributing a variety of bathroom tissue products under the name "Angelite," including "Angelite 500," "Angelite 525," and "Angelite 1500" (collectively referred to herein as "Angelite"). Defendants have admitted that they distributed and sold products bearing these "Angelite" marks that are confusingly similar to Georgia-Pacific's **ANGEL SOFT®** trademarks. By so doing, Defendants have infringed upon Georgia-Pacific's trademarks, causing irreparable harm to Georgia-Pacific. Georgia-Pacific accordingly has applied for preliminary injunctive relief to protect itself from further irreparable injury, which is pending before this Court.

To prevent further injury to its valuable brands, Georgia-Pacific informally requested that Defendants disclose the source from which they received the offending products, the retail establishments to which Defendants have distributed the offending products, and financial records pertaining to Defendants' distribution and sale of the offending products – Defendants have thus far refused to fully cooperate and have made only minimal and evasive disclosures.

Further, in so far evading a Court order to cease all distribution of "Angelite" products, Defendants have injected numerous claims and "facts" into the case through declarations. Georgia-Pacific thus requires discovery to test their veracity. The need for expediting this discovery stems from the irreparable harm that Georgia-Pacific is currently enduring coupled with the fact that the Court has ordered Georgia-Pacific to submit supplemental briefing in support of its application for a preliminary injunction by <u>February 15, 2008</u>. Georgia-Pacific therefore moves the Court[1] to authorize limited, expedited discovery so that it may test the veracity of Defendants claims and identify the full extent of Defendants' infringing activities, in

---

[1]    This application is made *ex parte*. Pursuant to Local Rule 83.3(h)(2)(1), it is supported by a declaration stating that Defendants have been notified of and served with this application in a timely fashion. *See* Declaration of Adam Welland ("Welland Declaration"), ¶ 3, filed herewith.

1  advance of the Court's disposition of Georgia-Pacific's pending preliminary injunction

2  application. This discovery will enable Georgia-Pacific to obtain preliminary injunctive relief

3  and to take appropriate steps to put an end to Defendants' injury-causing behavior.[2]

4  **II.    BACKGROUND**

5        **A.    Georgia-Pacific's ANGEL SOFT® Trademarks**

6        Georgia-Pacific is a world leader in the manufacturing and marketing of tissue products,

7  among a variety of other products. Welland Decl., Ex. 1 at ¶ 2 (Declaration of Andrew Towle).

8  Among these products are **ANGEL SOFT®** and **ANGEL SOFT PS®** brands of bathroom

9  tissue.    Through Georgia-Pacific's substantial advertising and quality control programs,

10  consumers have come to associate the **ANGEL SOFT®** and **ANGEL SOFT PS®** brands of

11  bathroom tissue with Georgia-Pacific and its corresponding reputation for quality products. *Id.*

12  ¶ 18.    As a result of Georgia-Pacific's significant investment of time, money and effort, the

13  **ANGEL SOFT®** and **ANGEL SOFT PS®** brands have enjoyed enormous success. *Id.*

14        As part of its effort to protect these successful brands, Georgia-Pacific and its

15  predecessors in interest applied for and obtained several federally registered trademarks

16  containing the words "Angel Soft," including Registration Numbers 781,414; 1,172,215; and

17  2,512,417. *Id.* ¶ 7; Welland Decl., Exs. 2-4. These trademarks are collectively referred to herein

18  as the "**ANGEL SOFT** Trademarks." Georgia-Pacific has used the **ANGEL SOFT®** name and

19  its related trademarks to identify its bathroom tissue products since 1944. Welland Decl., Ex. 1

20  at ¶ 4.    Through continuous use and notoriety, some of these trademarks have become both

21  famous and incontestable. *Id.* ¶ 8. Equally important, the **ANGEL SOFT** Trademarks have

22  become extraordinarily valuable as identifiers of Georgia-Pacific and its bathroom tissue

23  products. *Id.* ¶ 18.

