LATHAM & WATKINS LLP
Stephen P. Swinton (Bar No. 106398)
steve.swinton@lw.com
Adam A. Welland (Bar No. 228680)
adam.welland@lw.com
12636 High Bluff Drive, Suite 400
San Diego, California 92130-2071
Telephone: (858) 523-5400
Facsimile: (858) 523-5450

Attorneys for Plaintiff,
GEORGIA-PACIFIC CONSUMER PRODUCTS LP

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, a Delaware limited partnership,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>LEE'S GENERAL TOYS, INC., a California corporation, JOHN LEE, an individual; and DOES 1-100,<br><br>　　　　　　Defendants. | Civil Action No. 07-CV-02391 JAH (POR)<br><br>**PLAINTIFF GEORGIA-PACIFIC CONSUMER PRODUCTS LP'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     THE CONTINUING NEED FOR PRELIMINARY INJUNCTIVE
        RELIEF ........................................................................................................... 2

III.    ARGUMENT ................................................................................................... 3

        A.      Defendants Distributed "Angelite" Products to Intentionally
                Confuse Consumers ............................................................................ 3

        B.      Defendants' "Angelite" and Georgia-Pacific's ANGEL SOFT®
                Products Are Sold in the Same Marketing Channels ............................ 5

        C.      Additional *Sleekcraft* Factors Support the Entry of a Preliminary
                Injunction ........................................................................................... 5

        D.      Georgia-Pacific's Distinctive ANGEL SOFT Trademarks Are
                Entitled To A High Degree Of Protection ........................................... 6

        E.      Defendants' California Registration for "Angel Lite" Is Irrelevant ................... 10

                1.      Defendants' State Trademark Registration Is Pre-empted
                        By Georgia-Pacific's Prior Use of Its ANGEL SOFT
                        Trademarks ........................................................................... 10

                2.      Georgia-Pacific's ANGEL SOFT Trademarks Are
                        Incontestable and Senior to Defendants' State Trademark ...................... 11

                3.      Georgia-Pacific Had No  Knowledge of Defendants' State
                        Trademark Registration Until this Lawsuit................................ 12

IV.            CONCLUSION ...................................................................................... 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
  537 F.2d 4 (2d Cir. 1976)..................................................................................9

*America Automobile Association v. AAA Insurance Agency, Inc.*,
  618 F. Supp. 787 (W.D. Tex. 1985)...............................................................11

*America Home Products Corp. v. Johnson Chemical Co.*,
  589 F.2d 103 (2d Cir. 1978).............................................................................8

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d. 341 (9th Cir. 1979) ....................................................................7, 10

*Au-Tomotive Gold, Inc.*,
  457 F.3d 1062 (9th Cir. 2006) .........................................................................6

*Beer Nuts v. Clover Club Foods Co.*,
  805 F.2d 920 (10th Cir. 1986) .........................................................................6

*Brookfield Commc'ns, Inc. v. W. Coast Entertainment Corp.*,
  174 F.3d 1036 (9th Cir. 1999) ...................................................5, 7, 8, 9, 10, 12

*Burger King of Florida, Inc. v. Hoots*,
  403 F.2d 904 (7th Cir. 1968) .........................................................................11

*Century 21 Real Estate Corp. v. Century Life of America*,
  970 F.2d 874 (Fed. Cir. 1992)..........................................................................5

*Chevron Chemical Co. v. Voluntary Purchasing Groups*,
  659 F.2d 695 (5th Cir. 1981) ...........................................................................6

*Clorox  Chemical Co. v. Chlorit Manufacturing Corp.*,
  25 F. Supp. 702 (E.D.N.Y. 1938) ...................................................................8

*E & J Gallo Winery v. Gallo Cattle Co.*,
  967 F.2d 1280 (9th Cir. 1992) ......................................................................5, 6

*Entrepreneur Media, Inc. v. Smith*,
  279 F.3d 1135 (9th Cir. 2002) ....................................................................7, 10

*FTC v. Affordable Media, LLC*,
  179 F.3d 1228 (9th Cir. 1999) .........................................................................3

*Fleischmann Distilling*,
  314 F.2d 149 .....................................................................................................8

*GoTo.com, Inc. v. Walt Disney Co.*,
  202 F.3d 1199 (9th Cir. 2000) .......................................................................10

*HMH Publ.'g Co., Inc. v. Brincat*,
  504 F.2d 713 (9th Cir. 1974) ...........................................................................3

**TABLE OF AUTHORITIES (CON'T)**

**FEDERAL CASES**

*Interstellar Starship Serv., Ltd. v. Epix, Inc.,*
   304 F.3d 936 (9th Cir. 2002) ................................................................. 1, 3, 8

*Keebler Co. v. Rovira Biscuit Corp.,*
   624 F.2d 366 (1st Cir. 1980) ........................................................................ 11

*Kenner Parker Toys Inc. v. Rose Art Industrial,*
   963 F.2d 350 (Fed. Cir. 1992) ....................................................................... 7

*LGS Architects, Inc. v. Concordia Homes of Nevada,*
   434 F.3d 1150 (9th Cir. 2006) ........................................................................ 3

