**RONALD MARTINETTI, ESQ.**
State Bar No. 106 898
KAZANJIAN & MARTINETTI
520 East Wilson Avenue
Glendale, California 91206
Tel. 818-241-1011
FAX 818-241-2193

Attorneys for Defendants
Lee's General Toys, Inc., and
John Lee

LAW OFFICES
KAZANJIAN & MARTINETTI
520 EAST WILSON AVENUE
SUITE 250
GLENDALE, CALIFORNIA 91206

## UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ------------------------------------ | CASE. NO. O7 CV 2391 (JAH POR) |
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, a Delaware limited partnership, | DEFENDANTS' OPPOSITION TO PLAINTIFF GEORGIA PACIFIC'S MOTION FOR PRELIMINARY INJUNCTION; DECLS. OF JOHN LEE; DECL. OF R. MARTINETTI DECL. OF A. JIMENEZ |
|     Plaintiff, | |
| vs. | |
| LEE'S GENERAL TOYS, INC., a California corporation, JOHN LEE, an individual; and DOES 1-10, | Date: Feb. 28, 2008 (Defs. brief due) |
|     Defendants. | (Assigned to Hon. J. Houston) |

DEFENDANTS Lee's General Toys, Inc. and John Lee respectfully submit their Opposition to Plaintiff's Motion for Preliminary Injunction.

Dated: February 26, 2008    KAZANJIAN & MARTINETTI
    RONALD MARTINETTI, ESQ.

By _Ronald Martinetti_
    Ronald Martinetti
    Attorneys for Defendants

1

TABLE OF CONTENTS

A. OVERVIEW........................................4

B.  PLAINTIFF GEORGIA-PACIFIC MUST DEMONSTRATE "PROBABLE  SUCCESS
ON THE MERITS" BEFORE IT WILL BE GRANTED INJUNCTIVE RELIEF. SINCE
GEORGIA-PACIFIC  HAS NOT ESTABLISHED VALID TRADE DRESS OR  TRADE-
MARK CLAIMS FOR ITS ANGEL SOFT TISSUE, THERE IS NO LIKELIHOOD  OF
CONFUSION    TO    SUPPORT    ITS    REQUEST    FOR    IMMEDIATE
RELIEF............................................4

C.  PLAINTIFF'S  ORDINARY PACKAGING OF ITS ANGEL SOFT  AND  ANGEL
SOFT PS PRODUCTS DOES NOT MERIT TRADE DRESS PROTECTION. MOREOVER,
DEFENDANT  ANGELITE DOES NOT COMPETE IN THE SAME MARKET AS  ANGEL
SOFT  PS AND PLAINTIFF HAS NOT DEMONSTRATED ANY PRESENCE  IN  THE
CALIFORNIA  LATINO  OR SPANISH SPEAKING MARKET  DEFENDANTS  SELL
TO........................................6.

D. PLAINTIFF'S ANGEL SOFT MARKS ARE PURELY DESCRIPTIVE TERMS  AND
SO ARE NOT ACCORDED STATUTORY PROTECTION. IN FACT, THE  TRADEMARK
OFFICE REFUSED TO APPROVE PLAINTIFF'S USE OF THE WORD "SOFT".10

E.  PLAINTIFF BELIEVES THAT ITS MARKS FALL INTO ONE OF  TWO  PRO-
TECTED  CATEGORIES BUT ·ITS MARKS ARE NOT ENTITLED  TO  PROTECTION
WITHIN EITHER OF THE TWO CATEGORIES.....................11

F. PLAINTIFF IS NOT LIKELY TO PREVAIL ON ITS FALSE DESIGNATION OF
ORIGIN  CLAIM  SINCE THE MARKS ARE TOTALLY DISSIMILAR  AND  ANGE-
LITE'S PACKAGE STATES THAT THE PRODUCT WAS "MADE IN CHINA..." 17

G.  PLAINTIFF IS NOT LIKELY TO PREVAIL ON ITS UNFAIR  COMPETITION
CLAIM  SINCE IT HAS NOT SHOWN EITHER LIKELIHOOD OF CONFUSION  NOR
ACTUAL CONFUSION.....................................17

H.  OUR  CIRCUIT HAS RECOGNIZED THAT IN  "EXCEEDINGLY  RARE"  IN-
STANCES A PARTY'S VOLUNTARY CESSATION OF CHALLENGED CONDUCT  WILL
MOOT INJUNCTIVE RELIEF. DEFENDANT LEE'S REMOVAL OF 59, 520 TISSUE
WRAPPINGS AND HIS VOLUNTARILY INFORMING DISTRIBUTORS THAT HE WILL
NOT   FILL   RE-ORDERS  DEMONSTRATES  THAT  THIS   IS   SUCH   AN
INSTANCE...........................................18

CASES

AMF Inc. v. Sleekcraft Boats
599 F.2d 341 (9th Cir. 1979)..............12, 13, 14, 15, 16

Blinded Veterans Ass'n. v. Blinded Am. Vet. Foundation
872 F.2d 1035 (D.C. Cir. 1989)............12, 15

Stephen W. Boney, Inc. v. Boney Services, Inc.
127 F.3d 821 (9th Cir. 1997)...............8

LAW OFFICES
KAZANJIAN & MARTINETTI
520 EAST WILSON AVENUE
SUITE 250
GLENDALE, CALIFORNIA 91206

LAW OFFICES
KAZANJIAN & MARTINETTI
520 EAST WILSON AVENUE
SUITE 250
GLENDALE, CALIFORNIA 91206

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Brookfield Communication, Inc. v. W. Coast Entertainment Corp.,
174 F.3d 1036 (9th Cir. 1999)...............5

Carter-Wallace, Inc. v. Procter & Gamble Co.,
434 F.2d 794 (9th Cir. 1970)...............10

Federal Trade Commission v. Affordable Media
179 F.3d 1228 (9th Cir. 1999)...............18

GoTo.com, Inc. v. Walt Disney Co.
202 F.3d 1199 (9th Cir. 2000)...............5, 6, 12, 13, 14, 16

Stx, Inc. v. Trik Stik, Inc.
708 F.Supp. 1551 (N.D.Cal. 1988)...............7

Vuitton et Fils S.A. v. J. Young Enterprises, Inc.
644 F.2d 769 (9th Cir. 1981)...............8, 9, 10

