1  LATHAM & WATKINS LLP
   Stephen P. Swinton (Bar No. 106398)
2  steve.swinton@lw.com
   Adam A. Welland (Bar No. 228680)
3  adam.welland@lw.com
   12636 High Bluff Drive, Suite 400
4  San Diego, California 92130-2071
   Telephone: (858) 523-5400
5  Facsimile: (858) 523-5450

6  Attorneys for Plaintiff,
   GEORGIA-PACIFIC CONSUMER PRODUCTS LP

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  GEORGIA-PACIFIC CONSUMER          )   Civil Action No. 07-CV-02391 JAH (POR)
    PRODUCTS LP, a Delaware limited   )
12  partnership,                      )   **PLAINTIFF GEORGIA-PACIFIC**
                                      )   **CONSUMER PRODUCTS LP'S REPLY**
13              Plaintiff,            )   **TO DEFENDANTS' OPPOSITION TO**
                                      )   **SUPPLEMENTAL BRIEF IN SUPPORT**
14        v.                          )   **OF MOTION FOR PRELIMINARY**
                                      )   **INJUNCTION**
15  LEE'S GENERAL TOYS, INC., a California )
    corporation, JOHN LEE, an individual; and )
16  DOES 1-100,                       )
                                      )
17              Defendants.           )
                                      )
18                                    )
                                      )
19  _____   )

20

21

22

23

24

25

26

27

28

1    Pursuant to the Court's Order dated January 29, 2008, Plaintiff Georgia-Pacific

2  Consumer Products LP ("Georgia-Pacific") hereby submits this Reply to Defendants' Opposition

3  to Plaintiff Georgia-Pacific's Motion for a Preliminary Injunction ("Opposition").

4  **I.    INTRODUCTION**

5    Defendants' Opposition represents their most recent attempt to find an argument, any

6  argument, whether or not it is accurate in fact and law, that will perhaps "stick." Like their prior

7  attempts, Defendants' arguments fail.

8    Defendants previously argued that Georgia-Pacific does not sell its **ANGEL SOFT®**

9  brand bathroom tissue in the same channels as "Angelite" – discount stores. In fact, Georgia-

10  Pacific sells **ANGEL SOFT®** bathroom tissue to discount stores such as Big Lots, Family

11  Dollar, Dollar General, Fred's, $0.99 Stores, Canned Foods, and McFrugles. *See* Georgia-

12  Pacific's Supplemental Brief in support of Motion for a Preliminary Injunction ("Supplemental

13  Brief") at 5 (Dkt # 30). Consequently, there is not a single mention of that argument in the

14  Opposition. Instead, their newly-concocted version of this argument is that even though

15  Georgia-Pacific sells **ANGEL SOFT®** bathroom tissue to numerous discount stores, it does not

16  market its bathroom tissue to Spanish-speaking consumers. This argument is entirely false –

17  Georgia-Pacific directs considerable efforts in advertising specifically to the Spanish-speaking

18  market, including nationwide television, radio, and on-line advertisements in Spanish.

19    Defendants also claimed that they did not intentionally infringe the **ANGEL SOFT**

20  Trademarks. In response, Georgia-Pacific presented evidence that Defendants' own suppliers,

21  from whom they order and receive "Angelite," are aware of **ANGEL SOFT®** bathroom tissue

22  and recognize that it is a famous brand. Supp. Br. at 3-5. Defendants do not even attempt to

23  controvert this evidence, nor do they deny their awareness of the **ANGEL SOFT** Trademarks.

24  This silence speaks volumes.

25    In another similar instance, Georgia-Pacific set forth evidence of the presence of

26  unlawful and potentially dangerous levels of lead in the "Angelite" packaging. *See* Declaration

27  of Joseph Miller in support of Georgia-Pacific's Reply to Defendants' Declaration of R.

28  Martinetti in Opposition to Motion for Temporary Restraining Order (Dkt. #16). Aside from

1  objecting, Defendants have not set forth any evidence to dispel this worrisome finding. Thus, the

2  evidence of high levels of lead in the Defendants' packaging also stands uncontroverted. This

3  significantly heightens the danger of consumer confusion.

