UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, a Delaware limited partnership, <br><br> Plaintiff, <br> v. <br> LEE'S GENERAL TOYS, INC., a California corporation, et. al., <br><br> Defendants. | Civil No.07cv2391 JAH (POR) <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [Doc. No. 5]** |

Pending before the Court is Plaintiff's motion for preliminary injunction. After a thorough review of the parties' submissions, and consideration of the arguments made during the hearing, the Court DENIES Plaintiff's motion for preliminary injunction.

## BACKGROUND

On December 20, 2007, Plaintiff filed a complaint for federal trademark infringement, common law trademark infringement, federal false designation of origin, federal false advertising, federal dilution, California statutory dilution, California statutory and common law unfair competition, unlawful importation of goods bearing infringing mark, violation of Tariff Act Section 1526, and cancellation of California Registration. Lee's General Toys, Inc., John Lee, owner of Lee's General Toys and Does 1-100 were named as defendants. Plaintiff alleges Defendants infringed Georgia-Pacific's ANGEL SOFT trademarks by importing, promoting, distributing and selling bathroom tissue under

the name "Angelite" or "Angel Lite." Plaintiff further alleges the marks and images used on the ANGELITE products are confusingly similar in appearance to the ANGEL SOFT trademark.

Plaintiff also filed a motion for temporary restraining order and preliminary injunction on December 20, 2007, seeking an order preventing Defendants from importing, manufacturing, distributing, shipping, advertising, marketing, promoting, selling or offering to sell the ANGELITE bathroom tissue that infringes its trademark. Upon review of the motion and a comparison of the products, this Court found insufficient facts showing that immediate and irreparable injury would result if Defendants had an opportunity to respond to the motion. The motion for a temporary restraining order was set for hearing before this Court on January 14, 2008. Defendants filed a response to the motion, styled as a declaration by counsel, on January 9, 2008, without seeking leave to file a response late and filed an answer to the complaint on January 11, 2008. On January 11, 2008, Plaintiff filed a motion for leave to file a reply to Defendants' untimely opposition to the motion for temporary restraining order with the proposed reply attached. At the hearing held January 14, 2008, the Court granted Plaintiff's motion for leave to file the reply, but informed the parties it would not consider any additional arguments therein.[1] The motion for temporary restraining order was continued to January 28, 2008. Plaintiff's reply was filed on January 16, 2008.

On January 22, 2008, Defendants filed objections to the declaration of Joseph H. Miller filed in support of Plaintiff's reply and filed a motion for leave to file a declaration in rebuttal to Plaintiff's reply on January 23, 2008. The declaration informs the Court that Defendant Lee voluntarily removed the outer wrapping from the entire stock of ANGELITE tissue. He further attests he has no intention of importing, distributing, selling, shipping, purchasing, moving, transporting and/or exporting any tissue paper with the ANGELITE wrapping until the pending action is resolved, although he maintains he

---

[1] In addition to attacking the timeliness of Defendants' opposition, Plaintiff added a new argument in support of its motion.

has a valid California trademark for ANGELITE. Defendant also reserves his right to rewrap the tissue rolls with "Swan" wrapping, another trademark owned by Defendant, to market the items and avoid financial hardship. The Court granted leave by order filed January 24, 2008.

Following oral argument on Plaintiff's motion for a temporary restraining order and preliminary injunction on January 29, 2008, this Court denied the motion for a temporary restraining order and set a briefing schedule for additional briefing on Plaintiff's motion for preliminary injunction. Plaintiff filed a supplemental brief in support of its motion on February 15, 2008. Defendants filed a response on February 28, 2007, and Plaintiff filed a reply on March 7, 2008. On March 13, 2008, Defendants filed objections to Plaintiff's declarations filed in support of its reply.

## DISCUSSION

**I. Objections**

Defendants filed objections to various declarations filed by Plaintiff's in support of their briefs for the preliminary injunction motion. Plaintiff did not respond to the objections.