24        Defendants' inferior-quality "Angelite" products bear marks and images that are

25  confusingly similar to the **ANGEL SOFT** Trademarks. Defendants' use of the word "Angel" or

26  "Angelite" in their product labeling is inherently misleading and suggests an affiliation with

27

28  [2]  Plaintiff's proposed Requests for Production and Notice of Deposition of Defendant John
Lee are attached hereto as Exhibits A and B.

1    Georgia-Pacific's superior, and well-known **ANGEL SOFT®** bathroom tissue products.  Indeed,

2    Defendants' selection of the word "Angel" or "Angelite"—an arbitrary mark which has nothing

3    whatsoever to do with bathroom tissue products—reveals Defendants' intention to capitalize

4    upon Georgia-Pacific's goodwill.

5          **B.      Procedural History**

6          To protect its valuable trademarks, on December 20, 2007, Georgia-Pacific filed its

7    complaint in this action, along with an application for a temporary restraining order, or order to

8    show cause why a preliminary injunction should not be granted, in which Georgia-Pacific sought

9    an order prohibiting Defendants from distributing, selling, or marketing their "Angelite"-branded

10   bathroom tissue products.  Dkt ## 1, 5.  On the same date, December 20, 2007, the Court denied

11   Georgia-Pacific's application, subject to re-consideration upon further briefing and argument.

12   Dkt # 7.  The Court set a deadline by which Defendants could submit an opposition to Georgia-

13   Pacific's application and set the matter for hearing on January 14, 2008.  *Id.*  Defendants filed

14   their response in opposition to Georgia-Pacific's application on January 9, 2008, Dkt # 10, and

15   Georgia-Pacific filed a reply on January 14, 2008.  Dkt ## 12, 16.  During the hearing on

16   January 14, 2008, the parties informed the Court that they required additional time to confer

17   regarding the possibility that they might agree to a stipulated preliminary injunction prohibiting

18   Defendants from distributing, selling or marketing any "Angelite" products.  The Court

19   accordingly continued the hearing until January 28, 2008.  Dkt #14.

20         Prior to this hearing, Defendants filed a declaration and lodged photographs in which

21   they injected additional claims and facts into the case, which remain untested pending Georgia-

22   Pacific's ability to obtain expedited discovery.  Dkt ## 18, 20.  On January 28, 2008, the parties

23   appeared for hearing on Georgia-Pacific's application.  During this hearing, Defendants asserted

24   that they had taken some steps to discontinue distribution and sale of products bearing the

25   "Angelite" marks, including removal of "Angelite" packaging from all bathroom tissue products.

26   *See* Dkt ## 18, 20.  Although Georgia-Pacific argued that such conduct by Defendants was

27   insufficient as a matter of law to protect Georgia-Pacific from irreparable injury to its brands, the

28   Court denied Georgia-Pacific's application for a temporary restraining order.  *See* Dkt # 21.

1    With regard to Georgia-Pacific's application for a preliminary injunction, the Court notified the

2    parties that they should submit supplemental briefing regarding Georgia-Pacific's application for

3    a preliminary injunction.  *See id.*  In particular, the Court requested the parties submit further

4    briefing and additional evidence concerning the factors pertinent to the Court's analysis of a

5    likelihood of confusion between Georgia-Pacific's **ANGEL SOFT** Trademarks and the

6    "Angelite" marks.  *See id.*  The Court set a briefing schedule which requires Georgia-Pacific to

7    file its opening brief on February 15, 2008.  *Id.*

8        **C.    Disclosures Sought By Georgia-Pacific**

9        Since filing the complaint in this action, Georgia-Pacific has contacted Defendants on

10   numerous occasions to request Defendants' cooperation through disclosure of the source or

11   sources from which Defendants have received the offending products, the retail establishments

12   or other customers to whom Defendants have distributed these products, information relating to

13   any pending or issue "Angelite" trademarks, and financial records documenting the full extent of