*La Chemise Lacoste v. Alligator Co.,*
   506 F.2d 339 (3d Cir. 1974) ......................................................................... 11

*National Conf. of Bar Examiners v. Multistate Legal Stud., Inc.,*
   692 F.2d 478 (7th Cir. 1983) ......................................................................... 8

*Nutri/System, Inc. v. Con-Stan Industrial, Inc.,*
   809 F.2d 601 (9th Cir. 1987) ...................................................................... 7, 8

*Ocean Garden, Inc. v. Marktrade Co.,*
   953 F.2d 500 (9th Cir. 1991) ......................................................................... 7

*Official Airline Guides v. Goss,*
   6 F.3d 1385 (9th Cir. 1993) .......................................................................... 8

*Quiksilver, Inc. v. Kymsta Corp.,*
   466 F.3d 749 (9th Cir. 2006) ......................................................................... 9

*Spartan Foods System, Inc. v. HFS Corp.,*
   813 F.2d 1279 (4th Cir. 1987) ...................................................................... 11

*Surfvivor Media, Inc. v. Survivor Productions,*
   406 F.3d 625 (9th Cir. 2005) ..................................................................... 7, 8, 9

*Surgicenters of America v. Medical Dental Surgeries,*
   601 F.2d 1011 (9th Cir. 1979) ....................................................................... 7

*Tally-Ho, Inc. v. Coast Community College District,*
   889 F.2d 1018 (11th Cir. 1989) .................................................................... 12

*Teddygram Inc. v. Boyce,*
   53 U.S.P.Q. 2d 1804 (N.D. Ga. 1999) ......................................................... 11

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
   505 U.S. 763 (1992) ................................................................................. 7, 8

1

**TABLE OF AUTHORITIES (CON'T)**

2

**FEDERAL CASES**

3

4

*Union National Bank of Tex., Laredo, Tex. v. Union National Bank of Tex., Austin, Tex.,*
   909 F.2d 839 (5th Cir. 1990) ................................................................................................12

5

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.,*
   419 F.3d 925 (9th Cir. 2005) ..................................................................................................7

6

7

**STATUTES**

8

1-3 Gilson on Trademarks § 5.07 (2007 ed.) .......................................................................3, 4

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1        Pursuant to the Court's Order dated January 29, 2008, Plaintiff Georgia-Pacific

2   Consumer Products LP ("Georgia-Pacific") hereby submits this Supplemental Brief in support of

3   its Motion for a Preliminary Injunction.  Many of the salient facts are included in Georgia-

4   Pacific's *Ex Parte* Application for a Temporary Restraining Order and Order to Show Cause Re

5   Preliminary Injunction and Memorandum of Points and Authorities in support thereof

6   (collectively, the "Application"), filed on December 20, 2007 (Docket No. ("DN") 5.  This

7   Application is hereby incorporated by reference, along with Georgia-Pacific's Reply to

8   Defendants' Declaration of Ronald Martinetti in Opposition to Motion for a Temporary

9   Restraining Order ("Reply"), filed on January 16, 2008 (DN 16).

10  **I.    INTRODUCTION**

11        The *Sleekcraft* "troika" as recited by the Ninth Circuit – (1) similarity of the marks;

12  (2) relatedness of the goods; and (3) overlap in marking and advertising channels – indicates a

13  strong likelihood of confusion between Defendants' "Angelite" bathroom tissue and Georgia-

14  Pacific's **ANGEL SOFT** Trademarks (*see* App. at 4).  *See Brookfield Commc'ns, Inc. v. W.*

15  *Coast Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999); *Interstellar Starship Serv., Ltd. v.*

16  *Epix, Inc.*, 304 F.3d 936, 942 (9th Cir. 2002).  To overcome this "troika," the other factors must

17  "weigh strongly" against a likelihood of confusion – here, they do not.  *Id.*  Pursuant to the

18  Court's instruction, Georgia-Pacific provides supplemental information relating to the similarity

19  in marketing channels below, as well as additional *Sleekcraft* factors including Defendants'

20  intent, actual confusion, and the degree of care taken by consumers.  None of these factors are

21  remotely sufficient to overcome the controlling "troika," and universally weigh in favor of

22  Georgia-Pacific.  Moreover, the strong degree of protection that the **ANGEL SOFT** Trademarks

23  must be afforded under the law confirms the existence of a likelihood of confusion.

24        Defendants' representations concerning cessation of their distribution of the "Angelite"

25  product, aside from their questionable and as of yet untested veracity, do not in any way preclude

26  issuance of a preliminary injunction.  Further, given Georgia-Pacific's prior and continuous use

27  of its federal trademarks, the existence of Defendants' California registration for "Angel Lite

28  500" is of no consequence and serves only as a distraction.

1    Importantly, Georgia-Pacific is not suggesting here that *any* use of the word "Angel"

2    associated with *any* product would infringe the **ANGEL SOFT** Trademarks. However, under

3    federal trademark law, Georgia-Pacific is entitled to preclude another party's use of "Angel" (or

4    a similar variation) to sell the exact *same* type of product in the *same* geographic area in order to

5    preclude a likelihood of confusion among consumers. Georgia-Pacific, therefore, respectfully

6    submits that the facts and applicable law warrant entry of a preliminary injunction.