3

LAW OFFICES
KAZANJIAN & MARTINETTI
520 EAST WILSON AVENUE
SUITE 250
GLENDALE, CALIFORNIA 91206

MEMORANDUM OF POINTS AND AUTHORITIES

A. OVERVIEW

Plaintiff Georgia-Pacific Consumer Products claims that it holds four valid trademarks in bathroom tissues: This list includes three trademarks with the phrase ANGEL SOFT and one with the phrase ANGEL SOFT PS. (Memorandum in Support of Ex Parte Application for TRO, p. 4) ("Memorandum")

Plaintiff's ANGEL SOFT products are sold in retail outlets. However, Defendant does not sell to commercial outlets such as hotels that carry ANGEL SOFT PS products. (Suppl. Decl. of John Lee, par. 4) Moreover, Defendant's products are largely sold in the Latino and Spanish speaking Southern California market--a market in which ANGEL SOFT tissues are totally unknown (Decl. of Armando Jimenez, par. 4) Further, three of Defendant's five distributors largely sell to swap meets that are patronized by Latinos and where ANGEL SOFT has no presence or advertising. (Suppl. Decl. of John Lee, par. 6)

Moreover, Defendant has stopped importing, selling, and distributing Angelite products pending the outcome of this litigation and has informed its distributors in writing that it will not accept re-orders. (Suppl. Decl. of John Lee, par. 5)

B. PLAINTIFF GEORGIA-PACIFIC MUST DEMONSTRATE "PROBABLE SUCCESS ON THE MERITS" BEFORE IT WILL BE GRANTED INJUNCTIVE RELIEF. SINCE GEORGIA-PACIFIC HAS NOT ESTABLISHED VALID TRADE DRESS OR TRADE MARK CLAIMS FOR ITS ANGEL SOFT TISSUE, THERE IS NO LIKELIHOOD OF CONFUSION TO SUPPORT ITS REQUEST FOR IMMEDIATE RELIEF.

1. The Ninth Circuit has set forth the required showing for

LAW OFFICES
KAZHANIAN & MARTIKYAN
520 EAST WILSON AVENUE
SUITE 250
GLENDALE, CALIFORNIA 91206

1  injunctive relief in trademark cases in AMF Inc. v. Sleekcraft

Boats and GoTo.com., Inc. v. Walt Disney Co.

2    Injunctive relief is a serious remedy since it may benefit or

3  harm a party before there is an opportunity for full discovery.

4  Therefore our courts have required a strong showing on the part

5  of the party who seeks this provisional remedy. Plaintiff seeks

6  to persuade the court that can demonstrate "probable success on

7  the merits" and "the possibility of irreparable injury." In fact,

8  once a party has shown probable success on the merits in its

9  trademark claim, irreparable injury is presumed. See, GoTo.com., v

10 Walt Disney Co., 202 F3d. 1199, 1205 (9th Cir. 2000)

11    At the preliminary injunction stage, a party must show "a

12 likelihood of confusion" to prevail under the Lanham Act.

13 GoTo.com, v. Walt Disney Co., supra, 202 F.3d at p. 1205. In the

14 Sleekcraft case, our circuit has set forth eight factors to guide

15 the trial court in determining likelihood of confusion: 1) the

16 similarity of the marks; 2) the relatedness of the two companies'

17 services; 3) the marketing channel used; 4) the strength of the

18 challenging mark; 5) the opposing party's intent in selecting its

19 mark; 6) evidence of actual confusion; 7) the likelihood of

20 expansion into other markets; 8) the degree of care likely to be

21 exercised by purchases. GoTo.com, Inc. v. Walt Disney, supra, 202

22 F.3d at p. 1205 (citing the Sleekcraft factors)

23    This test is a "pliant" one; "some factors are much more

24 important than others." GoTo.com., Inc. v. Walt Disney Co.,

25 supra, 202 F.3d. at p. 1205 (citing Brookfield Communication,

26 Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1054 (9th

27 Cir. 1999)

28

5

LAW OFFICES
GAZARIAN & MARTINETTA
520 EAST WILSON AVENUE
SUITE 250
GLENDALE, CALIFORNIA 91206

1     However, "an important question" in fact, " a critical ques-

2 tion in the likelihood of confusion analysis"--is "the similarity

3 of the marks." GoTo.com, Inc. v. Walt Disney Co., *supra*, 202

4 F.3d at p. 1205)

5     In the present case, Plaintiff Georgia-Pacific has not made

6 the required showing that it possesses a valid trade dress mark

7 or that it has a valid trademark in the four marks it lists in

8 its moving papers (Memorandum, p. 4)

9     In fact, Plaintiff appears uncertain as to whether its four

10 marks are "suggestive marks" or "arbitrary." (Memorandum, p. 12:

11 "whether the ANGEL SOFT Trademarks are classified as arbitrary or

12 as suggestive marks, the ANGEL SOFT Trademarks are strong....");

13 (Same uncertainty shown in Supplemental Brief in Support of

14 Motion for Preliminary Injunction, p. 9) ("Supplemental Brief")

15     Since Plaintiff claims that the ANGEL SOFT mark was registered

16 over sixty years ago, it would seem that Plaintiff would know for

17 certain that the mark had been arbitrarily selected and was

18 therefore entitled to complete protection--as are famous marks

19 such as Dutch Boy paint or APPLE computers (Sir Isaac Newton

20 notwithstanding). Adam I. Brookman, Trademark Law, Section

21 2.02[A], p. 2-19 (2002 Supplement)

22 C.    PLAINTIFF'S ORDINARY PAC KING OF ITS ANGEL SOFT AND ANGEL

23 SOFT PS PRODUCTS DOES NOT MERIT TRADE DRESS PROTECTION. MOREOVER

24 DEFENDANT ANGELITE DOES NOT COMPETE IN THE SAME MARKET AS ANGEL

25 SOFT PS AND PLAINTIFF HAS NOT DEMONSTRATED ANY PRESENCE IN THE

26 CALIFORNIA LATINO OR SPANISH SPEAKING MARKET DEFENDANTS SELL TO

27     1. Georgia-Pacific's ordinary ANGEL SOFT package is not enti-

28

tied to trade dress protection.

a. Trade dress protection should be extended cautiously

1  Plaintiff appears to claim trade dress protection for its

2  ANGEL SOFT (as well as its ANGEL SOFT PS products). (Memorandum,

3  pp. 5, 7, 16) However, Plaintiff does not cite any authority that

4  would extend trade dress protection to its rather ordinary pack-

5  aging of toilet tissue—a standard roll that resembles every

6  other toilet paper on the market. (Exh. 1, Scott tissue photo-

7  graph) (Exh. 2, photograph of CVS drugstore chain generic toilet

8  tissue wrapping)