4        In terms of the arguments that are actually present in Defendants' Opposition, they are

5  replete with numerous misstatements of fact and law. Georgia-Pacific thus submits this Reply to

6  correct such inaccuracies:

7       ➤ Two of the four asserted **ANGEL SOFT** Trademarks achieved incontestable status,
   rendering them presumptively valid, distinctive, and non-functional marks entitled to
8       the highest degree of protection;

9       ➤ Defendants' arguments regarding the stylization and scripting of their "Angelite" logo
   are completely irrelevant. Rather, the actual words of the **ANGEL SOFT**
10      Trademarks alone are protected – rendering the "Angelite" logo confusingly similar;
   and

11
        ➤ Defendants' actions taken thus far are purely temporary in nature and do not moot the
12      need for a preliminary injunction.

13       When viewed in the proper light and with even only a minimal amount of scrutiny,

14 Defendants have not set forth any argument, either previously or in its Opposition, that would

15 preclude entry of a Preliminary Injunction.

16 **II.  ARGUMENT**

17     **A.  Defendants' Failure to Rebut the Evidence Demonstrating Their Awareness
   of the ANGEL SOFT Trademarks and Their Intent in Selecting the**
18     **"Angelite" Logo Speaks Volumes**

19       Nowhere in their Opposition do Defendants deny knowledge of the **ANGEL SOFT®**

20 brand and the **ANGEL SOFT** Trademarks. This is because the evidence that Georgia-Pacific set

21 forth in its Supplemental Brief demonstrates that such knowledge is indisputable. Defendants'

22 sources for the "Angelite" bathroom tissue in China both admitted knowledge of **ANGEL**

23 **SOFT®** bathroom tissue, and Defendants' state and federal trademark applications were both

24 prosecuted by an experienced trademark attorney. *See* Supp. Br. at 3-5. In fact, since the time

25 the Supplemental Brief was filed, Georgia-Pacific obtained additional admissions from

26 Defendants' sources in China. Defendants' admitted source, Zhongshan Runhui Paper Co. Ltd.,

27 was aware that **ANGEL SOFT®** is a famous brand in the United States. Declaration of Zhijun

28 Xu, ¶ (d). The evidence of Defendants' knowledge of **ANGEL SOFT®** is thus unconverted.

1    Defendants' awareness of the **ANGEL SOFT** Trademarks has considerable implications

2  in a likelihood of confusion analysis. "Courts often draw a presumption of bad faith merely from

3  proof that [a] Defendant knew of plaintiff's mark at the time of adoption." 1-5 Trademark and

4  Unfair Competition Deskbook § 5.05 (2007); *see also Nabisco Brands v. Kaye*, 760 F. Supp. 25,

5  27 (D.Conn. 1991). The fact that Defendants failed to rebut this presumption is, *on its own*,

6  sufficient to establish a likelihood of confusion. *See Fuji Photo Film Co. v. Shinohara Shoji*, 754

7  F.2d 591, 596 (5th Cir. 1985) ("Bad faith, however, may, without more, prove infringement.");

8  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979) ("When the alleged infringer

9  knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can

10  accomplish his purpose: that is, that the public will be deceived."); *William H. Morris Co. v.

11  Group W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995) ("If [the defendant] intentionally misled

12  consumers, we would presume consumers were in fact deceived and [the defendant] would have

13  the burden of demonstrating otherwise.").

14    Defendants' isolated statement that they did not intend to infringe the **ANGEL SOFT**

15  Trademarks is of little consequence in light of the affirmative and uncontroverted evidence of

16  their awareness, as well as the fact that they selected a logo containing the term "angel," a phrase

17  that bears no relation to bathroom tissue. Further, Defendants' previously made representations

18  of questionable veracity to Georgia-Pacific and to this Court. For instance, in Defendants' state

19  and federal trademark applications for "Angelite 500," Defendants explicitly stated that their first

20  use of the mark was January 31, 2002. Declaration of Adam Welland ("Welland Decl."), ¶¶ 3-4,

21  Exhibits ("Exs.") 1-2. Yet, Defendants repeatedly told Georgia-Pacific and this Court that they

22  did not begin selling "Angelite" until 2003. *Id.* at ¶ 5, Ex. 3. Defendants' isolated statement

23  regarding their lack of intent is suspect, particularly when combined with their awareness of the

24  **ANGEL SOFT** Trademarks and the similarity of their chosen logo.

25    The affirmative evidence set forth by Georgia-Pacific, which remains uncontroverted,

26  therefore weighs heavily in favor of granting a Preliminary Injunction.