Defendants' objections to the declaration of Joseph Miller filed in support of Plaintiff's first reply and the declarations of Andrew Towle, Roberto Santiago, George Halcon, Randall Pissot and Adam Welland filed in support of Plaintiff's second reply brief are overruled.[2]

Defendants also object to Zhijun Xu's declaration as hearsay and for lack of foundation. A review of the declaration demonstrates Xu discusses his investigation into companies in China and his conversations with employees of the companies about ANGELITE bathroom tissue and ANGEL SOFT brand tissue. Because Xu is testifying to what other's said and the statements are being offered for the truth of the matter asserted,

---

[2] The statements to which Defendants object discuss issues the Court either found irrelevant to the motion for preliminary injunction or, as was the case with the Miller declaration, included information the Court stated it would not consider. See Order (Doc. No. 15) (Explaining the Court would not consider any new arguments contained in Plaintiff's reply).

they are inadmissible hearsay. Accordingly, Defendants objection to the Xu declaration is sustained.

## II. Preliminary Injunction

### A. Legal Standard

To prevail on a motion for preliminary injunction on a trademark infringement claim, Plaintiffs must demonstrate either: 1) a combination of probable success on the merits" and "the possibility of irreparable injury" or 2) the existence of "serious questions going to the merits" and "the balance of hardships tips sharply in his favor." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1204-1205 (9th Cir. 2000), citing Sardi's Restaurant Corp. v. Sardie, 755 F.2d 719, 723 (9th Cir. 1985). These formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. Roe v. Anderson, 134 F.3d 1400, 1402 (9th Cir. 1998). A showing of likelihood of success on the merits gives rise to a presumption of irreparable harm in trademark cases. International Jenson, Inc. v. Metrosound, U.S.A., Inc., 4 F.3d 819, 827 (9th Cir. 1993).

The basic function of a mandatory injunction is to "preserve status quo pending determination of an action on the merits." Chalk v. U.S. District Court Central District of California, 840 F.2d 701, 704 (9th Cir. 1988). "It is so well settled as not to require citation of authority that the usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits." Larry P. v. Riles, 502 F.2d 963, 965 (9th Cir. 1974).

### B. Analysis

### 1. Likelihood of Success on the Merits

### a. Trademark Infringement

In order to prevail on a trademark infringement claim, a plaintiff must show that: 1) it is the owner of the asserted marks; and 2) the use of the mark by the alleged infringer is likely to cause confusion or mistake or deceives the consumer. Surfvivor Media v. Survivor Productions, 406 F.3d 625, 630 (9th Cir. 2005). Plaintiff establishes it is the

1  owner of numerous federally registered trademarks and it has extensively advertised its
2  products using these marks.  Towle Decl. ¶ 7, 12, Exhs. 3 - 10, Motion for Temporary
3  Restraining order.  To show there is a likelihood of a consumer confusing Defendant's
4  mark with Plaintiff's, the court considers eight factors, known as the "Sleekcraft" factors,
5  in its determination:

>   (1)   The strength of the mark;
>   (2)   The similarity of the marks;
>   (3)   The relatedness of the goods;
>   (4)   The marketing channels used by the companies;
>   (5)   The alleged infringer's intent in selecting it mark;
>   (6)   Evidence of actual confusion;
>   (7)   The likelihood of expansion into other markets, and;
>   (8)   The degree of care likely to be exercised by purchasers of the good.

10  Goto.com, 202 F.3d at 1205.  "Some factors are much more important than others, and
11  the relative importance of each individual factor will be case specific."  Brookfield
12  Communications, Inc. v. West Coast Entertainment, Corp., 174 F.3d 1036 (9th Cir.
13  1999).

14  **i. Strength of Mark**

15      The strength of a mark is determined by its placement on a continuum of marks
16  from generic through descriptive or suggestive to arbitrary or fanciful. E.& J. Gallo Winery
17  v. Gallo Cattle Co., 967 F.2d 1280, 1291 (9th Cir. 1992).  Generic trademarks are not
18  entitled to protection.  Marks that are suggestive, arbitrary or fanciful, are "inherently
19  distinctive", "because their intrinsic nature serves to identify a particular source of a
20  product" and are, therefore, awarded maximum protection.   Two Pesos, Inc. v. Taca
21  Cabana, Inc., 505 U.S. 763, 768 (1992).  Marks that are descriptive of a product are not
22  inherently distinctive, but "may acquire the distinctiveness which will allow them to be
23  protected under the Act."  Id. at 769.

24      Plaintiff argues its trademarks are arbitrary and are entitled to heightened
25  protection.  Alternatively, Plaintiff argues the marks are, at a minimum, suggestive, and
26  therefore, are entitled to a high degree of protection against similar marks on goods closely
27  related.