14   Defendants' infringing activities.  Welland Decl., ¶ 7.  Indeed, in Georgia-Pacific's initial

15   communications with Defendants, in December 2007, Georgia-Pacific made clear its request for

16   full disclosure of details regarding the distribution networks for "Angelite" products.  *Id.*  While

17   Defendants took some steps to respond to Georgia-Pacific's request, by letter dated December

18   31, 2007, Defendants' initial disclosure contained only the manufacturer and agent in China as

19   well as minimal financial information *without any supporting documentation*, which was then

20   *contradicted* by a later disclosure.  *Id.*

21       Accordingly, Georgia-Pacific continued to request Defendants' full cooperation in

22   disclosures regarding the sources of the offending "Angelite" products, the Defendants' own

23   distribution network, and related financial information.  Welland Decl., ¶ 8, Exs. 6-8.  To date,

24   Defendants have failed to adequately provide the disclosures requested by Georgia-Pacific.

25   Welland Decl., ¶ 11.  While Defendants have provided some additional information pursuant to

26   Georgia-Pacific's requests, these disclosures—which are contained in a single-page letter—are

27   extremely minimal, inherently suspect, and again unsupported by any documentation *Id*.  As a

28   result, these disclosures are simply statements and do not provide any means for Georgia-Pacific

1    to test the veracity of the various claims and facts that Defendants have injected into this lawsuit

2    to avoid a Court order.

3         For instance, Defendants possess a California trademark registration for the mark

4    "Angelite," which they claim to have held since 2003, yet they claim to have imported no more

5    than six containers—*in total*—of bathroom tissue carrying this mark, amounting to less than

6    $40,000 worth of goods. *Id.* Given that Defendants have obtained a California state trademark

7    registration in 2003, sought and abandoned a federal trademark in 2003 – 2004, and are currently

8    seeking a federal trademark registration for this mark, Defendants' assertion that that only six

9    containers have been imported is suspect. *Id.* The costs associated with these trademark

10   applications, including the need to hire an attorney, as well as the fact that such applications were

11   filed almost five years ago suggest that distribution and sale of "Angelite" products may be far

12   more extensive and profitable than Defendants contend. *Id.*

13        Defendants also have repeatedly refused to enter a stipulated preliminary injunction

14   prohibiting them from distributing and/or selling warehoused or future shipments of "Angelite"

15   products, despite Defendants' expressed willingness to discontinue these activities. Welland

16   Decl., ¶ 12. Defendants' refusal to agree to a stipulated preliminary injunction has further

17   aroused Georgia-Pacific's suspicions and heightens Georgia-Pacific's need to conduct limited,

18   expedited discovery. *Id.*

19        Given Defendants' unexplained refusal to assist Georgia-Pacific in its efforts to gather

20   information concerning the extent of the distribution for these "Angelite" products, Georgia-

21   Pacific cannot at this time determine whether the steps Defendants have taken to remove

22   packaging bearing the "Angelite" marks and to halt further distribution of products bearing those

23   marks are sufficient to prevent further injury to Georgia-Pacific's **ANGEL SOFT** trademarks.

24   The force of legal process is therefore needed to allow Georgia-Pacific to discover information

25   sufficient to enable Georgia-Pacific to obtain preliminary injunctive relief from the Court, in

26   keeping with the Court's expedited schedule, and thereby avoid further irreparable harm to its

27   extremely valuable brands.

28

### III.     DISCUSSION

1    The Court has discretion to grant the expedited discovery sought by Georgia-Pacific. *See*

2  Fed. R. Civ. P. 26(d). A party seeking expedited discovery need only show "good cause" for its

3  requested departure from usual discovery procedures. *Qwest Communs. Int'l Inc. v. Worldquest*

4  *Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003). Although there is no generally accepted

5  test used to identify those situations in which good cause for expedited discovery exists, several

6  guidelines can be gleaned from the available case law.