7    **II.      THE CONTINUING NEED FOR PRELIMINARY INJUNCTIVE RELIEF**

8    Georgia-Pacific is not ignoring Defendants' representations that they have ceased

9    distribution of "Angelite" bathroom tissue – and Georgia-Pacific is very mindful of not wasting

10   judicial resources. But, the dilemma that Georgia-Pacific faces is that Defendants have given

11   Georgia-Pacific reason to doubt the veracity of this and other representations. For instance,

12   Defendants have made the relatively unbelievable representation that after the "first" shipment of

13   "Angelite" in 2003, they did not import any other "Angelite" products until the middle of 2007.

14   *See* Defendants' Supplemental Declaration of Ron Martinetti Opposing Plaintiff's *Ex Parte*

15   Application for Expedited Discovery (DN 27), ¶ 2. Aside from just the visceral oddity of this

16   assertion, the logistical issues associated with it further diminish its credibility. The preparation

17   and the actual running of equipment to print large amounts of packaging for products such as

18   bathroom tissue would require the expenditure of significant money and resources. Logic would

19   therefore dictate that once the machine is set up for a particular run, all efforts would be made to

20   print as much of that wrapping as feasible at that time, because the costs incurred to stop and re-

21   start would likely be significant. Consequently, it is difficult to believe that these costs would

22   have been incurred for a single shipment of "Angelite" in 2003, and then shut down until four

23   years later.

24   Georgia-Pacific therefore attempted to test the veracity of this and other representations

25   in its request for expedited discovery consisting of a deposition of defendant John Lee and a

26   limited set of document requests. *See Ex Parte* Application for Expedited Discovery (DN 24).

27   Defendants opposed the Application, and it was denied, thereby preventing Georgia-Pacific from

28   testing the bona fides of Defendants' many representations.

1    Moreover, Defendants' representations of cessation have only pertained to its "Angelite"

2    products. Georgia-Pacific's request for preliminary injunctive relief, however, also includes

3    similar variations. Defendants have applied for and are prosecuting a trademark registration for

4    "Angelito" for use with "bathroom tissue and toilet tissue." Declaration of Adam Welland

5    ("Welland Decl."), ¶¶ 3-4. Defendants represented to the United States Patent and Trademark

6    Office in September 2007 that they are "using the mark in commerce" in connection with such

7    goods. *Id.* at ¶¶ 5-6. These goods would be subject to the same treatment as the "Angelite"

8    bathroom tissue, yet Georgia-Pacific is unsure whether Defendants are still distributing the

9    "Angelito" products. Therefore, while Georgia-Pacific would like to accept Defendants'

10   representations at face value, Defendants' refusal to provide formal discovery (as opposed to

11   selectively disclosing facts of its choosing, which they have done) coupled with the

12   inconsistencies inherent in these representations, makes it very difficult to do so. As a result,

13   Georgia-Pacific is forced to continue to seek judicial intervention.

14       Further, as a matter of controlling Ninth Circuit law, Defendants' representations do not

15   preclude entry of a preliminary injunction. "It is actually well-settled 'that an action for an

16   injunction does not become moot merely because the conduct complained of was terminated, *if*

17   *there is a possibility of recurrence,* since otherwise the defendants would be free to return to

18   [their] old ways." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1237 (9th Cir. 1999) (citations

19   omitted). This is because, "if the opposite were true, any defendant could moot a preliminary

20   injunction appeal by simply representing to the court that it will cease its wrongdoing." *LGS*

21   *Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1156 (9th Cir. 2006). As a

22   result, Defendants' untested representations cannot factor into the analysis.

23   **III.   ARGUMENT**

24       **A.    Defendants Distributed "Angelite" Products to Intentionally Confuse**

25            **Consumers**

26       Bad faith intent is alone sufficient to establish a likelihood of confusion. *See*

27   *HMH Publ.'g Co., Inc. v. Brincat*, 504 F.2d 713, 719 (9th Cir. 1974); 1-3 Gilson on Trademarks

28   § 5.07 (2007 ed.). It is inconceivable that Defendants were unaware of Georgia-Pacific's

1        **ANGEL SOFT**® bathroom tissue products when they decided to inject "Angelite" bathroom

2   tissue into the market. Georgia-Pacific has used **ANGEL SOFT**® to identify goods since 1944,

3   and since that time has spent millions of dollars in advertising and promotion for those products.

4   Declaration of Andrew Towle ("Towle Decl."), filed in support of the Application for TRO, ¶¶

5   3-4; 12-18. This advertising has included national television commercials, magazine

6   advertisements, and a web site devoted exclusively to the **ANGEL SOFT**® brand. *Id.*

7   Knowledge of the **ANGEL SOFT**® brand is widespread and would unquestionably be known to

8   companies in the business of selling bathroom tissue. Since "angel" bears no rational or

9   descriptive relation to bathroom tissue, the fact that the Defendants have marketed their product

10  as "Angelite" speaks volumes.