9

10  Trade dress refers to the overall look of a product--literally

11  how it is "dressed up." As one District Court has noted, "'Trade

12  dress' refers to the appearance of the product and may include

13  features such as size, shape, color, color combinations, texture,

14  or graphics." _Stx. Inc. v. Trik Stik, Inc._, 708 F.Supp. 1551,

15  1557 (N.D.Cal. 1988). However, one scholar has cautioned: "Not

16  all trade dress is protectable. In fact, most trade dress is

17  probably _not_ protectable." (Emphasis in original.) Adam Brookman,

18  Trademark Law, Section 6.01, p. 6-4 (2003 Supplement)

19  b. ANGEL SOFT's packaging is not distinctive nor has it ac-

20  quired any special appeal in the California Spanish speaking

21  market that Defendants sell to.

22  To prevail on a trade dress claim, a party must demonstrate

23  that: (1) the trade dress is inherently distinctive or has ac-

24  quired distinctiveness through secondary meaning; (2) there is a

25  likelihood that the public will be confused by the infringing

26  use; and (3) the trade dress is nonfunctional." _Stephen W. Boney,_

27  _Inc. v. Boney Services, Inc._ 127 F.3d 821, 828 (9th Cir. 1997)

28

LAW OFFICES
KAZANJIAN & MARTINETTI
520 East Wilson Avenue
Suite 250
GLENDALE, CALIFORNIA 91206

1   ANGEL SOFT'S package consists of the wrapping of the standard
2   white toilet paper rolls. (Memorandum, p. 3) The outer wrapping
3   is clear--there is nothing striking or unusual in a package
4   wrapped in a clear outer wrapping. Moreover, the blue and yellow
5   colors are not unusual; at least one drugstore chain (CVS) uses
6   the same yellow and blue combination on its toilet paper.(Exh. 2,
7   CVS drugstore chain generic toilet tissue wrapping) Further,
8   Scott tissue uses a blue background. (Exh. 1, Scott tissue photo-
9   graph)

10      Defendant Angelite's pink wrapping stands in stark contrast to
11  the blue and yellow of ANGEL SOFT. Moreover, Plaintiff has
12  submitted to the court a wide array of glossy advertisements in
13  national English language journals (e.g. American Baby and Family
14  Circle), but it has not produced any evidence demonstrating that
15  a California shopper in the Latino or Spanish speaking market
16  would confuse Angelite's attractive pink wrapping with a differ-
17  ent product dressed in a dark blue and bright yellow. Therefore,
18  in assessing any secondary meaning, the Court should disregard
19  Plaintiff's ads and testimonials from its corporate executives as
20  irrelevant.

21      c. Plaintiff has not demonstrated a non-functional purpose as
22  to merit trade dress protection

23      Our circuit also requires that the trade dress be "nonfunc-
24  tional." Stephen W. Boney, Inc. v. Boney Services, Inc., supra,
25  127 F.3d at p. 828. This attribute has been described as "a mere
26  arbitrary embellishment" that lends the product a distinctive
27  flair. Vuitton et Fils S.A. v. J. Young Enterprises, Inc., 644

8

LAW OFFICES
KAZNJJAN & MARTINETT
520 East Wilson Avenue
Suite 250
GLENDALE, CALIFORNIA 91206

1 F.2d 769, 773 (1981) What is the embellishment that Plaintiff

2 claims deserves protection: a photograph of a baby set against a

3 blue background? (Memorandum, p. 3) Even if this were somehow

4 considered distinctive, Defendant's package has no such photo-

5 graph and its soft pink cannot be confused with Plaintiff's

6 bright blue and yellow.

7 Further, Plaintiff has not made any showing that its product

8 is recognizable in the California Latino or Spanish speaking

9 market, especially at the swap meets where Angelite is sold.

10 (Suppl. Decl. of John Lee, par. 5) Vuitton et Fils S.A. v. J.

11 Young Enterprises, Inc., supra, 644 F.2d at p. 773 (showing of

12 secondary meaning required to show non-functionability).

13 Therefore, Plaintiff's ANGEL SOFT mark is not protectable.

14 d. ANGEL SOFT PS's drab industrial packaging is not entitled

15 to trade dress protection

16 Plaintiff apparently also makes the claim that its ANGEL SOFT

17 PS is entitled to trade dress protection. (Memorandum, pp. 3, 5,

18 7, 17 at note 5) A photograph of this rather ordinary looking

19 roll of toilet tissue is reproduced in Plaintiff's Ex Parte

20 Application (at p. 3). The drab industrial packaging bears no

21 resemblance to Defendant's pink and white wrapping.

22 Moreover, Defendant distributes its bathroom tissue largely in

23 the California Spanish speaking and Latino market. Plaintiff

24 sells to commercial outlets (such as Little Caesar Enterprises).

25 (Memorandum, p. 4) Since Defendant does not compete in Plain-

26 tiff's market, there is no likelihood of confusion.

27 In addition, Plaintiff has only been selling ANGEL SOFT PS

28 since 2003. (Memorandum, p. 3) There is no showing that this

9

LAW OFFICES
KAZANJIAN & MARTINETTI
520 EAST WILSON AVENUE
SUITE 250
GLENDALE, CALIFORNIA 91206

1  wrapping is so well known by Little Caesar, or the rest of the

2  industrial market, to justify trade dress protection. See, Vuit-

3  ton et Fils S.A. v. J. Young Enterprises, Inc., supra, 644 F.2d

4  at pp. 773, 776 ( question of fact whether Louis Vuitton use of

5  fleur-de-lis is functional and if so whether mark has acquired a

6  secondary meaning)

7  D. PLAINTIFF'S ANGEL SOFT MARKS ARE PURELY DESCRIPTIVE TERMS AND

8  SO ARE NOT ACCORDED STATUTORY PROTECTION. IN FACT, THE TRADEMARK

9  OFFICE REFUSED TO APPROVE PLAINTIFF'S USE OF THE WORD "SOFT"

10  Plaintiff admits in its moving papers that the four trademarks

11  in question "...were issued only if the word "soft" was dis

12  claimed from protection." (Memorandum, p. 13)