27

28

**B.    The ANGEL SOFT Trademarks Are Strong, Incontestable Marks, Entitled to a High Degree of Protection**

      **1.    Defendants' Challenge to the Validity of the ANGEL SOFT Trademarks Is Improper as a Matter of Law**

Defendants' attempt to challenge both the validity and strength of the **ANGEL SOFT** Trademarks is unavailing and contrary to well established law. Two of the four asserted **ANGEL SOFT** Trademarks have been in continuous use since 1944 and have achieved incontestable status. *See Ex Parte Application* at 4, (Dkt. # 5). This status is "conclusive evidence of the *validity* of the registered mark and of the registration of the mark, of the registrant's *ownership* of the mark, and of the registrant's *exclusive right to use* the registered mark in commerce." 15 U.S.C. § 1115(b); *see also Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1072 (9th Cir. 2006) ("Volkswagen and Audi's trademarks are registered and incontestable, and are thus presumed to be valid, distinctive, and non-functional."). As a result, an incontestable mark cannot be challenged as merely descriptive.[1] *See Park'N Fly v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 205 (1985) ("[T]he holder of a registered mark may rely on incontestability to enjoin infringement and ... such an action may not be defended on the grounds that the mark is merely descriptive."). Thus, Defendants' apparent challenge to the statutory validity of **ANGEL SOFT** Trademarks is without any merit.

      **2.    The ANGEL SOFT Trademarks Are Arbitrary and Entitled to a High Degree of Protection**

Contrary to Defendants' assertion, Georgia-Pacific is not "uncertain" regarding the nature of its **ANGEL SOFT** Trademarks and the corresponding high degree of protection to which these marks are entitled. These marks are properly classified as arbitrary marks, entitled to the greatest protection afforded under the Lanham Act.[2] Supp. Br. at 9-10.

---

[1] Defendants' argument that Georgia-Pacific's **ANGEL SOFT** Trademarks indicate that its products are "soft as an angel," Opp. at 10, is thus not only irrelevant as a matter of law, but it is also lacking in any evidentiary support whatsoever.

[2] While Georgia-Pacific firmly believes that its **ANGEL SOFT** Trademarks are arbitrary, its discussion of suggestive marks in its Supplemental Brief is provided solely as an alternative argument to illustrate the absolute bare minimum of protection to which the marks are entitled.

1    While Defendants attempt to misclassify the **ANGEL SOFT** Trademarks by focusing on

2   the word "soft," Opp. at 15, it is unquestionable that Georgia-Pacific's marks comprise two

3   words—"Angel Soft"—and that the word "angel" is a key component of these marks. Simply

4   because the word "soft" *also* comprises a portion of these federally-registered trademarks does

5   not deprive them of their arbitrary classification. *Computer Care v. Service Sys. Enter.*, 982 F.2d

6   1063, 1069 (7th Cir. 1992) (where overall trade dress is distinctive, it is not rendered

7   unprotectable simply because it uses generic or descriptive elements); *Taco Cabana Int'l, Inc. v.*

8   *Two Pesos, Inc.*, 932 F.2d 1113, 1120 (5th Cir. 1991) (quality of inherent distinctiveness is not

9   surrendered merely because a mark incorporates descriptive elements; "the existence of

10   descriptive elements does not eliminate the possibility of inherent distinctiveness in the trade

11   dress as a whole"); *Ass'n of Co-op. Members, Inc. v. Farmland Indus.*, 684 F.2d 1134, 1140 (5th

12   Cir. 1982) ("The whole, in trademark law, is often greater than the sum of its parts.").

13    Defendants' limited evidence of other uses of the term "Angel Soft" on unrelated and

14   entirely unknown products is also insufficient to diminish the degree of protection afforded to the

15   **ANGEL SOFT** Trademarks. Opp. at 10. In essence, Defendants argue that the field of products

16   using the term "Angel Soft" is crowded, and hence "Angel Soft" is entitled to minimal

17   protection. In order to show a crowded field that renders a trademark weak, however, the

18   members of the crowd must enjoy *appreciable* usage and recognition. *E.g.*, *Scarves by Vera,*

19   *Inc. v. Todo Imps., Ltd.*, 544 F.2d 1167, 1173-74 (2d Cir. 1976). The mere presence of third-

20   party usage of a particular word or mark is insufficient. *Id.* Here, Defendants have not presented

21   any evidence that consumers are familiar with any of the "Angel Soft" products Defendants'

22   identified, or even that such products actually exist in the marketplace. The hypothetical

23   existence of these unrelated and entirely unknown products does not bear upon the strength of

24   the **ANGEL SOFT** Trademarks. *See, e.g., Frank Brunckhorst Co. v. G. Heileman Brewing Co.*,

25   875 F. Supp. 966 (E.D.N.Y. 1996) (strength of plaintiff's "Boar's Head" mark unaffected by

26   local and economically limited use by third-parties); *Breakers of Palm Beach v. Int'l Beach*

27   _____

28   But, under a proper interpretation of trademark jurisprudence, the **ANGEL SOFT** Trademarks
     are properly classified as arbitrary.