28      Defendants argue the marks are purely descriptive and are not accorded statutory

protection, because "angel soft" is another way of describing tissue paper as being "soft as an angel." They further argue, there is no showing of secondary meaning to demonstrate the descriptive mark is entitled to protection. Defendants also argue, assuming the mark is suggestive, it is still a weak mark not entitled to protection.

The Court finds the ANGEL SOFT trademarks suggestive and therefore, are strong and entitled to protection. This factor weighs in favor of likelihood of confusion.

### ii. Similarity of Marks

In considering the degree of similarity, a court should view the marks in their entirety as they appear in the marketplace. Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1144 (9th Cir. 2002). Additionally, a court should consider the similarity in appearance, sound and meaning. Id. Similarities are given more weight than differences. Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, 616 F.2d 440, 440 (9th Cir. 1980) (citing AMF, Inc. v. Sleekcraft Boats, 599 F.2d 348, 351 (9th Cir. 1979).

Plaintiff argues the marks are similar, because it has "Angel" in the product labeling, and the ANGELITE mark is similar to the ANGEL SOFT mark. Defendants argue the typeface of the marks and the color of the packaging are different, and the logos are a different size.

Although the word "angel" appears in both marks, the marks otherwise differ. Plaintiff's mark consists of the two words "angel" and "soft", while Defendants' product bears the name "angelite" as one word. There is no evidence that Defendants ever used the word "Angel" other than in conjunction with "lite." See Alpha Industries, Inc. v. Alpha Steel Tube &Shapes, Inc., 616 F.2d 440, 444 (9th Cir. 1980) (Finding the district court's comparison of the mark "Alpha" with "Alpha Steel Tube" and "Alpha Steel" taken as a whole, rather than looking principally at the word "Alpha" was not clearly erroneous.). Furthermore, the typeface, packaging color and logos are different and give the products a very different look. Accordingly, the Court finds the marks are not similar. This factor weighs <u>heavily</u> <u>against</u> a likelihood of consumer confusion.

//

**iii. Proximity or Relatedness of the Goods**

"Related goods are those products which would be reasonably thought by the buying public to come from the same source if sold under the same mark." Entrepreneur Media, Inc., 279 F.3d at 1147 (quoting AMF Inc., 599 F.2d at 348 n.10). "[T]he more closely related the goods are, the more likely consumers will be confused by similar marks." Id.

The products, which are both bathroom tissue, are clearly related. This factor weighs in favor of Plaintiff.

**iv. Marketing Channels**

"Convergent marketing channels increase the likelihood of confusion." Nutri/System, Inc. v. Con-Stan Industries, 809 F.2d 601, 606 (9th Cir. 1987). This factor does not require the sale of the goods by identical vendors, but rather "the same type of distribution channel." Century 21 Real Estate Corp. v. Century Life of America, 970 F.2d 874 (Fed.Cir. 1992).

A review of the declarations filed in support of the motion demonstrate the ANGELITE bathroom tissue is sold in the following retail establishments: (1) La Bodega Wholesale in San Ysidro, California and (2) La Bodeguita in San Ysidro California. Pissot Decl. ¶ 2. Plaintiff maintains certain lines of ANGEL SOFT bathroom tissue are sold in discount stores in California, including Big Lots, Family Dollar, Dollar General, Fred's, $0.99 Stores, Canned Foods and McFrugles. Towle Decl. ¶ 3. Plaintiff argues the products are sold in the same types of retail establishments and this is sufficient to support convergent marketing channels. This factor supports a finding of likelihood of confusion.

**v. Defendant's Intent in Selecting the Mark**

Plaintiff is not required to demonstrate the infringer "intended to deceive consumers." E.& J. Gallo Winery, 967 F.2d at 1293. Intent to confuse may be inferred when the "alleged infringer chooses a mark he knows to be similar to another." Entrepreneur Media, 279 F.3d at 1148 (citing Official Airlines Guides, Inc. v. Goss, 6 F.3d 1385 (9th Cir. 1993).

Plaintiff argues Defendants intentionally adopted marks and images similar to Plaintiff's product so they may trade upon the goodwill and success of ANGEL SOFT as evidenced by the "virtually identical" name and the use of a similar font. Plaintiff further argues it is inconceivable that Defendants were unaware of the ANGEL SOFT products when they chose their names because of the extensive advertising of ANGEL SOFT bathroom tissue.