7    First, the Court should consider the scope of the requested discovery in determining

8  whether good cause exists for that request. *E.g., Qwest Comm'cns Int'l*, 213 F.R.D. at 420

9  (citing cases); *Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475

10  (S.D.N.Y. 1990) (evaluating whether there is "some evidence that the injury that will result

11  without expedited discovery looms greater than the injury that the defendant will suffer if the

12  expedited relief is granted"). Second, the expedited discovery should allow the moving party to

13  avoid an injury that it would otherwise suffer were it required to wait the normal time. *E.g.,*

14  *Twentieth Century Fox*, 749 F. Supp. at 475 (requiring "some connection between expedited

15  discovery and the avoidance of the irreparable injury"); *Fimab-Finanziaria Maglificio Biellese*

16  *Fratelli Fila S.P.A. v. Kitchen*, 548 F. Supp. 248, 250 (S.D. Fla. 1982) (explaining that

17  "[e]xpedited discovery should be granted when some unusual circumstances or conditions exist

18  that would likely prejudice the party if he were required to wait the normal time"). Finally, the

19  fact that a party is seeking a preliminary injunction or is asserting claims of infringement weighs

20  in favor of granting expedited discovery. *E.g., Qwest Comm'cns*, 213 F.R.D. at 419; *see also,*

21  *e.g.,* Fed. R. Civ. P. 26 adv. comm. note (explaining that expedited discovery "will be

22  appropriate in some cases, such as those involving requests for a preliminary injunction").

23    In this case, all three factors weigh in favor of granting the expedited discovery requested

24  by Georgia-Pacific. First, the expedited discovery sought by Georgia-Pacific is extremely

25  limited. Georgia-Pacific simply seeks the names of, and contact information for, Defendants'

26  sources and distributors dating back to the first sale, sales and financial records pertaining to

27  products bearing the infringing marks dating back to the first sale, and records concerning

1    prosecution of state or federal trademarks for "Angelite" or confusingly similar marks.  To

2    obtain this information, Georgia-Pacific proposes to serve a narrowly-tailored set of requests for

3    production of documents and to take one deposition, that of Defendant John Lee.  *See* Exhibits A

4    & B.  The burden this discovery places upon Defendants is minimal, and will permit Georgia-

5    Pacific to test the genuineness of the facts plead by Defendants so far.

6         The second factor also weighs in favor of granting Georgia-Pacific's request.  With

7    nothing preventing Defendants, or Defendants' sources or customers, from continuing to

8    distribute or sell products bearing the infringing "Angelite" marks, expedited discovery will

9    enable Georgia-Pacific to pursue additional efforts to end the irreparable harm arising from

10   Defendants' distribution and sale of those products.  Defendants' actions, and possibly the

11   actions of Defendants' sources and customers, have caused, and continue to cause, harm to

12   Georgia-Pacific's sales, brand name, reputation and goodwill.  Many of these harms, such as the

13   harm to Georgia-Pacific's brand name and reputation, are irreparable and have no adequate

14   remedy at law.  *See*, *e.g.*, *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*, 383 F.3d 110, 125 (3d

15   Cir. 2003) ("'[T]rademark infringement amounts to irreparable injury as a matter of law.'")

16   (citation omitted); *Int'l Kennel Club, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir.

17   1988) ( "'[T]he damages occasioned by trademark infringement are by their very nature

18   irreparable and not susceptible of adequate measurement for remedy at law'") (citation omitted);

19   *PepsiCo Inc. v. Reyes*, 70 F. Supp. 2d 1057, 1060 (C.D. Cal. 1999).  Indeed, the longer

20   Defendants delay identification of the sources of the "Angelite" products, the greater these harms

21   become.  *Cf. Int'l Kennel Club*, 846 F.2d at 1092 ("'[T]he most corrosive and irreparable harm

22   attributable to trademark infringement is the inability of the victim to control the nature and

23   quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff

24   can properly insist that its reputation should not be imperiled by the acts of another.'") (citation

25   omitted).  Requiring Georgia-Pacific to delay its discovery until later in the proceedings would

26   cause it to continue to suffer irreparable harm to its brand name, reputation and goodwill.