11       Also of great significance is that the sources in China from which Defendants ordered

12  and imported the offending "Angelite" bathroom tissue *were aware* of the **ANGEL SOFT**®

13  brand when asked to provide the "Angelite" product. Defendants have identified these sources

14  to include at least RunHui Paper Co. Ltd. ("RunHui") and Shantou Kid Toys Co. Ltd.

15  ("Shantou"). Welland Decl., ¶¶ 7-8. An employee of RunHui acknowledged that "Angel" was a

16  famous brand in the United States, and that producing "Angel" bathroom tissue would be

17  "dangerous." *See* Declaration of Zhijun Xu ("Xu Decl."), ¶ 4(b-c). Further, a manager at

18  Shantou also expressly admitted to being aware of **ANGEL SOFT**® bathroom tissue. Xu Decl.,

19  ¶ 6. If Defendants' suppliers, thousands of miles away in China, were aware of **ANGEL**

20  **SOFT**®, it is again inconceivable that Defendants lacked such knowledge.

21       In addition, the 2003 federal and state trademark applications for "Angelite 500" were

22  prosecuted by an experienced trademark attorney. Welland Decl., ¶¶ 9-11. Although the

23  Lanham Act does not require searches for similar trademarks, it is common practice to do so, and

24  failure to conduct a search can controvert any assertions of good faith. 1-3 Gilson on

25  Trademarks § 3.01. It is thus difficult to believe that searches were not conducted – and if they

26  were, it is difficult to believe that the **ANGEL SOFT** Trademarks were not uncovered.

27

28

1    This substantial evidence establishes that Defendants were aware of **ANGEL SOFT®**

2    bathroom tissue, and their choice of the confusingly similar "Angelite" confirms their intent to

3    confuse consumers.

4    **B.    Defendants' "Angelite" and Georgia-Pacific's ANGEL SOFT® Products Are**
     **Sold in the Same Marketing Channels**

5

6    Defendants' goods are sold in discount stores throughout Southern California.

7    App. at 14.  Likewise, Georgia-Pacific sells certain lines of its **ANGEL SOFT®** bathroom tissue

8    to discount stores in California, such as Big Lots, Family Dollar, Dollar General, Fred's, $0.99

9    Stores, Canned Foods, and McFrugles.  *See* Supplemental Declaration of Andrew Towle, ¶¶  2-3.

10   As the Federal Circuit has articulated, this factor "does not limit channels of trade to identical

11   stores . . . ."  *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 877 (Fed. Cir.

12   1992).  "Rather a channel of trade includes the same type of distribution channel."  *Id*.  In this

13   case, both **ANGEL SOFT®** and "Angelite" are sold in the exact same distribution channel –

14   discount stores in California.  This greatly increases the likelihood of consumer confusion.

15   **C.    Additional *Sleekcraft* Factors Support the Entry of a Preliminary Injunction**

16   Although of lesser importance to this Court's analysis, the following additional

17   *Sleekcraft* factors also support the entry of a preliminary injunction in this case and fail to

18   overcome the "controlling troika" that weighs heavily in favor of a likelihood of confusion:

19   <u>Actual confusion</u>.  Georgia-Pacific already has received an email indicating actual

20   consumer confusion between **ANGEL SOFT®**  and "Angel" bathroom tissue, a product very

21   similar to Defendants' "Angelite."  Towle Decl., ¶¶ 20-21.  It is thus only a matter of time before

22   similar emails or letters are received for "Angelite" if Defendants are not enjoined.

23   Nevertheless, this Court may grant a preliminary injunction in Georgia-Pacific's favor

24   absent evidence of actual confusion.  Courts consistently have recognized that evidence of actual

25   confusion is often difficult to obtain, and thus undue weight should not be accorded to this factor.

26   *Brookfield*, 174 F.3d 1050; *see also E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280,

27   1292 (9th Cir. 1992) ("Evidence of actual confusion is relevant to the issue of likelihood of

28   confusion, but the absence of such evidence need not create an inference that there is no

1   likelihood of confusion."). Furthermore, evidence of actual confusion is particularly difficult to

2   obtain when the goods in question are relatively inexpensive, as here: "[The] absence of [actual

3   confusion] evidence does not necessarily support a finding of no likelihood of confusion,

4   especially when the products involved are inexpensive." *Beer Nuts v. Clover Club Foods Co.*,

5   805 F.2d 920, 928 (10th Cir. 1986); *see also Chevron Chem. Co. v. Voluntary Purchasing

6   Groups*, 659 F.2d 695, 705 (5th Cir. 1981) ("It would be exceedingly difficult to detect instances

7   of actual confusion when . . . the goods are relatively inexpensive and their actual properties are

8   exactly identical. . . ."). "Purchasers are unlikely to bother to inform the trademark owner when

9   they are confused about an inexpensive product." *Beer Nuts*, 805 F.2d at 928.