13  Plaintiff does not elaborate as to why the word "soft" was

14  rejected by the Trademark Office; presumably, the term "soft" was

15  rejected as purely descriptive. However, the term Angel Soft is

16  merely another way of describing the tissue as "soft as an

17  angel," and our circuit has long held that "Purely descriptive

18  terms...are not so protected." Carter-Wallace, Inc. v. Procter &

19  Gamble Co., 434 F.2d 794, 800 (9th Cir. 1970) (e.g., "shredded

20  wheat") (citation omitted) In fact, the term "angel soft" has

21  been used to describe a wide array of products: e.g., "Angel Soft

22  Hand, Foot and Body Scrub," an Orange County, California dba

23  (Exhibit 3, Print-out re internet search of term "angel soft,"

24  Feb. 16, 2008, No. 6)

25  However, a descriptive mark may be entitled to protection if

26  it has acquired a secondary meaning. There is no showing that

27  ANGEL SOFT has acquired any following in the California Latino

1  and Spanish Speaking market or that the product has been widely

2  advertised in Los Angeles or Southern California and is even

3  known or recognized by purchasers. (Decl. of Armando Jimenez,

4  pars. 3, 6) The advertisements attached to Plaintiff's supporting

5  papers are from mainstream glossy English-language journals;

6  there is no showing that these journals are read by Latinos.

7      Therefore, ANGEL SOFT's marks are not entitled to protection

8  under even the most generous interpretation of the Lanham Act.

9  **E.  PLAINTIFF BELIEVES THAT ITS MARKS FALL INTO ONE OF TWO PRO-**

10  **TECTED CATEGORIES BUT ITS MARKS ARE NOT ENTITLED TO PROTECTION**

11  **WITHIN EITHER THE TWO CATEGORIES**

12      1. Plaintiff is unsure of its own trademark

13      Plaintiff claims that the ANGEL SOFT brand was launched in

14  1944. (Memorandum, p. 3) Yet, Plaintiff is unsure of whether its

15  marks are arbitrary or suggestive. In fact, in both its original

16  papers and in its supplemental brief, Plaintiff denies that its

17  marks are suggestive, then goes on to brief the issue to hedge

18  its bets. (Memorandum, p. 11: "On the spectrum of distinctive-

19  ness, the ANGEL SOFT Trademarks are arbitrary—not descriptive or

20  suggestive of the type of product...") (Supplemental Brief, p. 9:

21  "The phrase "Angel Soft" is not descriptive or suggestive of the

22  type of product—bathroom tissue.")

23      As Defendant has noted, the mark is descriptive since it is

24  merely another way of saying that Plaintiff's bathroom tissue is

25  "soft as an angel." However, assuming that the mark is sugges-

26  tive, it is a weak mark that does not merit statutory protection.

27      2. A suggestive mark is one that requires an imagination to

28  determine the nature of the goods.

11

LAW OFFICES OF
KAZANJIAN & MARTIRETTI
520 EAST WILSON AVENUE
SUITE 250
GLENDALE, CALIFORNIA 91206

1  One circuit court has described the difference between a

2  descriptive mark and a suggestive one:

3      "A term is suggestive if it requires imagination, thought

4  and perception to reach a conclusion as to the nature of goods. A

5  term is descriptive if it forthwith conveys an immediate idea of

6  the ingredients, qualities or characteristics of the goods."

7  Blinded Veterans Association v. Blinded American Veterans Founda-

8  tion, 872 F.2d 1035, 1040 (D.C. Cir. 1989)

9      In the present case, Plaintiff notes (in a footnote) that the

10 word "soft" "may be suggestive of bathroom tissue products," but

11 then notes (again in a footnote) that the Trademark Office forced

12 Plaintiff "to disclaim any independent trademark rights in the

13 word "soft" in its trademark application." (Supplemental Brief,

14 p. 9, note 2)

15     Assuming that the phrase "Angel Soft" is suggestive, rather

16 than descriptive, Plaintiff is not required to demonstrate a

17 secondary meaning to protect its claim. Blinded Veterans Associa-

18 tion v. Blinded American Veterans Foundation, supra, 872 F.2d at

19 p. 1040 (D.C. Cir. 1989) However, our circuit has found that a

20 suggestive mark may be considered "weak" and not entitled to the

21 greater protection afforded an arbitrary mark. AMF Incorporated

22 v. Sleekcraft Boats, 599 F.2d 341, 350 (9th Cir. 1979)

23     To gain statutory protection, a suggestive mark must undergo a

24 rigorous analysis, and its owner must demonstrate that there is

25 "a likelihood of confusion" in the public's mind between its own

26 mark and that of an offending one. GoTo.com., Inc. v. Walt Disney

27 Co., supra, 202 F.3d at p. 1206.

28

1    The Angelite mark and ANGEL SOFT marks are so dissimilar that

2    there is no likelihood of confusion.

3       3.    Under the tests set down by our circuit for trademark

4    infringement, Plaintiff cannot demonstrate that the public is

5    likely to confuse its marks with the Angelite brand.

6       In a leading case, decided almost thirty years ago, our cir-

7    cuit stated that a suggestive trademark will merit protection if

8    the marks in dispute "...are quite similar and the goods closely

9    related." AMF Incorporated v. Sleekcraft Boats, supra, 599 F.2d

10   at p. 350. As the court also noted, a "weak mark" may be "pro-

11   tected only against similar goods, similarly marketed." Id. at p.

12   350 (citing Westward Coach Manufacturing Co. v. Ford Motor Co.,

13   388 F.2d 627, 634 (7th Cir. 1968).

14      In the present case, Angelite markets its tissues to the

15   Latino and Spanish speaking market in which Plaintiff, despite

16   some effort, is wholly unknown. (Decl. of Armando Jimenez, par.

17   4) Further, Defendant marketed its Angelite at swap meets where

18   Plaintiff has little, or no, presence. (Suppl. Decl. of John Lee,

19   pars. 5 and 6)

20      With regard to the similarity of disputed marks, a more recent

21   9th Circuit opinion has provided further guidance. First, "...the

22   marks must be considered in their entirety and as they appear in

23   the marketplace." GoTo.com, v. Walt Disney Co. supra, 202 F.3d at

24   p. 1206. Second, ...similarity is adjudged in terms of appear-

25   ance, sound, and meaning." Id. at p. 1206.