1  *Hotel Dev.*, 824 F. Supp. 1576 (S.D. Fla. 1993) (use of word "breakers" by twelve other hotel

2  properties in Florida did not diminish the strength of the mark "Breakers" for a luxury ocean

3  shore hotel).

4      Because the **ANGEL SOFT** Trademarks are strong marks, entitled to a great deal of

5  protection against infringing products such as Defendants' "Angelite" bathroom tissue, the

6  likelihood of confusion is high and a Preliminary Injunction is warranted.

7      **C.    "Angelite" Is Confusingly Similar to the ANGEL SOFT Trademarks**

8      The similarity of Defendants' "Angelite" mark to the distinctive **ANGEL SOFT**

9  Trademarks is particularly striking in that the word "angel," which is a key component of

10  Georgia-Pacific's **ANGEL SOFT** Trademarks, is replicated by Defendants with regard to the

11  exact same products—namely, bathroom tissue.  It bears repeating that the use of "angel" as a

12  component of Defendants' mark for the ***exact same type of goods*** renders Defendants' mark

13  confusingly similar to the **ANGEL SOFT** Trademarks as a matter of law.  *See, e.g., Morningside*

14  *Group Ltd. v. Morningside Capital Group LLC*, 182 F.3d 133 (2d Cir. 1999) (use of

15  "Morningside" as a component in both marks likely to cause confusion when both marks are

16  used for investment services); *Century21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874,

17  876 (Fed. Cir. 1992) (Defendant's use of the word "century" in its mark "Century Life of

18  America" likely to confuse consumers when "century" was the central and dominant component

19  of plaintiff's "Century 21 Real Estate" mark and when the two marks would appear on virtually

20  identical good and services); *Appleseed Found. v. Appleseed Inst., Inc.*, 981 F. Supp. 672

21  (D.D.C. 1997) ("Appleseed" and "Johnny Appleseed" substantially similar marks when used for

22  similar services); *Sun Microsystems Inc. v. Sun River Corp.*, 36 U.S.P.Q.2d (N.D. Cal. 1995)

23  (likelihood of confusion exists between similar marks "Sun" and "Sun River" when used to

24  identify the same goods and services).  Simply because Defendants employ a different color

25  scheme for their offending products than Georgia-Pacific uses for its **ANGEL SOFT®** products

26  should not distract this Court from Defendants' use of the word "angel" as the core component of

27  their infringing mark.  *See Chase Manhattan Bank, USA, NA v. Freedom Card, Inc.*, 33 F. Supp.

28  2d 239 (D. Del. 2004) *aff'd in part* 432 F.3d 463 (3d Cir. 2005) (the general rule that marks are

1    to be assessed in their entirety should not undermine the "common sense precept" that the more

2    distinctive portions of the mark are to be afforded greater weight).

3         Defendants' assertion that the "Angelite" products are marked in a slightly different font

4    is likewise unavailing.  All but one of the **ANGEL SOFT** Trademarks protect the phrase "Angel

5    Soft" irrespective of any stylization or scripting.  *See Ex Parte Application* at 4 (Dkt. #5).

6    Therefore, the scripting of the "Angelite" logo is irrelevant to the analysis.

7         The substantial similarity of the two marks—which are weighed more heavily than any

8    superficial differences, *AMF v. Sleekcraft Boats*, 599 F.2d 341, 351 (9th Cir. 1979)—engenders a

9    likelihood of confusion among these directly competing products.