This Court finds a comparison of the two products demonstrates the names are not "virtual identical", but are in fact dissimilar. Accordingly, this factor weighs against of finding a likelihood of confusion.

**vi. Evidence of Actual Confusion**

Plaintiff submits no evidence of actual confusion, but maintains it expects to develop evidence of substantial confusion during discovery. Plaintiff also argues undue weight should not be accorded this factor as courts have noted evidence of actual confusion is difficult to obtain. Defendants maintain there is not evidence of actual confusion and the letter proffered by Plaintiff refers to another brand of tissue which has no relationship to Defendants' product or business.[3]

The lack of evidence of actual confusion weighs against likelihood of consumer confusion.

**vii. The Likelihood of Expansion**

The parties do not address this factor.

**viii. The Degree of Care Likely to Be Exercised by Purchasers**

The likelihood of confusion is determined by the "reasonably prudent consumer." Brookfield Communications, Inc., 174 F.3d at 1060. The "reasonably prudent consumer" is expected to be "more discerning-and less easily-confused" when purchasing expensive items and less discerning and more easily confused when purchasing inexpensive items. Id.

Plaintiff argues bathroom tissue is relatively inexpensive and purchasers are likely

---

[3]Plaintiff mentions a letter it received from a consumer regarding another bathroom tissue not related to Defendants' product or otherwise manufactured or sold by Defendants.

to pick one product from crowded stores shelves with little thought. Plaintiff further argues the prevalence of Spanish-speaking consumers in the geographic areas where ANGELITE products are sold increases the likelihood that consumers will purchase ANGELITE believing it to be ANGEL SOFT. Defendants maintain there is no evidence to support this argument and it is made in bad faith.

Plaintiff presents no evidence to support its assertion that the Spanish-speaking community, in which it heavily advertises, will confuse ANGELITE products with ANGEL SOFT products more than the English-speaking community. However, this Court agrees that bathroom tissue is a product that consumers exercise a minimal degree of care when purchasing. Accordingly, this factor supports a likelihood of confusion.

Based upon the analysis of the Sleekcraft factors this Court finds Plaintiff fails to demonstrate a likelihood of confusion and therefore, fails to demonstrate a likelihood of success as to its trademark infringement claim.

**b. Trade Dress**

To sustain a trade dress infringement claim, the plaintiff must prove (1) its claimed dress is nonfunctional; (2) its claimed dress serves a source-identifying role, because it is either inherently distinctive or has acquired secondary meaning and (3) the infringer's product creates a likelihood of confusion. Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1258 (9th Cir. 2001).

Because there is insufficient evidence demonstrating a likelihood of confusion as required by a successful trade dress claim, Plaintiff fails to demonstrate a likelihood of success on the merits of the claim.

**c. False Designation of Origin**

The test for a false designation of origin claim is essentially identical to a trademark infringement claim. See Brookfield Communications, Inc., 174 F.3d at 1046 n.6 (Noting that Section 43(A)(1) of the Lanham Act embodies the same standard as Section 32(1), except that Section 43(a)(1) applies to both registered and unregistered trademarks). As such, Plaintiff fails to demonstrate a likelihood of success of his false designation of origin

claim.

**d.  Unfair Competition**

California Business and Professions Code § 17200 defines unfair competition to include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising . . . ."

Because the unfair competition claim is "substantially congruent" to Plaintiff's claims brought under the Lanham Act, (See Motion at 18) Plaintiff, likewise, fails to demonstrate a likelihood of success of the unfair competition claim.

**2. Irreparable Injury and Balance of Hardships**

Although the likelihood of success on the merits is minimal in the instant matter, Plaintiff may still prevail in its preliminary injunction motion if "the balance of hardships tips sharply in [its] favor." GoTo.com, 202 F.3d at 1205.  This balance, however, must tip overwhelmingly in Plaintiff's favor in this case because there is no evidence of and a minimal risk of actual confusion between the parties' mark.

Plaintiff's argument that the balance of hardships weighs in its favor due to loss of goodwill by purchasers of ANGELITE who confuse it with ANGEL SOFT is without merit based upon this Court's finding of minimal risk of consumer confusion between the two marks.  As such, Plaintiff fails to show the balance of hardships tips in its favor.

Accordingly, Plaintiff is not entitled to a motion for preliminary injunction.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED Plaintiff's motion for preliminary injunction is **DENIED**.

DATED:  April 21, 2008

_____
JOHN A. HOUSTON
United States District Judge