27        Finally, not only is Georgia-Pacific asserting claims of trademark infringement, but,

28   similar to many cases in which expedited discovery is granted, Georgia-Pacific also seeks a

1   preliminary injunction to enjoin Defendants from continuing their illegal conduct. *See, e.g.,*

2   *Sega Enters., Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1516 (9th Cir. 1992) (describing district

3   court's order allowing expedited discovery preceding preliminary injunction hearing on Lanham

4   Act claims); *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 924 F. Supp. 1559, 1563 n.3

5   (S.D. Cal. 1996) (describing magistrate judge's allowance of expedited discovery preceding

6   preliminary injunction hearing in trademark and copyright case), *aff'd*, 109 F.3d 1394 (9th Cir.

7   1997); *AT&T Corp. v. Vision One Sec. Sys.*, 914 F. Supp. 392, 396 (S.D. Cal. 1995) (describing

8   expedited discovery order preceding preliminary injunction ruling on trademark claim).

9   Georgia-Pacific's application for a preliminary injunction is scheduled to be briefed and argued

10  on an expedited schedule; indeed, the Court has identified specific areas as to which the Court

11  has requested the parties provide supplemental briefing and *evidence*. Thus, immediate limited

12  discovery to permit Georgia-Pacific to develop certain critical evidence in advance of the Court's

13  supplemental briefing deadline—February 15, 2008—is especially warranted.

14       In short, with all three of the pertinent factors weighing in Georgia-Pacific's favor—most

15  especially the extremely limited nature of the discovery Georgia-Pacific seeks—Georgia-Pacific

16  has established good cause for its request that the Court depart from the usual discovery

17  procedures in this case.

18  **IV.    CONCLUSION**

19       For the foregoing reasons, Georgia-Pacific respectfully requests this Court enter an order

20  (1) requiring Defendants to respond to the requests for production of documents attached as

21  Exhibit A and to serve their responses no later than five days from the date of that order; and (2)

22  requiring Defendant John Lee to appear for deposition pursuant to the notice of deposition

23  attached as Exhibit B on February 11, 2008 in Los Angeles, California.

24

25  Dated: February 1, 2008                    LATHAM & WATKINS LLP

26

27                                    By: /s/ Stephen P. Swinton
                                          Attorneys for Plaintiff
                                          Georgia-Pacific Consumer Products LP
28                                        E-mail: steve.swinton@lw.com

1

## **EXHIBITS**

2   EXHIBIT A:   Georgia-Pacific Consumer Products LP's First Set of Requests for Production of
              Documents and Things to Lee's General Toys, Inc.

3

4   EXHIBIT B:   Notice of Deposition of John Lee.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

LATHAM & WATKINS LLP
Stephen P. Swinton (Bar No. 106398)
steve.swinton@lw.com
Adam A. Welland (Bar No. 228680)
adam.welland@lw.com
12636 High Bluff Drive, Suite 400
San Diego, California 92130-2071
Telephone: (858) 523-5400
Facsimile: (858) 523-5450

Attorneys for Plaintiff,
GEORGIA-PACIFIC CONSUMER PRODUCTS LP

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, a Delaware limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>LEE'S GENERAL TOYS, INC., a California corporation, JOHN LEE, an individual; and DOES 1-100,<br><br>Defendants. | Civil Action No. 07-CV-2391 JAH (POR)<br><br>**GEORGIA-PACIFIC CONSUMER PRODUCTS LP'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO LEE'S GENERAL TOYS, INC.**<br><br>Judge:    Hon. John A. Houston |

**PROPOUNDING PARTY:**    **Georgia-Pacific Consumer Products LP**

**RESPONDING PARTY:**    **Lee's General Toys, Inc.**

**SET NUMBER:**    **One**

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff Georgia-Pacific Consumer Products LP ("Georgia-Pacific") hereby requests that within <u>five (5)</u> days of service hereof all documents and tangible things described below be produced for its inspection and/or copying by Defendant Lee's General Toys, Inc. ("LGT") in accordance with the Definitions and Instructions set forth below at the offices of its counsel, Latham & Watkins LLP, 12636 High Bluff Drive, Suite 400, San Diego, CA 92130.