10       <u>Degree of Care Exercised by Consumers</u>. Consumers of relatively inexpensive goods

11   may not exercise a high degree of purchasing care, making confusion regarding these goods

12   much more likely. *Brookfield*, 174 F.3d at 1060; *E. & J. Gallo Winery*, 967 F.2d at 1293; *Beer

13   Nuts*, 805 F.2d at 928. Courts thus have favored protection of trademark rights when the

14   products at issue are "relatively inexpensive and unsophisticated, and do not require a great deal

15   of precision or care to fulfill their purpose." *Au-Tomotive Gold, Inc.*, 457 F.3d 1062, 1075 (9th

16   Cir. 2006).

17       Bathroom tissue products, such as Georgia-Pacific's **ANGEL SOFT**® and Defendants'

18   "Angelite," are just such relatively inexpensive products, which typically retail at relatively low

19   prices and are sometimes sold in discount stores. Due to the similarity of Defendants' products

20   to **ANGEL SOFT**® bathroom tissue and given these products' relatively low prices, purchasers

21   are likely to pick one product from crowded store shelves over another with  not as much care as

22   when purchasing luxury items. Accordingly, there is a high likelihood of consumer confusion.

23   **D.    Georgia-Pacific's Distinctive ANGEL SOFT Trademarks Are Entitled To A
         High Degree Of Protection**
24

25       Whether a likelihood of confusion exists among products depends to a substantial

26   degree upon the relative strength of the mark sought to be protected. As the Ninth Circuit

27   explained in *Brookfield Communications*, "[t]he stronger a mark--meaning the more likely it is to

28   be remembered and associated in the public mind with the mark's owner--the greater the

1  protection it is accorded by the trademark laws." 174 F.3d at 1058. (citing *Kenner Parker Toys*

2  *Inc. v. Rose Art Indus.*, 963 F.2d 350, 353 (Fed. Cir. 1992); *Nutri/System, Inc. v. Con-Stan*

3  *Indus., Inc.*, 809 F.2d 601, 605 (9th Cir. 1987).

4     The strength of a trademark is measured along a conceptual "spectrum." *Brookfield*

5  *Comm'cns*, 174 F.3d at 1058. Trademarks are classified by their degree of inherent

6  distinctiveness along this spectrum as generic, descriptive, suggestive, arbitrary, or fanciful. *Id.*;

7  *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("Marks are often

8  classified in categories of generally increasing distinctiveness; following the classic formulation

9  set out by Judge Friendly, they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary;

10  or (5) fanciful."). The more unique or arbitrary the mark, the stronger the mark and, in turn, the

11  more protection it will be afforded. *Brookfield Comm'cns*, 174 F.3d at 1058; *Sleekcraft*, 599 F.

12  2d at 349; *see also Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500, 506 (9th Cir. 1991) ("[a]

13  strong mark is inherently distinctive" and "will be afforded the widest ambit of protection from

14  infringing uses"); *Surgicenters of Am. v. Med. Dental Surgeries*, 601 F.2d 1011, 1014-15 (9th

15  Cir. 1979) (establishing a continuum of marks from "generic" marks which are afforded no

16  protection, to descriptive" or "suggestive," marks which are given moderate protection, to

17  "arbitrary" or "fanciful" marks, which are awarded maximum protection).

18     At one end of this spectrum are "generic" and "descriptive" marks, which define

19  "qualities or characteristics of a product in a straightforward way that requires no exercise of the

20  imagination to be understood," such that "an entirely unimaginative, literal-minded person would

21  understand the significance of the [mark's] reference." *Entrepreneur Media, Inc. v. Smith*, 279

22  F.3d 1135, 1147 (9th Cir. 2002); *see also Yellow Cab Co. of Sacramento v. Yellow Cab of Elk*

23  *Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005) (generic marks "give the general name of the

24  product; they embrace an entire class of products"; "they identify the product, rather than the

25  product's source."); *Brookfield Comm'cns*, 174 F.3d at 1058 n. 19 ("Descriptive terms directly

26  describe the quality or features of the product."). An example of a generic mark would be the

27  phrase "Liquid controls" for equipment that dispenses liquid, or "Multistate Bar Examination"

28  for a bar examination that may be taken across multiple states. *Surfvivor Media, Inc. v. Survivor*

1 *Productions*, 406 F.3d 625, 632 (9th Cir. 2005) (citing *Nat'l Conf. of Bar Examiners v.*

2 *Multistate Legal Stud., Inc.*, 692 F.2d 478, 488 (7th Cir. 1983)).  Generic or descriptive marks

3 generally are "weak," and must acquire secondary meaning among the consuming public to

4 qualify for trademark protection. *Two Pesos*, 505 U.S. at 769.[1]

5    A "suggestive" mark conveys an impression of the nature of the product or service with

6 which it is associated, but consumers must exercise some imagination and perception to reach a

7 conclusion as to the nature of the product or service. *Brookfield Comm'cns*, 174 F.3d at 1058

8 n.19.  An example of a suggestive mark would be the phrase "Roach Motel" to describe an insect

9 trap product. *See Am. Home Prods. Corp. v. Johnson Chem. Co.*, 589 F.2d 103 (2d Cir. 1978);

10 *see also Surfvivor Media*, 406 F.3d at 632 (using "Air Care" for medical oxygen service as

11 example of suggestive mark).