26      Angelite sells its products in a specialized market aimed

27   toward Latinos and the Spanish speaking community; moreover, the

28   marks are different in appearance, sound, and meaning:

LAW OFFICES
KAZANJIAN & MARTINETTI
520 EAST WILSON AVENUE
SUITE 250
GLENDALE, CALIFORNIA 91206

1  a. The appearance of the marks is totally dissimilar

2  In determining the similarity of marks, a court may look to

3  the font and colors. GoTo.com, Inc. v. Walt Disney Co., supra,

4  202 F.3d at p. 1206.

5  The ANGEL SOFT font is in large white block lettering. (Memo-

6  randum, p. 3) Angelite's logo is written in script. Moreover, the

7  "g" in Angelite has a certain flourish that the bland "g" in

8  ANGEL SOFT lacks. (Memorandum, p. 7) In addition, the Angelite

9  logo is wrapped in an oval shape; the ANGEL SOFT lettering is set

10 against a blue background. The difference in logos is an impor-

11 tant key in determining the similarity of marks. AMF Incorporated

12 v. Sleekcraft Boats, supra, 599 F.2d at p. 351.

13 Further, the colors are totally different. The ANGEL SOFT

14 packaging has a blue and yellow background (similar to that used

15 by other tissue products as shown in Exhs. 1 and 2). The Angelite

16 package has a pink background.

17 Using the single glance test set forth in GoTo.com., to com-

18 pare ANGEL SOFT and Angelite, it cannot be said that "...one is

19 immediately struck by their similarity." GoTo.com, v. Walt Disney

20 Co., supra, 202 F.3d at p. 1206. In fact, the marks upon a close

21 inspection are totally dissimilar from a visual standpoint.

22 b. The sound of the marks is dissimilar.

23 Our circuit has noted that in comparing marks, "Sound is also

24 important because reputation is often conveyed word-of-mouth."

25 AMF Incorporated v. Sleekcraft Boats, supra, 599 F.2d at p. 351.

26 Here, both products have the common word "angel" but the

27 phrase "Angel Soft" has a different sound than the single word

1  "Angelite,"--a neologism. The two marks are not "strikingly alike

2  when spoken." AMF Incorporated v. Sleekcraft Boats, supra, 599

3  F.2d at p. 352 (noting the similarity between "Smirnoff and Sarn-

4  off") (Citation omitted.)

5      c. The meaning of the marks is dissimilar

6      "Closeness in meaning can itself substantiate a claim of

7  similarity of trademarks." AMF Incorporated v. Sleekcraft Boats,

8  supra, 599 F.2d at p. 352. However, the word "soft" and "lite"

9  are not synonyms. Id. at page 352. "Soft" refers to texture, the

10  feel of a tissue; "lite" or "light" refers to weight. The Random

11  House Dictionary, Ballantine Books (1980 ed.)

12      Therefore, there is no likelihood of confusion by consumers

13  based upon the appearance, sound, or meaning of the marks.

14      4. Plaintiff's marks are not arbitrary

15      Plaintiff argues that "on the spectrum of distinctiveness, the

16  ANGEL SOFT Trademarks are arbitrary." (Supplemental Brief, p. 9)

17  Plaintiff claims that the mark is arbitrary because the word

18  "angel" has no relation to bathroom tissue. If Plaintiff marketed

19  its tissue under the single word "Angel," its argument might have

20  merit. However, adding the descriptive word "soft" robs the

21  phrase of its uniqueness when applied to bathroom tissue--and

22  merely is another way of describing the quality of the product.

23      Plaintiff cannot have it both ways: its mark is not arbitrary

24  when combined with the adjective "soft." See, Blinded Veterans

25  Association v. Blinded American Veterans Foundation, supra, 872

26  F.2d at p. 1040, note 9 (listing examples of arbitrary marks:

27  "Black & White" scotch whiskey, "Mustang" motels).

28      5. Plaintiff has not demonstrated likelihood of confusion

LAW OFFICES
KAZANJIAN & MARTINETTI
520 EAST WILSON AVENUE
SUITE 250
GLENDALE, CALIFORNIA 91206

1   under the other Sleekcraft factors.

2       The "similarity of the marks" is the single factor that courts

3   seem to accord the most weight in determining "likelihood of

4   confusion." See, e.g., GoTo.com., Inc., v. Walt Disney Co.,

5   supra, 202 F.3d at p. 1205) However, a number of other factors

6   are also relevant: e.g., 1) strength of the mark, 2) proximity of

7   the goods, 3) evidence of actual confusion, 4) marketing channels

8   used; 5) type of goods and the degree of care likely to be exer-

9   cised by the purchaser as well as a party's intention. AMF

10  Incorporated v. Sleekcraft Boats, supra, 599 F.2d at p. 348.

11      In the presence case, Defendants have demonstrated that the

12  ANGEL SOFT marks are descriptive--and that "angel soft" is actu-

13  ally a common phrase to describe a product. (Exh. 3) Moreover,

14  Defendant Angelite has used swap meets as marketing channels--and

15  Plaintiff's glossy magazine ads in national magazines are not

16  geared to this Southern California market. While both products

17  are bathroom tissues, Latino purchasers are careful shoppers and

18  have no attachment or loyalty to Plaintiff's "Angels in Action"

19  or "Bathroom Moments" advertising campaigns. (Decl. of Armando

20  Jimenez, par. 4)

21      Defendants strongly object to Plaintiff's statement that

22  Spanish speaking customers are more likely to be confused. (Decl.

23  of Armando Jimenez, par. 2) (Memorandum, p. 14 ("...these [i.e.,

24  Spanish speaking customers] are likely to be confused.") Also,

25  Defendant Lee had no intention to infringe on ANGEL SOFT's marks

26  since the logos were completely different, the colors and type

27  were different, and equally importantly, ANGEL SOFT was not sold

28

LAW OFFICES
KAZANJIAN & MARTINETT
520 EAST WILSON AVENUE
SUITE 250
GLENDALE, CALIFORNIA 91206

1  in the Latino markets especially at swap meets where Angelite

2  was sold. (Suppl. Decl. of John Lee, paragraph 8)

3  Further, the only supposed evidence of "actual confusion," is

4  an anonymous letter from a consumer that does not even mention

5  Angelite but refers to a Mr. Allen Chow. (Decl. of Andrew Towle

6  in Support of Ex Parte Application for TRO, Exh. 28)

7  Therefore, there is no "likelihood of confusion" under the

8  Sleekcraft factors.

9  **F.  PLAINTIFF IS NOT LIKELY TO PREVAIL ON ITS FALSE DESIGNATION OF**

10  **ORIGIN CLAIM SINCE THE MARKS ARE TOTALLY DISSIMILAR AND ANGE-**

11  **LITE'S PACKAGE STATES THAT THE PRODUCT WAS "MADE IN CHINA."**

12  Plaintiff notes that to establish a false designation of

13  origin claim, it must establish the same elements "as are re-

14  quired to prove a trademark or trade dress infringement claim."