10   **D.    Georgia-Pacific Expends Considerable Resources on Marketing its ANGEL**
         **SOFT® Products to Spanish-speaking Consumers**

11

12        Defendants' assertions regarding Georgia-Pacific's lack of advertising in Spanish-

13   speaking markets is entirely incorrect.  Quite the opposite is true.  Georgia-Pacific expends

14   considerable efforts and resources to direct advertising for **ANGEL SOFT®** bathroom tissue

15   specifically toward the Spanish-speaking market.  In 2007 alone, Georgia-Pacific spent

16   approximately $3 million in advertising focused on the Spanish-speaking market, and in 2008,

17   Georgia-Pacific will spend approximately $3.1 million in advertising and promoting its **ANGEL**

18   **SOFT®** bathroom tissue to the Spanish-speaking market.  *See* Declaration of Andrew Towle

19   ("Towle Decl."), ¶ 3.  Georgia-Pacific employs an advertising agency, La Agencia de Orci, to

20   assist with its advertising directed toward Spanish-speaking markets.  *Id.* at ¶ 4; Declaration of

21   Robert Santiago ("Santiago Decl."), ¶ 2.

22        In conjunction with this agency, Georgia-Pacific has developed and aired several

23   **ANGEL SOFT®** brand television commercials nationwide – all in Spanish.[3]  *Id.* at ¶¶ 5-10;

24   Santiago Decl., ¶¶ 2-3; Welland Decl., ¶¶ 6-10, Exs. 4-8.  Currently, Georgia-Pacific is airing

25   two new television commercials for the Spanish-speaking market.  *Id.* at ¶ 8-9; Welland Decl.,

26   ¶¶ 8-10, Exs. 6-7.  In fact, Georgia-Pacific and its **ANGEL SOFT®** brand is one of only two

27   _____

28   [3]   Georgia-Pacific has lodged a DVD containing videos of these commercials.  *See* Notice of
     Lodgment, filed concurrently.

1  companies with national brands of bathroom tissue that have Spanish-speaking television

2  commercials promoting its product. *Id.* at ¶ 10. Georgia-Pacific also implemented radio

3  commercials, on-line advertising, and promotional campaigns directed toward the Spanish-

4  speaking market *Id.* at ¶¶ 11-16; Santiago Decl., ¶ 3.

5        As a result of Georgia-Pacific's advertising to the Spanish-speaking market, **ANGEL**

6  **SOFT®** brand bathroom tissue has experienced the highest growth rate with Latino consumers

7  among branded bathroom tissue. *Id.* at ¶ 17-18. In view of the success of Georgia-Pacific's

8  advertising and marketing efforts in the Spanish-speaking market, Georgia-Pacific will continue

9  to increase and expand the exposure of **ANGEL SOFT®** brand bathroom tissue to the Spanish-

10  speaking market in the future. *Id.* at ¶ 19.

11        Further, Defendants' assertion that **ANGEL SOFT®** bathroom tissue is not sold in

12  Spanish-speaking areas is plainly false.[4]  A small sampling of stores in predominantly Spanish-

13  speaking areas in San Diego county revealed that **ANGEL SOFT®** products are commonly

14  found in these markets. *See* Declaration of George Halcon, ¶¶ 2-6, and Declaration of Randal J.

15  Pissot, ¶¶ 2-3. The ordinary packaging of **ANGEL SOFT®** bathroom tissue even contains a

16  Spanish translation of much of the text. Welland Decl., ¶ 11, Ex. 9.

17        It is therefore apparent that Georgia-Pacific *purposefully* and *specifically* markets its

18  **ANGEL SOFT®** bathroom tissue to the Spanish-speaking market and **ANGEL SOFT®**

19  products are unquestionably sold in Spanish-speaking areas. Defendants' prior argument relating

20  to the marketing channels for "Angelite" – discount stores – was refuted by Georgia-Pacific in its

21  Supplemental Brief. Supp. Br. at 5. Georgia-Pacific has now demonstrated that Defendants'

22  latest incarnation of this argument is similarly inaccurate and without merit.

23        **E.    Georgia-Pacific Is Also Likely to Succeed on Its Other Related Claims**

24        For much the same reasons as Georgia-Pacific is likely to succeed upon its trademark

25  infringement claim, Georgia-Pacific also is likely to succeed on its remaining claims. As

26  detailed in Georgia-Pacific's original preliminary injunction application, Dkt #5 at 16-17,

---

27  [4]  Defendants' Declaration of Armando Jiminez is objectionable and improper evidence and
28  should be disregarded. *See* Evidentiary Objections to Declaration of A. Jiminez, filed
    concurrently.

1    Georgia-Pacific's **ANGEL SOFT**® bathroom tissue carries a distinctive, non-functional trade

2    dress, which includes the arbitrary **ANGEL SOFT**® name, graphics, and packaging design.