## DEFINITIONS AND INSTRUCTIONS

1.     "LGT," "you" and "your" refer to Lee's General Toys, Inc., any and all of its predecessors, successors, assigns, parent companies, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, accountants, investigators, and/or other persons acting or purporting to act on behalf of any of them for any purpose, including but not limited to Defendant John Lee.

2.     The term "DOCUMENT" or "DOCUMENTS" refers to any and all written, recorded (by tape, video or otherwise), graphic, or photographic matter, however produced or reproduced, pertaining in any manner to the subject matter indicated and includes, without limiting the generality of the foregoing, all agreements, appointment books, bills, books, cablegrams, calendars, cars, charts, checks, computer data, computer hard copy, computer printouts, contracts, correspondence, credit memoranda, diaries, electronic mail, expense accounts, file cards, films, financial statements and reports, invoices, journals, ledgers, letters, logs, maps, memoranda, memorials of telephone conversations, microfilm, minutes, notes, notices, papers, purchase orders, receipts, recordings by any medium, records, reports, slides, statements, telegrams, telexes, timesheets, web pages, and any other pertinent information set forth in written language or any electronic representation thereof, including all originals, copies and drafts of any such document.  You are on notice that the term "DOCUMENT" or "DOCUMENTS" specifically includes computer files, the contents of diskettes and electronic mail.

3.     The connectives "AND," "OR," and "AND/OR" shall be construed either disjunctively or conjunctively, as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.     The word "EACH" as used herein includes the word "EVERY," and the word "EVERY" as used herein includes the word "EACH," as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

1    5.    The word "ANY" as used herein includes the word "ALL," and the word "ALL"

2  as used herein includes the word "ANY," as necessary to bring within the scope of the discovery

3  request all responses that might otherwise be construed to be outside of its scope.

4    6.    The term "ALL" shall be construed to include the term "EACH and "EACH"

5  shall be construed to include the term "ALL," as necessary to bring within the scope of the

6  discovery request all responses that might otherwise be construed to be outside of its scope.

7    7.    The terms "RELATING TO" and "REFERRING TO" shall mean relating to,

8  referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, describing,

9  depicting, discussing, commenting on, embodying, responding to, supporting, contradicting, or

10  constituting (in whole or part), as the context makes appropriate.

11    8.    The term "ANGELITE PRODUCT(S)" refers to any bathroom tissue or related

12  product or packaging bearing the name "Angelite," or any close variation thereof, located

13  anywhere on such product or packaging.

14    9.    The use of the singular form of any word includes the plural and vice-versa, as

15  necessary to bring within the scope of the discovery request all responses that might otherwise be

16  construed to be outside of its scope.

17    **INSTRUCTIONS**

18    1.    With respect to any claim of privilege by LGT regarding any information,

19  document, or communication sought by any of Georgia-Pacific's discovery requests, LGT is

20  hereby requested, pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure, to identify

21  each such communication, information, or document withheld on grounds of an alleged

22  privilege, and specifically set forth the following:

23    (a)    the nature and basis of the privilege claimed;

24    (b)    the author(s);

25    (c)    the addressee(s), including the recipients of copies;

26    (d)    the date of the communication, document, or information;

27    (e)    the subject matter of the communication, document, or information;

28

1           (f)    if the privilege claimed is the attorney-client privilege, and indication of

2                which author(s) or addressee(s) is/are attorneys; and

3           (g)    any other information necessary to support the claim of privilege.