12    Finally, and at the other end of the spectrum, are arbitrary and fanciful marks, which have

13 no intrinsic connection to the product with which the mark is used. *Brookfield Comm'cns*, 174

14 F.3d at 1058 n.19; *Nutri/System, Inc.*, 809 F.2d at 605 (explaining that when a product's

15 trademark does not describe the type of product to which the mark is associated, the mark may

16 be suggestive or arbitrary, and is therefore entitled to greater protection than a descriptive mark).

17 Arbitrary marks consist of words commonly used in the English language, that are used in

18 uncommon or unexpected ways. *Brookfield Comm'cns*, 174 F.3d at 1058 n.19; *Official Airline*

19 *Guides, Inc. v. Goss*, 6 F.3d 1385, 1390 (9th Cir. 1993) ("An arbitrary mark is a common word

20 that is "non-descriptive of any quality of the goods or services."").  An example of an arbitrary

21 mark is "Dutch Boy" paint. *Surfvivor Media*, 406 F.3d at 632; *see also, e.g., Interstellar*

22 *Starship Services, Ltd. v. Epix, Inc.*, 304 F.3d 936, 943 n.6 (9th Cir. 2002) (noting that use of the

23 word "Amazon" for an online store is an example of an arbitrary mark); *Fleischmann Distilling*,

24 314 F.2d 149 ("Black & White" mark to describe scotch whiskey).  Fanciful marks are

25 comprised of original terms. *Brookfield Comm'cns*, 174 F.3d at 1058 n.19; *see also, e.g., Clorox*

---

26

27 [1] "Secondary meaning is used generally to indicate that a mark . . . 'has come through use to be uniquely associated with a specific source.'" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766 n. 4 (1992) (citations omitted); *see also Official Airline Guides v. Goss*, 6 F.3d 1385,

28 1391 (9th Cir. 1993) ("A mark acquires secondary meaning if customers associate the mark with a particular source.").

1  *Chem. Co. v. Chlorit Mfg. Corp.*, 25 F. Supp. 702 (E.D.N.Y. 1938) ("Clorox" mark for bleach is

2  a fanciful mark).  Examples of fanciful marks would include "Kodak" cameras or "Aveda"

3  skincare products. *Surfvivor Media*, 406 F.3d at 632.

4       Applying this framework in this case confirms that the **ANGEL SOFT** Trademarks are

5  inherently distinctive strong marks, entitled to a great deal of protection.  On the spectrum of

6  distinctiveness, the **ANGEL SOFT** Trademarks are arbitrary.  The phrase "Angel Soft" is not

7  descriptive or suggestive of the type of product – bathroom tissue.  Indeed, the word "Angel" is

8  defined by Webster's Collegiate Dictionary as "a spiritual being superior to humans in power

9  and intelligence."  Merriam-Webster's Collegiate Dictionary (11th ed. 2007).[2]  This definition

10  indisputably bears *no relationship* to bathroom tissue.  Defendants' use of this very word to

11  describe their own *bathroom tissue* products is particularly remarkable given the lack of

12  association between Angels and bathroom tissue products.  Because Georgia-Pacific's **ANGEL**

13  **SOFT** Trademarks are arbitrary, they are strong marks which are entitled to heightened

14  protection. *See Brookfield*, 174 F.3d at 1058.

15       Alternatively, and at an absolute minimum, the **ANGEL SOFT** Trademarks are

16  suggestive marks.  *Brookfield*, 174 F.3d at 1058, n. 19 ("A suggestive mark conveys an

17  impression of a good but requires the exercise of some imagination and perception to reach a

18  conclusion as to the product's nature").  Georgia-Pacific's successful registration of the **ANGEL**

19  **SOFT** Trademarks establishes that these marks are presumptive suggestive, as a matter of law.

20  *See Quiksilver, Inc. v. Kymsta Corp.,* 466 F.3d 749, 761 (9th Cir. 2006) ("Where, as here, the

21  PTO issues a mark registration without requiring proof of secondary meaning, the registrant . . .

22  enjoys a presumption that the purchasing public perceives the mark to be inherently distinctive.")

23  (internal quotations omitted); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11

24  (2d Cir. 1976) ("[T]he decision of the Patent Office to register a mark without requiring proof of

25  secondary meaning affords a rebuttable presumption that the mark is suggestive or arbitrary or

---

26  [2]  While the word "soft" in and of itself may be suggestive of bathroom tissue products, Georgia-
27  Pacific was required by the United States Patent and Trademark Office to disclaim any
independent trademark rights in the word "soft," in its trademark applications.  Towle Decl.,
28  Exhibits 3-7.  Accordingly, Georgia-Pacific's trademarks pertain principally to the word
"Angel." *See id.*

fanciful rather than merely descriptive"). As detailed above, suggestive marks are entitled to a high degree of protection when the infringing mark is quite similar and *the goods or services they connote are closely related*. *Sleekcraft*, 599 F.2d at 350; *see also* McCarthy ¶ 11:76 ("Whether a mark is weak or not is of little importance where the conflicting mark is identical and the goods are closely related.").[3] In this case, it is beyond question that the good in question are closely related; they are identical.