15  (Memorandum, p. 17)

16  Defendant has already demonstrated that there is no likelihood

17  that an ordinary consumer would confuse Angelite's distinctive

18  mark with those of ANGEL SOFT.

19  Moreover, Angelite's wrapping clearly states that the product

20  was "Made in China" and therefore there is no confusion about the

21  point of origin. (Decl. of John Lee, par. 7) (Exh. 4)

22  **G.  PLAINTIFF IS NOT LIKELY TO PREVAIL ON ITS UNFAIR COMPETITION**

23  **CLAIM SINCE IT HAS NOT SHOWN EITHER LIKELIHOOD OF CONFUSION NOR**

24  **ACTUAL CONFUSION**

25  Plaintiff correctly notes that under a state law unfair compe-

26  tition claim the test is "whether the public is likely to be

27  deceived or confused by the similarity of the marks." (Memoran-

28  dum, p. 18)

17

LAW OFFICES
KAZANJIAN & MARTINEZ
520 EAST WILSON AVENUE
SUITE 250
GLENDALE, CALIFORNIA 91206

1   Defendant has already demonstrated that there is no likeli-

2   hood that an ordinary consumer would confuse Angelite's

3   distinctive mark with those of ANGEL SOFT.

4       Moreover, the one consumer complaint that Plaintiff has

5   produced is anonymously signed "Anonymous for Consumer protec-

6   tion" and apparently does not even refer to Defendant's product.

7   (Declaration of Andrew Towle in Support of Ex Parte Application

8   for TRO, Exh. 28)

9       The court should ignore this lettre de cachet and deny Plain-

10  tiff's request for an injunction under state law.

11  **H. OUR CIRCUIT HAS RECOGNIZED THAT IN "EXCEEDINGLY RARE" IN-**

12  **STANCES A PARTY'S VOLUNTARY CESSATION OF CHALLENGED CONDUCT WILL**

13  **MOOT INJUNCTIVE RELIEF. DEFENDANT LEE'S REMOVAL OF 59, 520 TISSUE**

14  **WRAPPINGS AND HIS VOLUNTARY INFORMING DISTRIBUTORS THAT HE WILL**

15  **NOT FILL RE-ORDERS DEMONSTRATES THAT THIS IS SUCH AN INSTANCE**

16      Our circuit has recognized that in "exceedingly rare" in-

17  stances a party's voluntary cessation of challenged conduct will

18  render moot requested relief. Federal Trade Commission v. Afford-

19  able Media, 179 F.3d 1228, 1238 (9th Cir. 1999)

20      In order to meet this burden, a party "...must show that

21  "subsequent events [have] made it absolutely clear that the

22  allegedly wrongful behavior cannot reasonably be expected to

23  recur." Id. at p. 1238.

24      In the present case, Defendant John Lee voluntarily supervised

25  the removal of 59, 520 tissue wrappings that bore the Angelite

26  label and has informed the court under oath that his company is

27  "...no longer selling, importing, or distributing Angelite tissue

28

(pending the outcome of this litigation)." (Decl. of John Lee, par. 1; Suppl. Decl., par. 1

Moreover, Defendant Lee has written to his five major distributors informing them that "...we are no longer selling Angelite tissue and will not refill any reorders. Instead, we are offering for sale our Swan label which is not in controversy." (Decl. of John Lee, par. 2)

Plaintiff's concern that Defendants will distribute Angelito tissues is a red herring. Defendants have applied for a trademark under that name--as is their right, and Plaintiff has contested the mark--and has until April to file its opposition papers. However, Defendant has never imported, sold, or distributed any tissues using the Angelito brand and will not do so until this litigation is concluded. (Suppl. Decl. of John Lee, par. 3)

Based upon Defendants' strong actions in removing the offending wrappings and their voluntarily contacting distributors to inform them that the company will not re-fill any Angelite orders, Defendants have made an "absolutely clear" showing that their marketing of Angelite (or Angelito) tissues "cannot reasonably be expected to recur" until this litigation is concluded.

Plaintiff's request for a preliminary injunction should therefore be denied.

Dated: February 26, 2008        KAZANJIAN & MARTINETTI
                                 RONALD MARTINETTI, ESQ.

                           By _Ronald Martinetti_
                                 Ronald Martinetti
                                 Attorneys for Defendants
                                 Lee's General Toys and
                                 John Lee



EXHIBIT 1



**EXHIBIT** 2

13300T

**Time of Request:** Saturday, February 16, 2008  19:40:50 EST
**Client ID/Project Name:** Ron Martinetti
**Number of Lines:** 72
**Job Number:**      1823:75887135

Research Information

**Service:**    Terms and Connectors Search
**Print Request:** All Documents 1-11
**Source:** Combined Business and Corporation Information
**Search Terms:** "angel soft"

**Send to:**   REBHUHN, HARRY
          HARRY REBHUHN LAW OFFICES OF
          1441 N VISTA ST APT 2
          LOS ANGELES, CA 90046-4227

# EXHIBIT 3

3-1

1. AESTHETIQUE, INC., DOMESTIC CORPORATION (PROFIT), 6/1/1996, 11/13/1996, 100137343, ARKANSAS SECRETARY OF STATE
... **ANGEL SOFT** SKIN ...