3    This trade dress intrinsically identifies Georgia-Pacific as the source of **ANGEL SOFT**®

4    bathroom tissue. *See Two Pesos, Inc.*, 505 U.S. 763, 769 (1992).[5] Similarly, Georgia-Pacific's

5    false designation of origin[6] and unfair competition claims entail the same elements required to

6    establish trademark infringement. *See e.g., Qualitex Co. v. Jacobsen Prods. Co.*, 13 F.3d 1287,

7    1303 (9th Cir. 1994); *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994).

8         Although a preliminary injunction is warranted simply by virtue of Georgia-Pacific's

9    likely success on its trademark claim, that Georgia-Pacific also is likely to prevail on its other

10   similar claims reinforces the need for preliminary injunctive relief in this case.

11        **F.**     **Defendants Have Not Made It "Absolutely Clear'" That the Infringing
                  Activity Will Not Occur Absent Entry of a Preliminary Injunction**

12

13        Defendants' actions regarding distribution of its "Angelite" bathroom tissue, while a step

14   in the right direction, are purely temporary in nature and do not moot the need for injunctive

15   relief.  In fact, the case cited by Defendants serves to illustrate the point.  In *FTC v. Affordable*

16   *Media, LLC*, the defendants were involved in an allegedly fraudulent telemarketing scheme.  179

17   F.3d 1228 (9th Cir. 1999).  The defendants argued that their cessation of sales mooted the need

18   for injunctive relief.  *Id.* at 1237.  The Ninth Circuit strongly rebuked this argument, explaining

19   that, "it is actually well-settled 'that an action for an injunction does not become moot merely

20   because the conduct complained of was terminated, *if there is a possibility of recurrence*, since

21

22     [5]   Defendants incorrectly argue that it is the generic plastic packaging common to bathroom
       tissue products that comprises Georgia-Pacific's trade dress.  Opp. at 7, 8.  Such generic plastic

23   wrapping is functional, and Georgia-Pacific does not here contend that the plastic wrap itself is
       an element of the **ANGEL SOFT**® trade dress.

24     [6]   Defendants' assertion that their products' "Made in China" label somehow avoids confusion

25   about the origin of their "Angelite" products misapprehends the nature of this claim, which
       prohibits use of marks or packaging that confuse consumers about the *manufacturing* origin of

26   the products, not simply the country of origin.  *See Dastar Corp. v. Twentieth Century Fox Film*
       *Corp.*, 539 U.S. 23, 30, 31 (2003) (noting that every court of appeals to have considered the issue

27   has "unanimously concluded that [the phrase 'false designation of origin'] does not merely refer
       to geographical origin, but also to origin of source or manufacture) (citation and quotation marks

28   omitted )).

otherwise the defendants would be free to return to [their] old ways.'" *Id.* (citations omitted). "The standard for the voluntary cessation exception to mootness is 'whether the defendant is free to return to its illegal action at any time.'" *Id.* at 1238 (citations omitted).

Here, Defendants' temporary actions leave the possibility of recurrence wide open. Defendants would merely have to order additional product or just re-wrap the existing inventory. Other than mere words, Defendants have not offered any evidence to preclude the possibility that they may re-initiate sales of the "Angelite" bathroom tissue. In fact, Defendants' statements that such activity has been halted "pending the outcome of this litigation," strongly suggest that they are poised to re-initiate sales at any time.[7] Opp. at 4.

In short, the need for injunctive relief still exists and Georgia-Pacific has demonstrated that the *Sleekcraft* factors weigh heavily in favor of granting its request for a Preliminary Injunction.

## III.   CONCLUSION

For the foregoing reasons, and as further shown in Georgia-Pacific's initial Application and Reply, Georgia-Pacific respectfully requests this Court enter a preliminary injunction enjoining Defendants from importing, distributing, selling, promoting and/or marketing "Angelite" (and any similar variation) bathroom tissue products.

Dated: March 7, 2008

Respectfully submitted,

LATHAM & WATKINS LLP

By:   /s/ Stephen P. Swinton
Attorneys for Plaintiff
Georgia-Pacific Consumer Products LP
E-mail: steve.swinton@lw.com

---

[7]   Georgia-Pacific also has reason to believe that Defendants are continuing to distribute "Angelite" bathroom tissue across the border in Mexico.