4        2.    If it is maintained that any requested document has been destroyed, identify such

5    document, set forth the contents of the document, state the date of such destruction, and identify

6    the person(s) who authorized or directed such destruction.

7        3.    The documents requested hereby specifically include, but are not limited to, those

8    documents in LGT's possession, custody, or control or the possession, custody, or control of

9    LGT's present and former employees, directors, officers, affiliates, and any other person or

10   entity acting or purporting to act on LGT's behalf.

11       4.    To the extent accounting, financial, and sales data are maintained in both hard

12   copy and magnetic or electronic form, the requests for production cover both forms.

13       5.    You are to produce the original and each non-identical copy of each document or

14   other tangible thing requested herein which is in your possession, custody or control.

15       6.    If a request is silent as to the time period for which production of documents and

16   things is sought, you are to produce all documents originated in whole or in part and of all things

17   within your possession, custody, or control at any time during the period, beginning with the first

18   day of 2000 through the date of your production.

19       7.    All requested documents shall be produced to GEORGIA-PACIFIC in the same

20   file or other organizational environment in which they are kept by LGT.   For example, a

21   document that is part of a file, docket or other grouping should be physically produced together

22   with all other documents from said file, docket or grouping responsive to the Request, in the

23   same order or manner of arrangement as the original.

24       8.    The following requests are continuing and LGT is reminded of its obligation for

25   timely supplementation pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

26

27

28

**DOCUMENTS AND THINGS TO BE PRODUCED**

**REQUEST FOR PRODUCTION NO. 1:**

Documents sufficient to identify the distribution network for the ANGELITE PRODUCTS, including but not limited to the names and addresses of any and all direct and indirect manufacturers, agents, suppliers, and customers that LGT has used to obtain and distribute these products.

**REQUEST FOR PRODUCTION NO. 2:**

Documents sufficient to identify the amount of current inventory of ANGELITE PRODUCTS of which LGT is aware, including but not limited to that in possession of any individuals or entities in the distribution network referred to in the above Request for Production No. 1.

**REQUEST FOR PRODUCTION NO. 3:**

ALL DOCUMENTS RELATING TO sales or distribution of ANGELITE PRODUCTS spanning from LGT's first sale of such products to present, including but not limited to any balance sheets, financial statements or records, invoices, and tax documents.

**REQUEST FOR PRODUCTION NO. 4:**

ALL DOCUMENTS RELATING TO importation of ANGELITE PRODUCTS spanning from LGT's first importation of such products to present, including but not limited to any invoices or customs records.

**REQUEST FOR PRODUCTION NO. 5:**

ALL DOCUMENTS RELATING TO the marketing of ANGELITE PRODUCTS spanning from LGT's first instance of marketing of such products to present.

**REQUEST FOR PRODUCTION NO. 6:**

ALL DOCUMENTS RELATING TO any knowledge of GEORGIA-PACIFIC's **ANGEL SOFT®** brand bathroom tissue or GEORGIA-PACIFIC's "**ANGEL SOFT**" trademarks.

1    **REQUEST FOR PRODUCTION NO. 7:**

2          ALL DOCUMENTS RELATING TO the prosecution of any state or federal trademarks

3    for "Angelite," or any close variation.

4

5    Dated:  February 1, 2008            LATHAM & WATKINS LLP

6

7                              By:   /s/ Stephen P. Swinton
                              Attorneys for Plaintiff

8                                  Georgia-Pacific Consumer Products LP
                              E-mail: steve.swinton@lw.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT B**

1 | LATHAM & WATKINS LLP
Stephen P. Swinton (Bar No. 106398)
2 | steve.swinton@lw.com
Adam A. Welland (Bar No. 228680)
3 | adam.welland@lw.com
12636 High Bluff Drive, Suite 400
4 | San Diego, California 92130-2071
Telephone: (858) 523-5400
5 | Facsimile: (858) 523-5450