In short, whether the **ANGEL SOFT** Trademarks are classified as arbitrary *or* as suggestive marks, the **ANGEL SOFT** Trademarks are entitled to a high degree of protection. Thus, this *Sleekcraft* factor, the strength of the **ANGEL SOFT** Trademarks and the degree of protection to which they are entitled, strongly supports a finding of a likelihood of confusion.

### E.    Defendants' California Registration for "Angel Lite" Is Irrelevant

Defendants repeatedly have argued that their state trademark registration for "Angel Lite 500" entitles them to continue to distribute products carrying this label. *See* J. Lee Decl. in Rebuttal to Plaintiffs' Reply ¶ 2 (DN 18); J. Lee Decl. in Opp. to Prelim. Injunction ¶ 4 (DN 26). This argument is entirely misplaced, however, because, as detailed below, Georgia-Pacific's *senior federal* trademark rights trump Defendants' junior state trademark registration.

#### 1.    Defendants' State Trademark Registration Is Pre-empted By Georgia-Pacific's Prior Use of Its ANGEL SOFT Trademarks

Contrary to Defendants' suggestion, Defendants' state trademark registration cannot interfere with Georgia-Pacific's rights in its federally-registered **ANGEL SOFT** Trademarks. "[S]tate law cannot narrow the rights of a federal registrant or permit

---

[3] A suggestive mark also may be entitled to strong protection when, as here, the mark has enjoyed substantial commercial success. *See, e.g., Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002) (recognizing that an otherwise inherently weak mark "may be strengthened by such factors as extensive advertising, length of exclusive use, public recognition" (citation and internal quotation marks omitted); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1208 (9th Cir. 2000) (stating that GoTo's "tremendous success" strengthened its otherwise suggestive mark); *Brookfield Comm'cns*, 174 F.3d at 1058 (noting that "placement within the conceptual distinctiveness spectrum is not the only determinant of a mark's strength, as advertising expenditures can transform a suggestive mark into a strong mark where, for example, that mark has achieved actual marketplace recognition") (internal citation omitted)); *Sleekcraft*, 599 F.2d at 350 (stating that a suggestive mark may be strengthened by advertising; otherwise the weak mark is "entitled to a restricted range of protection").

1   confusion of customers which federal law seeks to prevent." 3 McCarthy § 22:2; *see also*

2   *Spartan Foods Sys., Inc. v. HFS Corp.*, 813 F.2d 1279, 1284 (4th Cir. 1987) ("The Lanham Act

3   effects a limited preemption of state law, resolving the conflict in favor of the federal registrant's

4   rights.").

5           In *Burger King of Florida, Inc. v. Hoots*, 403 F.2d 904 (7th Cir. 1968), for instance, the

6   court explained that "Congress intended the Lanham Act to afford nationwide protection to

7   federally-registered marks, and that once the certificate has issued, no person can acquire any

8   additional rights superior to those obtained by the federal registrant." *Id.* at 908. All other

9   courts that have addressed this issue have followed this same reasoning. *E.g., Keebler Co. v.*

10  *Rovira Biscuit Corp.*, 624 F.2d 366, 372 n.3 (1st Cir. 1980) ("The Supremacy Clause bars . . .

11  state statutes or doctrine that would permit the sort of confusing or deceptive practices the

12  draftsmen on the Lanham Act sought to prevent."); *La Chemise Lacoste v. Alligator Co.*, 506

13  F.2d 339, 346 (3d Cir. 1974); *Teddygram Inc. v. Boyce*, 53 U.S.P.Q.2d 1804, 1812 (N.D. Ga.

14  1999) ("elevat[ing] Georgia's registration process over the federal process [would be]

15  tantamount to overruling the Lanham Act's regulations regarding continuous pre-registration

16  usage."); *Am. Auto Ass'n v. AAA Ins. Agency, Inc.*, 618 F. Supp. 787, 798 (W.D. Tex. 1985)

17  (state law cannot defeat or limit the protection given to federally-registered marks).

18          Because Georgia-Pacific's senior, federally-registered **ANGEL SOFT** Trademarks are

19  entitled to protection against infringement by marks later-acquired under state law – marks that

20  are ***invalid*** because they are pre-empted by Georgia-Pacific's federal trademarks – Defendants'

21  state trademark registration is of no consequence.

22          2.      **Georgia-Pacific's ANGEL SOFT Trademarks Are Incontestable and
                    Senior to Defendants' State Trademark**
23

24                  Furthermore, even if Defendants' state trademark registration were not

25  invalid under federal law, because Georgia-Pacific possesses rights to its **ANGEL SOFT**

26  Trademarks that are senior to any rights Defendants may have in their state registration, the mere

27  fact of Defendants' state trademark does not insulate Defendants from liability for trademark

28  infringement.