2. ANGEL-SOFT NATURAL SKIN CARE, OTHER (ASSUMED NAME), 3/9/2004, ANX8174652, MINNESOTA SECRETARY OF STATE

3. ANGEL SOFT, OTHER (ASSUMED BUSINESS NAME), 5/3/1994, 39892088, OREGON SECRETARY OF STATE

4. ANGEL SOFT INK, 11/27/2007, 2007040288, SAN DIEGO COUNTY, CALIFORNIA, FICTITIOUS BUSINESS NAMES

5. ANGEL SOFT CLEANING, INC., DOMESTIC FOR PROFIT, 1/11/2006, P06000005399, FLORIDA DEPARTMENT OF STATE

6. ANGEL SOFT HAND, FOOT AND BODY SCRUB, 11/1/2004, 20046006242, ORANGE COUNTY, CALIFORNIA, FICTITIOUS BUSINESS NAMES

7. ANGEL SOFT RAGDOLLS-UNIDOLLS, 7/1/2000, MICHIGAN FICTITIOUS BUSINESS NAMES

8. Angel-Soft Natural Skin Care, DBA, 3/9/2004, MINNESOTA FICTITIOUS BUSINESS NAMES

9. ANGEL SOFT WATER CO., INC., DOMESTIC CORPORATION, 11/1/1973 (Anniversary Month: NOVEMBER), 50336123, ILLINOIS SECRETARY OF STATE

10. ANGEL SOFT ALPACAS, INC., DOMESTIC CORPORATION, 3/3/1998 (Anniversary Month: MARCH), 59828843, ILLINOIS SECRETARY OF STATE

11. ANGEL SOFT TISSUE MILLS, INC., FOREIGN BUSINESS, 9/27/1995, 7/30/1976, 406278, NEW YORK DEPARTMENT OF STATE

32

13300T

********** Print Completed **********

Time of Request  Saturday, February 16, 2008  19:40:50 EST

Print Number:    1823:75887135
Number of Lines: 72
Number of Pages: 1

Send To:  REBHUHN, HARRY
          HARRY REBHUHN LAW OFFICES OF
          1441 N VISTA ST APT 2
          LOS ANGELES, CA 90046-4227

3-3



**EXHIBIT** 4

RONALD MARTINETTI, ESQ.
State Bar No. 106 898
KAZANJIAN & MARTINETTI
1   520 East Wilson Avenue
Glendale, California 91206
2   Tel. 818-241-1011
FAX 818-241-2193
3   E-Mail amlegends@aol.com

4   Attorneys for Defendants
Lee's General Toys, Inc., and
5   John Lee

6

7

8                  UNITED STATES DISTRICT COURT

9           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10
                                        CASE. NO. O7 CV 2391
11   ------------------------------            (JAH POR)
GEORGIA-PACIFIC CONSUMER          )
12   PRODUCTS LP, a Delaware limited  )  DECLARATION OF
partnership,                      )  RON MARTINETTI IN
13                                    )  OPPOSITION TO PL.'S
        Plaintiff,                )  MOT. FOR PRELIMINARY
14                                    )  INJUNCTION
vs.                               )
15                                    )  Date: Feb. 28, 2008
                                    )  Judge: Hon. J. Houston
16   LEE'S GENERAL TOYS, INC., a California  )
corporation, JOHN LEE, an individual; and)
17   DOES 1-10,                       )
                                    )
18        Defendants.               )

19

20      DECLARATION OF JOHN LEE IN REBUTTAL TO PLAINTIFF'S REPLY

21      I, Ron Martinetti, hereby declare:

22      1.  I took the photographs that are labeled as Exhibits 1, 2,

23   and 4.

24      2. The photographs of the Scott and CVS bathroom tissues were

25   taken last week in New York City. I purchased both toilet issues

26   and photographed the items. Scott of course is a nationally known

27

28                            1

brand that has been widely advertised over the years. CVS is a generic label--the manager of the store told me that the chain is especially strong in the South and that he believed that CVS also ran a chain of drugstores in California.

3.  I also photographed the Angelite roll with the Made in China stamp. Although this stamp is visible to the naked eye, I used a magnifying glass to improve the quality.

4.  Exhibit 3 was printed from the internet by Harry Rebhuhn my former law partner.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this February 27, 2008 at Glendale, California.

Ron Makin -

2

RONALD MARTINETTI, ESQ.
State Bar No. 106 898
KAZANJIAN & MARTINETTI
520 East Wilson Avenue
Glendale, California 91206
Tel. 818-241-1011
FAX 818-241-2193
E-Mail amlegends@aol.com

Attorneys for Defendants
Lee's General Toys, Inc., and
John Lee

LAW OFFICES
KAZANJIAN & MARTINETTI
520 EAST WILSON AVENUE
SUITE 250
GLENDALE, CALIFORNIA 91206

## UNITED STATES DISTRICT COURT

### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| -------------------------------- | CASE. NO. O7 CV 2391 (JAH POR) |
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, a Delaware limited partnership,<br><br>     Plaintiff,<br><br>vs.<br><br>LEE'S GENERAL TOYS, INC., a California corporation, JOHN LEE, an individual; and DOES 1-10,<br><br>     Defendants. | DECLARATION OF ARMANDO JIMENEZ IN OPPOSITION TO PL.'S MOT. FOR PRELIMINARY INJUNCTION<br><br>Date: Feb. 28, 2008<br>Judge: Hon. J. Houston |

DECLARATION OF JOHN LEE IN REBUTTAL TO PLAINTIFF'S REPLY

I, Armando Jimenez, hereby declare:

1.   I have been a private licensed investigator in  California since 1988 and have worked in both the criminal and civil fields. I  am  also fluent in Spanish and have been very  active  in  the Latino  community in Southern California. I have worked in  voter registration projects for Latinos and grass roots fundraising for

1

LAW OFFICES
KAZANJIAN & MARTINETTI
520 EAST WILSON AVENUE
SUITE 250
GLENDALE, CALIFORNIA 91206

1   Latino programs in education and domestic violence prevention.

2       2.  I am also a father and have a family and am very familiar

3   with shopping for household goods and products. In addition, I

4   interact socially with many Latino families and am familiar with

5   their education and awareness. I strongly disagree with plain-

6   tiff's counsel's statement that Latinos may be more easily con-

7   fused than other shoppers. Latinos are careful and prudent

8   shoppers, like myself, and there is no way I would confuse the

9   Angel Soft logo and the Angelite logo. They are completely dif-

10  ferent to the eye and ear.

11      3.  I read Spanish language papers such as La Opinion and

12  Spanish magazines such as Hispanic Business and Latina (which my

13  wife subscribes to). I have never seen an ad in these publica-

14  tions for Angel Soft. Further, I also watch Spanish language

15  television and have never seen an ad for Angel Soft on Spanish

16  language TV (including Angel Soft's "Bathroom Moments" campaign).

17      4.  In addition, I have traveled extensively in the Los

18  Angeles and San Diego areas and, as far as I can determine, Angel

19  Soft has absolutely no following or niche in the Latino market.

20  As far as I am concerned, Angel Soft has no trademark or loyalty

21  in the Spanish language community and is wholly unknown in the

22  bathroom tissue market among Latinos.