6 | Attorneys for Plaintiff,
GEORGIA-PACIFIC CONSUMER PRODUCTS LP
7

8 | IN THE UNITED STATES DISTRICT COURT

9 | FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11 | GEORGIA-PACIFIC CONSUMER ) Civil Action No. 07-CV-2391 JAH (POR)
PRODUCTS LP, a Delaware limited )
12 | partnership, ) **NOTICE OF DEPOSITION OF JOHN LEE**
)
13 | Plaintiff, )
)
14 | v. )
)
15 | LEE'S GENERAL TOYS, INC., a California ) Judge:    Hon. John A. Houston
corporation, JOHN LEE, an individual; and )
16 | DOES 1-100, )
)
17 | Defendants. )
)
18 | )
)
19 | _____ )

20 |    NOTICE IS HEREBY GIVEN pursuant to Rules 26 and 30 of the Federal Rules of Civil

21 | Procedure that Plaintiff Georgia-Pacific Consumer Products LP ("Georgia-Pacific") will take the

22 | deposition of defendant John Lee on February 11, 2008 at 9:30 a.m., at the offices of Latham &

23 | Watkins LLP, 633 West Fifth Street, Suite 4000, Los Angeles, CA 90071-2007, or such other

24 | location as may be mutually agreed to by the parties.

25 |    NOTICE IS FURTHER GIVEN that the deposition noticed above will be recorded

26 | stenographically, and through real-time court reporting, such as by LiveNote. The deposition

27 | will be taken before a notary public or other person authorized to administer oaths and will

28 | continue from day-to-day until completed, Saturdays, Sundays and holidays excepted. The

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY

NSD\92525.1

1

Civil Action No. 07-CV-2391 JAH (POR)

1  deposition will be recorded by audio or video technology, such as video tape, and Georgia-

2  Pacific reserves the right to use at any hearing or trial a video recording of the deposition

3  testimony.

4

5  Dated:  February 1, 2008                    LATHAM & WATKINS LLP

6

7                                              By:    /s/ Stephen P. Swinton
                                                   Stephen P. Swinton
8                                                  Attorneys for Plaintiff
                                                   Georgia-Pacific Consumer Products LP
9                                                  E-mail: steve.swinton@lw.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

     I am employed in the County of San Diego, State of California.  I am over the age of 18 years and

3

not a party to this action.  My business address is Latham & Watkins LLP, 12636 High Bluff Drive,

4

Suite 400, San Diego, CA 92130.

5

     On **February 1, 2008**, I served the following document described as:

6

     **1.**     **PLAINTIFF GEORGIA-PACIFIC'S *EX PARTE* APPLICATION FOR EXPEDITED DISCOVERY;**

7

8

     **2.**     **DECLARATION OF ADAM A. WELLAND IN SUPPORT OF PLAINTIFF GEORGIA-PACIFIC'S EX PARTE APPLICATION FOR EXPEDITED**

9

     **DISCOVERY**

10

by serving a true copy of the above-described document in the following manner:

11

**BY ELECTRONIC FILING**

12

     I am familiar with the United States District Court, Southern District of California's

13

practice for collecting and processing electronic filings.  Under that practice, documents are

14

electronically filed with the court.  The court's CM/ECF system will generate a Notice of

15

Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the

16

case.  The NEF will constitute service of the document.  Registration as a CM/ECF user

17

constitutes consent to electronic service through the court's transmission facilities.  Under said

18

practice, the following CM/ECF users were served:

19

    Ronald Martinetti, Esq.

20

    Kazanjian & Martinetti
    520 East Wilson Avenue
    Glendale, CA 91206

21

    Tel:  818-241-1011
    Fax: 818-241-2193

22

23

     I declare that I am employed in the office of a member of the Bar of, or permitted to

24

practice before, this Court at whose direction the service was made and declare under penalty of

25

perjury under the laws of the State of California that the foregoing is true and correct.

26

     Executed on February 1, 2008, at San Diego, California.

27

28

                                Alison L. Montera