1      It is well-established that the "first to use a mark is deemed the 'senior' user and has the

2   right to enjoin 'junior' users from using confusingly similar marks in the same industry and

3   market or within the senior user's natural zone of expansion." *Brookfield Comm'cns*, 147 F.3d at

4   1047; *see also Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*,

5   909 F.2d 839, 842-43 (5th Cir. 1990) ("The first one to use a mark is generally held to be the

6   'senior' user and is entitled to enjoin other 'junior' users from using the mark, or one that is

7   deceptively similar to it . . . ."); *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1023

8   (11th Cir. 1989) ("The first to use a mark on a product or service in a particular geographic

9   market, the senior user, acquires rights in the mark in that market. . . .  The senior user . . . may

10   enjoin such uses that infringe upon its prior rights.").  Notably, the senior user of a trademark

11   obtains exclusive rights to use of that trademark, and confusingly similar marks, with regard to

12   the same products or with regard to related product or service markets.   McCarthy § 24-1—24-

13   12.  The senior user thus may enjoin a junior user from using its mark "on any product or service

14   which would reasonably be thought by the buying public to come from the same source, or

15   thought to be affiliated with, connected with, or sponsored by, the trademark owner." *Tally-Ho*,

16   889 F.2d at 1023 (citations omitted).

17      Georgia-Pacific has owned its **ANGEL SOFT** Trademarks since well-before Defendants

18   either used or applied for their "Angel Lite" California registration.  Towle Decl., ¶¶ 3-7; App. at

19   4.   Indeed, two of these marks have achieved "incontestable" status.   Towle Decl., ¶ 8.

20   Defendants' state trademark registration – even if it were not already pre-empted by Georgia-

21   Pacific's federally-registered marks – therefore cannot interfere with Georgia-Pacific's

22   established, senior rights.

23        **3.**    **Georgia-Pacific Had No  Knowledge of Defendants' State Trademark**
              **Registration Until this Lawsuit**

24

25      Finally, Defendants suggest that because they obtained a state trademark

26   registration in 2003 Georgia-Pacific has "slept on its rights" since that time.  Supp. Decl. of R.

27   Martinetti Opposing Plaintiffs' Ex Parte Application for Expedited Discovery at ¶ 3 (DN 27); J.

28   Lee Decl. in Opp. to Prelim. Injunction ¶ 4 (DN 26).   This assertion is made without *any*

supporting evidence whatsoever, and is without merit.  Georgia-Pacific had no knowledge of Defendants' California registration, and Defendants have not offered any evidence to the contrary.  The notion that Georgia-Pacific has "slept on its rights" is unfounded and should have no bearing upon this Court's consideration of Georgia-Pacific's request for preliminary injunctive relief.

**IV.    CONCLUSION**

For the foregoing reasons, and as further shown in Georgia-Pacific's initial Application and Reply, Georgia-Pacific respectfully requests this Court enter a preliminary injunction enjoining Defendants from importing, distributing, selling, promoting and/or marketing "Angelite" (and any similar variation) bathroom tissue products.

Dated:  February 15, 2008                    Respectfully submitted,

LATHAM & WATKINS LLP

By:    /s/ Stephen P. Swinton
Attorneys for Plaintiff
Georgia-Pacific Consumer Products LP
E-mail: steve.swinton@lw.com

1

## PROOF OF SERVICE

2      I am employed in the County of San Diego, State of California.  I am over the age of 18 years and

3    not a party to this action.  My business address is Latham & Watkins LLP, 12636 High Bluff Drive,

4    Suite 400, San Diego, CA 92130.

5      On **February 15, 2008**, I served the following document described as:

6    **1.      PLAINTIFF GEORGIA-PACIFIC CONSUMER PRODUCTS LP'S
         SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR

7        PRELIMINARY INJUNCTION;**

8    **2.      DECLARATION OF ADAM A. WELLAND IN SUPPORT PLAINTIFF
         GEORGIA-PACIFIC CONSUMER PRODUCTS LP'S SUPPLEMENTAL

9        BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION;**

10   **3.      SUPPLEMENTAL DECLARATION OF ANDREW TOWLE IN SUPPORT
         PLAINTIFF GEORGIA-PACIFIC CONSUMER PRODUCTS LP'S
         SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR

11       PRELIMINARY INJUNCTION;**

12   **4.      DECLARATION OF ZHIJUN XU**

13   by serving a true copy of the above-described document in the following manner:

14                            **BY ELECTRONIC FILING**

15      I am familiar with the United States District Court, Southern District of California's

16   practice for collecting and processing electronic filings.  Under that practice, documents are

17   electronically filed with the court.  The court's CM/ECF system will generate a Notice of

18   Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the

19   case.  The NEF will constitute service of the document.  Registration as a CM/ECF user

20   constitutes consent to electronic service through the court's transmission facilities.  Under said

21   practice, the following CM/ECF users were served:

22      Ronald Martinetti, Esq.
       Kazanjian & Martinetti
23      520 East Wilson Avenue
       Glendale, CA 91206
24      Tel: 818-241-1011
       Fax: 818-241-2193
25

26

27

28

1      I declare that I am employed in the office of a member of the Bar of, or permitted to

2  practice before, this Court at whose direction the service was made and declare under penalty of

3  perjury under the laws of the State of California that the foregoing is true and correct.

4      Executed on February 15, 2008, at San Diego, California.

5

6                                           Alison L. Montera

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS   NSD\91942.1
ATTORNEYS AT LAW
SAN DIEGO NORTH COUNTY                        2                              Civil Action No. 07-CV-2391 JAH (POR)