23      5.  As part of my investigation into determining whether Angel

24  Soft was well-known in the Southern California Latino community,

25  I visited several stores in Latino neighborhoods, for example,

26  small corner Mom and Pop stores. I did not see any evidence of

27  Angel Soft and no one seemed to recognize the label. I did,

28

LAW OFFICES
KAZARIAN & MARTIRETTI
520 EAST WILSON AVENUE
SUITE 250
GLENDALE, CALIFORNIA 91206

1    however, see Angelite in several small stores. My wife, also, is

2    a shopper who patronizes stores in the East Los Angles, Whittier,

3    Montebello area—areas that have a large Latino population. My

4    wife told me that she was totally unfamiliar with the Angel Soft

5    bathroom tissue.

6        I declare under penalty of perjury under the laws of the

7    United States and the state of California that the foregoing is

8    true and correct.

9        Executed this February 27, 2008 at Glendale, California

3

## PROOF OF SERVICE

I am employed in Los Angeles County, California; I am over the age of eighteen years and not a party to the within action. My business address is 520 East Wilson Glendale, California 91206.

On this date I served Defendants' Opposition to Plaintiff Georgia Pacific's Motion for Preliminary Injunction; Decls. of R. Martinetti, A. Jimenez, J. Lee

_____ by personal delivery (to the address below)

    x

_____ by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Post Office mail box at Glendale, California, addressed to:

Stephen Swinton, Esq.
Latham & Watkins
12636 High Bluff Drive, Suite 400
San Diego, California 92130-2071
Tel. 858-523-5400
FAX 858-523-5450

and via FAX to counsel for Georgia-Pacific Consumer Prod. (x)

(x) BY MAIL I sealed and placed such envelope for collection and mailing to be deposited in the mail on the same day in the ordinary course of business at Glendale, California. I am readily familiar with our law firm's practice of collecting and process-ing correspondence and documents for mailing. They are deposited with the U.S. Postal Service on the same day as dated, in the ordinary course of business.

_____ (State) I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

(x) (Federal

The papers are also to be filed via e-mail.

I declare under penalty of perjury of the state of California that the foregoing is true and correct.

Executed this February 27, 2008 at Glendale, California 91206

1

RONALD MARTINETTI, ESQ.
State Bar No. 106 898
KAZANJIAN & MARTINETTI
520 East Wilson Avenue
Glendale, California 91206
Tel. 818-241-1011
FAX 818-241-2193
E-Mail amlegends@aol.com

Attorneys for Defendants
Lee's General Toys, Inc., and
John Lee


                 UNITED STATES DISTRICT COURT

            FOR THE SOUTHERN DISTRICT OF CALIFORNIA


                                    CASE. NO. O7 CV 2391
-----------------------------------         (JAH POR)
GEORGIA-PACIFIC CONSUMER
PRODUCTS LP, a Delaware limited      SUPPLEMENTAL DECL.
partnership,                         OF JOHN LEE IN OPP
                                     TO PLAINTIFF'S
     Plaintiff,                      MOT. FOR PRELIMINARY
                                     INJUNCTION
vs.
                                     Date: Feb. 28, 2008
                                   , Judge: Hon. J. Houston
LEE'S GENERAL TOYS, INC., a California   )
corporation, JOHN LEE, an individual; and)
DOES 1-10,                               )

     Defendants.


DECLARATION  OF  JOHN LEE IN OPPOSITION TO MOT.  FOR  PRELIMINARY

INJUNCTION

    I, John Lee, hereby declare:

    1.  I am a defendant in the present action, along  with  Lee's

General  Toys, Inc. I am the president of Lee's General Toys  and

am familiar with the day to day operations.

                              1

LAW OFFICES OF
KAZANJIAN & MARTINETTI
520 EAST WILSON AVENUE
SUITE 250
GLENDALE, CALIFORNIA 91206

2. As I have stated under oath in the past, Defendants have removed the outer wrappings from 59, 520 tissue rolls and are no longer selling, importing, or distributing Angelite tissue (pending the outcome of this litigation).

3. At present, Lee's General Toys has an application pending before the Trademark Office for Angelito. This application has been opposed by Plaintiff Georgia-Pacific and Plaintiff has been granted an extension (their second) to file opposition papers. However, Defendants have never marketed any product under the Angelito label and we will not market or sell any Angelito tissue or any other products using that name until the conclusion of this litigation.

4. Lee's General Toys has focused on marketing Angelite tissues to the Southern California Latino and Spanish speaking market. In fact, the Latino market has been the sole focus of my marketing strategy and the overwhelming number of Angelite tissues that have been sold have been sold to the Latino market. For example, I sell toys and other products directly from our warehouse that is located in Vernon. The overwhelming number of customers who come to purchase items (including in the past, Angelite tissues) are Latino and Spanish speaking. Moreover, I have never sold Angelite tissues to commercial outlets such as hotels.

5. In the past, Angelite tissues has also been sold through five distributors. I have informed these distributors that we are no longer selling Angelite tissues and will not re-fill orders. Three of these distributors almost exclusively sell to swap meets. They are Jorge Acevas Contreras, TBA Mexican Trade Gro-

LAW OFFICES
KAZANJIAN & MARTINETTI
520 EAST WILSON AVENUE
SUITE 250
GLENDALE, CALIFORNIA 91206

1    cery, and TCI Supply Co. Plaintiff Angel Soft has no presence at

2    these swap meets and these swap meets are largely patronized by

3    Latinos and Spanish speaking customers.

4        6.  I have never seen any Angel Soft advertisement geared to

5    the Southern California Latino market and have never seen their

6    products sold at a swap meet.

7        7.  Further, the Angel Soft logo with its background photo of a

8    baby would not be confused with our oval shaped logo that has

9    blue lettering with pink background. Based upon my experience in

10   selling both toys and bathroom tissue, Latinos are careful shop-

11   pers. Since the wrapping has stamped on it, "Made in China,"

12   there can be no confusion as to its point of origin.

13       8.  I had absolutely no intention of infringing on Angel Soft's

14   trademark since my logo was completely different, had different

15   colors and type, and since Angel Soft was not sold in the Latino

16   market as far as I was able to tell--and was not sold at the swap

17   meets around Southern California which I sold to. In addition, I

18   had a valid California trademark which I obtained in 2003.

19       I declare under penalty of perjury that the foregoing is true

20   and correct under the laws of the United States and the state of

21   California.

22       Executed this February 27, 2008 at Vernon, California

23

24

25

26

27

28